| | | |
|---|---|---|
| Tabitha Marie Smith (Deceased) <br> (aka Tabatha Marie Colbaugh), <br> by and through her surviving children <br> Nathan Alexander Smith, <br> JE through next friend JH, <br> NR through next friend SR, and <br> LC through next friend EH, <br><br> and <br><br> Nathan Alexander Smith, <br> NR through next friend SR, <br> JE through next friend JH, <br> and <br> LC through next friend EH, <br> (individually), <br><br> *Plaintiffs,* <br><br> ~V~ <br><br> Meigs County, and <br><br> Estate of Robert J. Leonard (Deceased), <br> by and through Neal Pinkston as <br> Administrator *ad Litem*, <br><br> *Defendants*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | No. 1:24-cv-151-DCLC-CHS <br><br> JURY DEMANDED |

## THIRD AMENDED COMPLAINT

Plaintiffs, Nathan Alexander Smith ("Smith"), NR through next Friend SR, JE through next friend JH, and LC through next friend EH, in their individual capacities and in their capacities as next of kin for their mother, Tabitha Marie Smith (aka Tabitha Marie Colbaugh) ("Deceased"), for the causes of action set forth herein, allege:

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to Deceased by the Fourteenth Amendment to the United States Constitution by the Defendants[1], as well as attendant state law claims.

2. This action is brought for claims arising from the wrongful death of the Deceased while the Deceased was in the custody of the Defendants and for the Plaintiffs for their loss of consortium resulting from the grisly death of their mother, the Deceased.

3. This action is brought against the Defendant, Meigs County ("County") pursuant to TENN. CODE ANN. § 8-8-302.

## JURISDICTION AND VENUE

4. This Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for the claims for alleged violation of Federal law.

5. This Court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 as they arise from the same case and the same controversies.

6. This is an action to address the Plaintiffs' loss of consortium with their mother, the Deceased. As to the Plaintiffs' state claims, this Court has jurisdiction over their state claims pursuant to 28 U.S.C. § 1367 as they arise from the same case and the same controversies.

7. Venue is proper in this Court, Chattanooga Division, pursuant to 28 U.S.C. § 1391(b) for the following reasons: All acts that give rise to this cause of action occurred in Meigs County, Tennessee; Meigs County ("County") is a political sub-division of the State of Tennessee;

---

[1] For the purposes of this Third Amended Complaint, Defendant Estate of Robert J. Leonard is asserted to be liable for the wrongful actions of Robert J. Leonard ("Leonard"), also deceased.

Defendant Robert J. Leonard (Deceased) (hereinafter, "Leonard") was a resident of Meigs County, Tennessee.

## THE PARTIES

8. At all relevant times, the Deceased was a citizen of the United States and a resident of the State of Tennessee. At the time of the events averred herein, the Deceased was a resident of Meigs County, Tennessee.

9. Upon information and belief, at the time of the events averred herein, the Deceased was survived by four children, the named Plaintiffs, who have the primary and sole right to bring this cause of action pursuant to an Order of this Court entered into the record on November 27, 2024 (DE 65).

10. Smith is an adult while NR, JE and LC are minors.

11. SR is he legal guardian of NR, JH is the legal guardian of JE. and. EH is the legal guardian of LC.

12. All four children have equal standing to bring this action as well as standing to bring their own claims for loss of consortium.

13. At all times relevant to this cause of action the County was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

14. At all times relevant to this cause of action, the County is responsible for the creation and maintenance of its law enforcement department identified and averred as the Meigs County Sheriff's Office ("sheriff's office")

15. The County provides rules and regulations for the operation of the sheriff's office.

16. The County finances the operations of the sheriff's office.

17. The sheriff's office is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee.

18. At all relevant times, the County, its sheriff's office, and its law enforcement personnel, are and were responsible for the safe and humane treatment of all persons taken into and held in the custody of its law enforcement employees; for the training and certification of its law enforcement employees; and for the safety of persons detained or otherwise within the custody of its individual deputies and agents, and these duties extended to the Deceased.

19. At all times relevant to this cause of action, the County employed Leonard who in turn was appointed by the sheriff as a sheriff's deputy.

20. At all times relevant to this cause of action Leonard acted under the color of his office and under the color of law, statute, ordinance, regulation, custom, or usage of the County.

21. On March 20, 2024, the Chancery Court for Meigs County, Tennessee, appointed Neal Pinkston ("Pinkston") as the Administrator *ad Litem* for Cause of Action Only for the Estate of Robert J. Leonard. At the time of his death, Leonard was a resident of Meigs County, Tennessee. For brevity, all references to the Estate of Robert J. Leonard shall be "Leonard."

22. As of the time of this Third Amended Complaint, Plaintiffs are unaware if Pinkston has been substituted by anyone as the said Administrator. Additionally, the record does not reveal any such substitution.

23. Plaintiff brings this action against Leonard in his individual capacity.

**FACTUAL BASIS-THE ROADWAY**

24. As to be set forth more fully herein, Leonard and the Deceased died after Leonard drove his assigned Meigs County Sheriff's Office patrol car on Blythe Ferry Lane and into the Tennessee River.

25. At all relevant times, Blythe Ferry Lane ("the roadway") is a two-lane asphalt roadway, which at the time of the events herein had no streetlights, and no lighted signal to warn motorists that the roadway ended into the Tennessee River ("river").

26. At all relevant times, the roadway had no shoulders and was oriented for east-west traffic, and the two travel lanes were separated by a double yellow centerline, which ended prior to reaching the water's edge.

27. The asphalt roadway continued until the start of a concrete ramp and transitioned on a downhill grade into the water.

28. At all relevant times, there was no signage in the immediate vicinity of the water's edge to warn or indicate the approaching end of the roadway.

29. At all relevant times, there were no posted speed limit signs on the roadway between the river and the intersection of Shadden Road.

30. At all relevant times, starting at 1663 feet from the start of the ramp into the river, on the right side of the roadway was a yellow highway sign that reads "ROAD ENDS 1500 FT."

31. At all relevant times, at 1363 feet there were five rumble strips that span the entire width of the travel lane going towards the river. These strips were raised asphalt that measured approximately 3/16" high.

32. At all relevant times, at 1261feet, there was a yellow sign with a pedestrian walking on the right side of the roadway.

33. At all relevant times, at 1072 feet and 740 feet were another set of five rumble strips measuring approximately 1/4" high and then 1/2."

~ 5 ~

34. At all relevant times, at 546 feet, on the roadway, in very large letters, was the word "STOP." At 502 feet was a yellow highway sign on the left side of the road that said, "STOP AHEAD."

35. At all relevant times, at 498 feet, on the roadway, was the word "AHEAD." The wording on the actual pavement was obviously worn but visible. This was the last signage that was observed leading up to the water.

36. At all relevant times, two more sets of rumble strips were present before reaching the water. One at 474 feet which measured approximately 5/8" high and the other at 236 feet that measured approximately 1/2" high.

37. At all relevant times, the rumble strips were worn as were the painted words STOP and AHEAD. There were no gates or other barriers to prevent any motorist from driving into the river.

**FACTUAL BASIS-THE INCIDENT**

38. Leonard was employed by the County for about two to three months prior to the incident at issue.

39. On February 14, 2024, at about 9:30 pm Leonard was called to the scene of a disturbance on the Tennessee Highway 60 bridge that spans the Tennessee River near the Birchwood community ("call scene"). The extent of the nature of the disturbance alleged was a person walking in the road of the bridge. There were foggy and low visibility conditions that evening.

40. Upon receiving the call, at 9:32 pm, Leonard reported to Meigs County dispatch that he was enroute to the call scene. Leonard operated a police vehicle that did not have an operating speedometer, odometer nor any navigation equipment.

41. GPS tracking of his drive showed Leonard "quickly proceeded" to the call scene. Documents provided by the District Attorney's Office for the 9th Judicial District showed Leonard traveled at extremely high speeds including speed of up to 102 miles per hour while driving to the scene.

42. Leonard drove from his residence near the Meigs County Jail down Highway 58 to Gunstocker Road to Highway 60 to the call scene where he arrived at 9:48:01 pm.

42. At 9:54 pm, Leonard radioed dispatch that he had "one in custody," whom Plaintiffs aver was the Deceased.

43. At 9:58 pm, Leonard, with the Deceased in custody and her hands cuffed behind her back and secured in the back seat of the Meigs County patrol car, was on his way to the Meigs County jail.

44. Between 9:53:38 pm and 9:59:32 pm Leonard was using Facebook messenger to communicate with Ben Christian while driving the patrol vehicle with the Deceased handcuffed in the back seat.

45. Leonard drove on Blythe Ferry Lane ("the roadway") at speeds up to 56 mph from 10:02:45 pm (56 mph) to 52 mph (at 10:02:59 pm) and back up to 56 mph (at 10:03:39) until he hit the water at 44 mph (at 10:03:45pm).

46. At 10:03:12 pm, Leonard sent a text message to his wife (who Leonard identified as "Hooker") via a cell phone with the content, "arrest." This was 46 seconds before hitting the water, while driving the patrol vehicle at 44 mph – 56 mph with the Deceased handcuffed in the backseat.

47. Tennessee Code Annotated § 55-8-199 (a Class C misdemeanor) prohibits the use of a wireless telecommunications device while operating a motor vehicle. Tennessee Code

Annotated § 55-19-203 (a Class B misdemeanor), prohibits the operation of a motor vehicle with a willful and wanton disregard for the safety of persons.

48. Some hours later, authorities found the patrol car, upside down, at the bottom of the Tennessee River.

49. The Deceased's body was found still handcuffed with her hands behind her back and in the back seat of the patrol car, dead. When found, she was not secured by a seatbelt.

50. Leonard's body was found outside of the patrol car, but in the Tennessee River.

51. Based upon information and belief, Leonard had an addiction as noted by his wife on a Facebook post dated July 15, 2022.

52. Based upon information and belief, Leonard was not properly trained by the County to know his assigned area of patrol and know the nature of the incident location.

53. The location of the incident has a history of other people driving into the Tennessee River.

55. Based upon information and belief, Leonard was not properly trained or supervised by the County to refrain from the use of his cell phone while transporting an arrestee in a patrol vehicle.

56. Based upon information and belief, Leonard was not properly trained or supervised by the County to ensure the safety of the Deceased while in his custody.

57. Based upon information and belief, the County failed to properly train Leonard in his area of responsibility, which included knowledge of the roadways and the dangers of Blythe Ferry Lane. This lack of familiarity was noted by the District Attorney for the 9th Judicial District in his report about the incident as a factor in Leonard's actions.

58. Based upon information and belief, the County failed to properly train and supervise Leonard in how to respond to calls and travel with prisoners in his custody. Leonard's

speed going to the incident scene on the bridge was well beyond reasonable and necessary. Leonard's speed with the Deceased in his care and custody, on a roadway that he was unfamiliar with, and (as noted by the District Attorney for the 9th Judicial District) on a "dark and foggy night" reflected the lack of the County's training and supervision of Leonard.

59. The Deceased was very familiar with the boat ramp as she grew up in the area.

60. The Deceased would have known where Leonard was taking her, which was the river, and would have warned him.

61. Based upon information and belief, Leonard ignored the Deceased's warnings.

62. As a direct and proximate result of the acts and omissions of Leonard and the County, the Deceased suffered a ghastly death.

## COUNT ONE:

### DEPRIVATION OF LIBERTY INTEREST AND BODILY INTEGRITY
### (FOURTEENTH AMENDMENT)

### VIOLATION OF CIVIL RIGHTS UNDER
### COLOR OF LAW 42 U.S.C. §1983

63. Each paragraph of this Third Amended Complaint is incorporated as if fully set forth herein against both Defendants.

64. The instant Leonard arrested the Deceased and placed her handcuffed in the back of his patrol car, a special relationship existed between the Deceased, Leonard, and the County.

65. Once in the custody of the Defendants, the Deceased was completely reliant upon the Defendants to ensure that she would not be injured or killed.

66. By engaging in criminal acts and driving with excessive speed without reason, with the Deceased in his custody, Leonard acted with deliberate indifference to the safety of the Deceased.

67. Leonard also chose to ignore the rumble strips and signage warning of the impending Tennessee River.

68. Leonard drove at excessive speed with the deceased handcuffed in the back of his vehicle.

69. No reasonable person could have mistaken Blythe Ferry Lane for the Hiawasee Highway that crossed the Tennessee River as one was a small, country road embedded in sparsely populated farmland and acreage, and the other, a large, elevated well-paved and maintained highway.

70. That, coupled with the apparent inability of Leonard to navigate the route from the arrest scene to sheriff's office reflects a failure in training where: 1) Leonard disregarded criminal statutes; 2) Leonard lacked knowledge of his patrol area; and 3) Leonard disregarded rumble strips and warnings designed to avoid driving into the river.

71. No reasonable law enforcement officer would have acted in this manner.

72. The County's failure to properly train Leonard as to the safe transportation of the Deceased, the County's failure to ensure Leonard knew his assigned area of patrol, the failure of the County to supervise Leonard to ensure he did not drive and text or drive recklessly in foggy conditions with limited visibility, and its failure to perform a detailed investigation of Leonard's background and addiction, constituted the deliberate indifference of the County and was the driving force of the deprivations and horror inflicted upon the Deceased by Leonard.

73. The failures and deprivations here inflicted unimaginable terror upon the Plaintiff in that she knew what she was about to suffer, and the same failures and deprivations were the direct and proximate cause of her death.

74. Leonard acted under color of law and his acts and omissions, and the deliberate indifference of the County deprived the Deceased of the right secured to her under the Fourteenth Amendment to the United States Constitution to be free from the infliction of physical pain, suffering, and death and to not be harmed by the defendants without Due Process of Law, and this Count is brought against both Defendants.

## COUNT TWO:

### FAILURE TO PROTECT
### (FOURTEENTH AMENDMENT)

### VIOLATION OF CIVIL RIGHTS UNDER
### COLOR OF LAW 42 U.S.C. §1983

75. Each paragraph of this Third Amended Complaint is incorporated as if fully set forth herein against both Defendants.

76. State officials have an affirmative obligation to protect pre-trial detainees.

77. Leonard detained the Deceased pending criminal adjudication.

78. While driving in an unfamiliar area Leonard made a conscious decision to text while driving, drive at excessive speed, ignore adverse weather conditions, ignore the Deceased's warnings, ignore rumble strips and ignore signage with the Deceased handcuffed in the back of his police cruiser.

79. Leonard's choices put the deceased at substantial risk of harm from being thrown around within the vehicle up to death from an accident, or as occurred in this case, drowning.

80. Leonard had every opportunity to abate these risks by driving in a safe manner by not texting, not speeding, and paying attention to the weather conditions and rumble strips and signage.

81. Leonard failed to take the simple steps necessary to mitigate the risk his driving posed to the Deceased, and his misconduct directly led to the Deceased's tragic, and gruesome death.

82. No reasonable law enforcement officer would have acted in this manner.

83. The County had an affirmative constitutional obligation to protect pre-trial detainees within its control. To be sure, the County had a Tennessee Constitutional duty to refrain from treating the Deceased with undue rigor.

84. The County failed to implement the basic, and necessary, steps in terms of training, supervision, and hiring as alleged herein.

85. The County's failure to properly train Leonard as to the safe transportation of the Deceased, the County's failure to ensure Leonard knew his assigned area of patrol, the failure of the County to supervise Leonard to ensure he did not drive and text or drive recklessly in foggy conditions with limited visibility, and its failure to perform a detailed pre-hire investigation of Leonard's background and addiction, constituted the deliberate indifference of the County and was the driving force of the deprivations and horror inflicted upon the Deceased by Leonard.

86. Leonard acted under color of law and his acts and omissions, and the deliberate indifference of the County, deprived the Deceased of the right secured to her under the Fourteenth Amendment to the United States Constitution to be protected from the gruesome and awful death Leonard inflicted upon the Deceased without Due Process of Law, and this count is brought against both defendants.

**COUNT THREE:**

**WRONGFUL DEATH – TENN. CODE ANN. § 20-5-106**
**TENNESSEE STATE CLAIM**

87. Each paragraph of this Third Amended Complaint is incorporated against the Defendants as if fully set forth herein.

88. Leonard had a duty to protect the Deceased from injury and death. His failures as averred herein were the direct and proximate cause of the Deceased's unnecessary pain and suffering and resulted in the Deceased's horrific death.

89. Leonard's criminal actions were malicious, willful, and criminal.

90. The County is not immune under TENN. CODE ANN. § 29-20-205 as wrongful death is not included as an exception under TENN. CODE ANN. § 29-20-205(1) nor because of COVID-19.

91. As a direct and proximate result of his misconduct, the Deceased suffered unimaginable horror, injuries, and a gruesome death.

## COUNT FOUR:

### BATTERY AND ASSAULT CLAIMS
### TENNESSEE COMMON LAW CLAIMS

92. Each paragraph of this Third Amended Complaint is incorporated against Leonard as if fully set forth herein. This count is brought against Leonard.

93. In the manner more fully described above, Leonard's acts and omissions were void of any lawful purpose.

94. Leonard had no reason to drive the Deceased into the Tennessee River. By plunging the patrol vehicle into the Tennessee River, Leonard engaged in an unlawful touching of the Deceased without her permission.

95. As the Deceased was a lifetime resident of the area, it is certain that she would have been aware of the danger of the patrol vehicle car ending up in the river as it hurtled down the street toward it and formed a reasonable, imminent fear of death in the Deceased.

96. Leonard acted under color of law and within the scope of his employment and agency with the County. As a direct and proximate result of his misconduct, the Deceased suffered unimaginable horror, injuries, and a dreadful death.

## COUNT FIVE:

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### TENNESSEE COMMON LAW CLAIM

97. Each paragraph of this Third Amended Complaint is incorporated against Leonard as if fully set forth herein. This count is brought against Leonard.

98. In the manner more fully described above, Leonard intentionally or recklessly engaged in extreme and outrageous conduct that caused the Deceased emotional distress as well as grievous bodily harm, including a gruesome death.

99. As a further direct and proximate result of Leonard's unconstitutional conduct, the Deceased's constitutional rights were violated, and the Deceased suffered the indignity and humiliation of the loss of her life and bodily integrity as she died while cuffed and locked in the back seat of a patrol car.

100. Leonard acted under the color of law and within the scope of his employment and agency with the County.

## COUNT SIX:

### GROSS NEGLIGENCE
### TENNESSEE COMMON LAW CLAIM

101. Each paragraph of this Third Amended Complaint is incorporated against the Defendants as if fully set forth herein

102. In the manner more fully described above, Leonard's inexplicable acts and omissions, despite his duty to protect the Deceased, resulted in the constitutional deprivations,

physical harm, and the indignity and humiliation of the loss of life and bodily integrity as she died while handcuffed in the back of the patrol car.

103. Leonard had a duty to refrain from inflicting harm and death upon the Deceased. Instead, he was texting and while he was dashing toward the Tennessee River, ignored the Deceased's cries and attempts to warn Leonard that he was driving toward the river, and Leonard ignored the signage and rumble strips at the same time.

104. All of Leonard's activities that are subject to this Third Amended Complaint were undertaken under the color of law and in accordance with his employment with the County.

105. The County had a duty to reasonably train new officers to act, or refrain from acting, in the manner that Leonard acted and refrained from acting as described herein. The County had a duty to supervise Leonard and to thoroughly investigate Leonard's background to ensure that he was not a threat to the Deceased.

106. Both Defendants breached their duties in conducting their activities with the recklessness described herein.

107. As a further direct and proximate result of Leonard's unconstitutional and criminal conduct and the County's gross negligence, the Deceased's constitutional rights were violated, and the Deceased suffered the indignity and humiliation of the loss of her life and bodily integrity as she drowned while cuffed and locked in the back seat of a patrol car.

## COUNT SEVEN

### NEGLIGENCE
### TENNESSEE COMMON LAW CLAIM

108. Each paragraph of this Third Amended Complaint is incorporated against the Defendants as if fully set forth herein. This claim is brought against the County.

109. The County has the duty to maintain the bridge and roads whereupon the events of this Complaint unfolded.[2]

110. Public records recount prior accidents wherein vehicles have driven into the water, such that the County was on notice regarding the risk of same.

111. The County breached this duty by failing to provide risk-appropriate warnings for drivers on the bridges and roads.

112. The County had prior knowledge of the danger presented by the status quo regarding their maintenance of the subject bridge and roads; but failed to act affirmatively to decrease the danger.

113. As a direct and proximate cause of these breaches, Plaintiffs and the Deceased have been harmed by the County.

## COUNT EIGHT

### LOSS OF CONSORTIUM
### TENNESSEE COMMON LAW CLAIM

114. Each paragraph of this Third Amended Complaint is incorporated against the Defendants as if fully set forth herein. This claim is brought against both Defendants.

115. In the manner more fully described above, Leonard's inexplicable acts and omissions, despite his duty to protect the Deceased, resulted in the constitutional deprivations, physical harm, and the indignity and humiliation of the loss of life and bodily integrity as she died while handcuffed in the back of the patrol car.

---

[2] https://www.meigscounty.org/directory-pages/highway-department.

116	As a direct and proximate result of the acts and omissions averred herein, Plaintiffs lost their mother, lost any future they may have had with their mother, and lost their ability to have a continuing relationship with their mother.

117.	The County is not immune under TENN. CODE ANN. § 29-20-205 as loss of consortium is not included as an exception under TENN. CODE ANN. § 29-20-205(1)

## COUNT NINE:

### TENN. CODE ANN. § 8-8-302
### TENNESSEE STATE LAW CLAIM

118.	Each paragraph of this Third Amended Complaint is incorporated as if fully set forth herein.

119.	While committing the acts alleged in the preceding paragraphs, Leonard was an employee and agent of the County, acting at all relevant times within the scope of his employment.

120.	While committing the acts alleged in the preceding paragraphs, Leonard's behavior was calculated to facilitate and/or promote the business for which the County employed Leonard.

121.	TENN. CODE ANN. § 8-8-302, allows anyone incurring *any* wrong, injury, loss, damage, or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff to bring suit against the County.

122.	The Tennessee Constitution, article 1, section 13, prohibits the treatment of the Deceased upon arrest with unnecessary rigor. Consequently, Leonard had an affirmative and non-delegable duty to protect the Deceased and to not harm and kill the Deceased in the manner averred in this Third Amended Complaint.

123.	Leonard killed the Deceased in the manner described herein, and his actions were the direct and proximate cause of the Deceased's mental anguish, needless suffering, loss of enjoyment of life, and her hideous death.

124. The County is liable as principal for wrongs committed by its agents, and the Plaintiff sues the County under this Count.

## DAMAGES

130. The foregoing paragraphs are adopted and incorporated as if stated in full herein.

131. Plaintiffs have been damaged by the wrongful actions set forth herein as follows:

    a.    Injury as to the Deceased;

    b.    Death as to the Deceased;

    c.    Emotional distress as the Deceased;

    d.    Fright, mortification and fear as to the Deceased;

    e.    Conscious pain and suffering prior to death as to the Deceased;

    f.    Injury as to all Plaintiffs;

    g.    Emotional distress as to all Plaintiffs;

    h.    Loss of consortium as to all Plaintiffs; and

    i.    Emotional distress as to all Plaintiffs.

## RELIEF REQUESTED

**WHEREFORE**, the Plaintiffs request relief as follows:

[1]. An award of nominal, punitive, compensatory, and presumed damages for the violation of Decedent's constitutional rights and all state causes of action in the amount of ONE HUNDRED MILLION DOLLARS;

[2]. An award of nominal, punitive, compensatory, and presumed damages for the Plaintiff's state law claims in the amounts allowed by Tennessee state law;

[3]. Awarding Plaintiff his attorney and expert witness fees and all other costs of litigation pursuant to 42 U.S.C. §1988, and under other applicable law;

[4].   Pre-judgment and post judgment interest;

[5].   The right to conform the pleadings to the proof and evidence presented at trial; and

[6].   Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to FED. R. CIV. P., Rule 38(b) on all issues so triable.

Respectfully submitted,

By: /s/ *Robin Ruben Flores*
**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff Nathan Smith
4110-A Brainerd Road
Chattanooga, TN 37411
O: (423) 267-1575
F: (423) 267-2703
robin@robinfloreslaw.com

/s/ *Alyson Oliver* (by permission)
**OLIVER BELL GROUP**
***admitted pro hac vice**
**Attorney for NR, JE and LC**
50 W. Big Beaver Road Ste. 200
Troy, MI 48084
O: (248) 327-6556
F: (248) 416-3047
notifications@oliverlawgroup.com

THOMAS & THOMAS, LLC

SUMMERS, RUFOLO & RODGERS, P.C.

By: /s/ *W. Neil Thomas* (by permission)
**W. NEIL THOMAS**
**TENN. BPR #004536**
**MICHAEL THOMAS**
**TENN. BPR #29423**
Attorneys for Plaintiff Nathan Smith
6148 Lee Highway, Suite 115
Chattanooga, TN 37421
O: (423) 910-9100
F: (423) 356-3082
wnthomas@twtlawfirm.com

By: /s/ *Jeffery Rufolo* (by permission)
**TENN. BPR #15013**
Attorneys for Plaintiffs NR, JE and LC
735 Broad Street, Suite 800
Chattanooga, TN 37402
O: (423) 265-2385
jrufolo@summersfirm.com

## CERTIFICATE OF SERVICE

The undersigned attorney for the Plaintiffs hereby certifies that true and exact copies of this motion have been filed and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

By: /s/ Robin Ruben Flores