# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA

| | | |
|---|---|---|
| TABITHA MARIE SMITH (Deceased) | § | |
| (aka Tabatha Marie Colbaugh), | § | |
| by and through her surviving children | § | |
| NATHAN ALEXANDER SMITH, | § | |
| JE through next friend JH, | § | No. 1:24-cv-151-DCLC-CHS |
| NR through next friend SR, and | § | |
| LC through next friend EH, | § | JURY DEMANDED |
| | § | |
| and | § | |
| | § | |
| NATHAN ALEXANDER SMITH, | § | |
| NR through next friend SR, | § | |
| JE through next friend JH, | § | |
| and | § | |
| LC through next friend EH, | § | |
| (individually), | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| ~V~ | § | |
| | § | |
| MEIGS COUNTY, and | § | |
| | § | |
| ESTATE OF ROBERT J. LEONARD (Deceased), | § | |
| by and through Neal Pinkston as | § | |
| Administrator *ad Litem*, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT MEIGS COUNTY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

# TABLE OF CONTENTS

I.    Applicable Legal Standard ................................................................................1

II.   Background ........................................................................................................4

III.  Argument ...........................................................................................................8

    A.  Federal Claims ...........................................................................................8

       i.    Right to Bodily Integrity ......................................................................9

       ii.   Defendant Leonard violated Ms. Smith's Constitutional rights by failing to protect her ..........................................................................................12

       iii.  Monell Liability for Defendant Meigs County ..........................................17

    B.  State Law Claims ......................................................................................23

       i.    Overview of State Law ........................................................................24

       **ii.**   Refusing to exercise supplemental jurisdiction will significantly decrease judicial and party economy ................................................................26

       iii.  State Law Claims Under the GTLA ........................................................28

       iv.   State Law Claims Arising Pursuant to Tenn Code Ann. § 8-8-302 ..........34

       a.   Count IX: Liability Pursuant to Tenn. Code. Ann. § 8-8-302 ....................34

       b.   Count III: Wrongful Death ..................................................................37

       c.   Count V: Intentional Infliction of Emotional Distress. ...........................38

       d.   Count VI: Gross Negligence ................................................................39

IV.   Conclusion........................................................................................................39

NOW COME Plaintiffs Tabitha Marie Smith, Nathan Smith, NR, JE, and LC and for their response in opposition to Defendant Meigs County's Motion to Dismiss submit the following:

## I.     Applicable Legal Standard

When entertaining a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the plaintiff's well-pled factual allegations as true and draw all reasonable inferences in their favor. *See Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018) (citations omitted). Having accepted a plaintiff's factual allegations as true and drawn all reasonable inferences in their favor, "[i]f it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds. *Id.* Moreover, "[a] motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (citation omitted).

It is well documented in civil rights jurisprudence that motions to dismiss are to be carefully scrutinized and only granted in extreme circumstances. *See e.g. Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (motions to dismiss civil rights complaints should be "scrutinized with special care"); *Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 653 (6th Cir. 2011) ("Dismissals of actions brought under the civil rights statutes are scrutinized with special care."); *Azar v. Conley,* 456 F.2d 1382, 1384 n. 1 (6th Cir.1972)); *Scott v. Ambani*, 577 F.3d 642,

646 (6th Cir. 2009) (same); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976) (same); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ("the rule of liberal construction is 'particularly important in civil rights cases.'").

At the 12(b)(6) stage of pleading, the Court "may consider documents incorporated into the complaint by reference . . ." *Campbell v. National Mortgage*, 611 Fed. Appx. 288, 292 (6th Cir. 2015). In their Complaint, Plaintiffs reference "Documents provided by the District Attorney' Office for the 9th Judicial District . . ." **Compl., ¶41**.[1] These documents consist of:

- The February 15, 2024, Tennessee Highway Patrol Critical Incident Response Team Report ("THP Report"). **Exhibit 1**.[2]

- Office of the 9th District Attorney General, Report of Forensic Findings ("Forensic Report"). **Exhibit 2.**

- Office of the 9th District Attorney General, Summary Report of the In-custody Death of Tabatha Smith and Line-of-duty death of Deputy Robert John Leonard ("Summary Report"). **Exhibit 3.**

In addition to considering documents incorporated into a complaint, courts may also take judicial notice of newspaper articles. Fed. R. Evid. 201. *See also Pembaur v.*

---

[1] These documents would also be the appropriate subject of judicial notice as they are public records. *See Moran v. Edie Parker, LLC*, 563 F. Supp. 3d 671, 675 (E.D. Mich. 2021) *citing Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).
[2] Citations to the THP Report are **not** to the internal pagination but rather the full pagination of the document. The other reports are cited by internal pagination.

2

*Cincinnati*, 745 F. Supp. 446, 451 (S.D. Ohio 1990) (taking judicial notice of newspaper articles in its order). Plaintiff cites a number of newspaper articles below for the proposition that accidents involving prisoner transportation occur and can lead to injury.[3] These articles are reproduced in **Appendix A** as required by Fed. R. Evid. 201(c)(2) (requiring the Court be "supplied with the necessary information."). This is also the type of fact that is the proper subject of judicial notice, car accidents are a common occurrence and sometimes people are injured or killed in those accidents. Fed. R. Evid. 201(b)(1).

Plaintiff requests that this Court take judicial notice of the cited newspaper articles, that car accidents happen and people can be injured or killed, and – to the

---

[3] *See, e.g.*, *19 injured in crash involving prisoner transport bus in Lake County, authorities say*, ABC7 CHICAGO, Sept. 4, 2024, https://abc7chicago.com/post/lake-county-19-injured-involving-prisoner-transport-bus-route-120-between-round-grayslake-police-say/15268708/; *2 inmates dead, 5 injured in prisoner transport van crash*, WTVM 9, Apr. 14, 2024, https://www.wtvm.com/2024/04/14/2-inmates-dead-5-injured-prisoner-transport-van-crash/; Audrey Goodson, *OHP: 10 inmates taken to hospitals after fog causes pickup to crash into transport bus near Perkins*, KOCO 5 NEWS, Sept. 25, 2024, https://www.koco.com/article/oklahoma-perkins-sh33-prisoner-transport-bus-crash-fog/62366037; Raymond Baccari, *Providence prisoner transport van involved in Cranston crash*, WPRI, Oct. 6, 2024, https://www.wpri.com/news/local-news/west-bay/providence-prisoner-transport-van-involved-in-crash-in-cranston/; *Deputy, 5 inmates hurt when inmate transport van rear-ended in Detroit*, FOX 2 DETROIT, Sept. 14, 2018, https://www.fox2detroit.com/news/deputy-5-inmates-hurt-when-inmate-transport-van-rear-ended-in-detroit; Colleen Slevin, *A Colorado woman who was handcuffed in a police car hit by a train receives an $8.5M settlement*, AP NEWS, June 5, 2024, https://apnews.com/article/colorado-police-car-train-crash-lawsuit-settlement-6b510265c35e4a16cfb008aee828ab9c.

3

extent necessary – the public documents released by the Tennessee 9th District Attorney General.

## II. Background

At approximately 9:30 P.M on February 14, 2024, Defendant Leonard received a dispatch from the Meigs County Sheriff's Department about an individual in traffic on the highway 60 bridge over the Tennessee River. **Compl., ¶ 39**. Defendant Leonard had only been a deputy with the Meigs County Sheriff's Department since November 5, 2023 – constituting the sum total of his law enforcement experience. **Summary Report, p. 1**. Defendant Leonard left his home in the patrol vehicle provided to him by Defendant Meigs County that lacked a working speedometer, working odometer, and internal GPS navigation system. **Compl., ¶¶ 40–41**. In lieu of an internal GPS system – or one provided by Defendant Meigs County – Defendant Leonard relied on his personal Garmin or cell phone for navigation. **Summary Report, pp., 6, 11**. On the night in question, Defendant Leonard used his phone's GPS to navigate from his home to the location of arrest, but <u>did not use</u> it when attempting to return to the Sheriff's station. *Id.* at p. 6. However, Defendant Leonard's personal Garmin GPS device was active when he left the scene of arrest with Ms. Smith. *Id.* at p. 6.

On that night, Defendant Leonard, a recent transplant to Tennessee from New York, **Summary Report, p. 9**, was responsible for patrolling half of the 217 square

4

miles comprising Meigs County. *Id.* at p. 1. The patrol area is so large that "Sheriff Melton allows his deputies to stop off at their homes . . ." *Id*. at p. 2. Moreover, given the time of night and fog that there was low visibility. *Id.* at p. 6. Despite the size of the area and Defendant Leonard's inexperience both as a law enforcement officer and with the Meigs County area, Defendant Meigs County had Defendant Leonard working alone. *Id.* at p. 1.

After leaving the highway 60 bridge with Ms. Smith at approximately 9:58 P.M., **Forensic Report, p. 35**, Defendant Leonard continued to text his colleague Meigs County deputy Ben Christian, via Facebook, informing him that Ms. Smith had "[w]alked right in front of me too with my lights on." *Id*. at p. 48. Forty-six seconds before driving into the Tennessee River, Defendant Leonard texted his wife "Arrest" and then returned his phone to his vest pocket. **Summary Report, p. 6**. At a minimum, Defendant Leonard texting his wife while driving is a criminal offense. Tenn. Code Ann. § 55-8-199(b).[4]

At the time Defendant Leonard sent this message he was driving more than 50 mph and was less than a mile from the Tennessee River. **Forensic Report, pp. 37–38**. Starting 1663 feet from the Tennessee River on Blythe Ferry Lane there were a number of signs indicating "road ends", "stop", "stop ahead", and "ahead". **THP**

---

[4] Tenn. Code Ann. § 55-8-199(e)(1) does not apply as the message was not sent as part of the discharge of Defendant Leonard's official duties.

5

**Report, p. 19**. There were also five sets of rumble strips starting 1363 feet from the river. *Id*. At a speed of 50 mph,[5] Defendant Leonard covered the 1663-foot span in just 22.7 seconds[6] before driving into the Tennessee River at approximately 10:03 P.M. **Summary Report, p. 6**. As understated by the Attorney General's Report, "It had to have been an unimaginable predicament for the handcuffed Smith who had no way of extricating herself from the backseat compartment with the vehicle underwater." *Id*. at p. 8. Both Ms. Smith and Defendant Leonard died in the Tennessee River.

 Prior to this incident, Defendant Leonard had driven to the terminus of Blythe Ferry Lane on two occasions, both times he "immediately" turned around indicating that he did not realize that the road terminated into the river. **Forensic Report, pp. 39–40**. Both instances occurred in the middle of December, *id*., demonstrating that Defendant Leonard was working on his own just a little over a month after being hired, and an experienced deputy would have informed Defendant Leonard that he was not driving down the correct road. Defendant Leonard received such little training from Defendant Meigs County because they were short-staffed, only having eight of eleven approved deputy positions filled at the time. **Summary Report, p.**

---

[5] His actual speed was likely higher. **Forensic Report, pp. 37–38**.
[6] Math: 50 mph * 5280 ft/m = 264,000 ft/hr → 264,000 ft/h * 1/60 h/min = 4,400 ft/min → 4,400 ft/min * 1/60 min/sec = 73.3 ft/sec. 1663 ft ÷ 77.3 ft/sec = 22.687 seconds.

**9**. Despite having the budget for an additional three deputies, Defendant Meigs County equipped Defendant Leonard with a vehicle that lacked GPS, dash cameras, a working speedometer, or a working odometer. **Compl., ¶ 40**. As a result, Defendant Leonard was forced to purchase a Garmin GPS device to help him navigate the unfamiliar roads of Meigs County. **Summary Report, p. 9**. Defendant Meigs County's decision to send out an untrained deputy and refusal to properly equip its deputies resulted in this eminently foreseeable tragedy.

Images pulled by the Tennessee 9th District Attorney General's Office from Garmin BaseCamp using data from Defendant Leonard's personal Garmin GPS device clearly show a bridge crossing the Tennessee River at Blythe Ferry Lane. *Id.* at p. 38. This inaccuracy of Defendant Leonard's Garmin GPS led him to unreasonably believe that there was a bridge ahead of him; despite having driven down this road twice before and seen it terminate into the Tennessee River.

As the 9th District Attorney General's Report noted:

> Persons reading this report who did not grow up or live most of their lives in Meigs County, or in similar rural areas of East Tennessee located near the Tennessee River, probably have no concept of a rural, two-lane road such as Blythe Ferry Road leading to an old ferry boat landing. Especially an old ferry road that does so without any gate or blockade to prevent someone driving a vehicle directly into the river.

**Summary Report, p. 9**. The conclusion of the Attorney General is consistent with the findings of the Tennessee Highway Patrol: "It is a likely scenario that a lack of knowledge of the roadways, coupled with possible distraction from the cell phone,

7

could cause Deputy Leonard to end up where he did." **THP Report, p. 10.** However, the potential for people to drive vehicles into the Tennessee River from the Blythe Ferry Road – or other similar ferry road – was well known given prior incidents. **Compl., ¶ 53**.

Had Defendant Leonard not been working on his own in an unfamiliar area mere months after first becoming a law enforcement officer, this tragedy would not have occurred. Deputies familiar with the area would have known the vehicle was hurtling towards the Tennessee River and stopped the car before it was too late. At a minimum, deputies familiar with the area would have recognized the risks presented by the fog combined with roads terminating in the Tennessee River. Additionally, a vehicle containing an appropriate GPS device would have notified Defendant Leonard that he was driving straight towards the Tennessee River. And finally, had Defendant Leonard been properly trained on his constitutional duties with respect to the safe transportation of prisoners, he would have refrained from texting while driving, paid attention to his surroundings and road signage, and would have driven at a speed safe for the given road conditions.

### III.    Argument

A. Federal Claims

As an initial matter, Tennessee Government Tort Liability Act ("GTLA") immunity has no bearing on Plaintiffs' Federal civil rights claims. *Cf. Kerchen v.*

8

*Univ. of Mich.*, 100 F.4th 751, 760–67 (6th Cir. 2024) (discussing and applying the doctrines of qualified immunity, sovereign immunity, and state law governmental immunity); U.S. Const., art. VI, cl. 2. (Supremacy Clause). Moreover, because Meigs County is a municipal defendant sued pursuant to *Monell* liability, it is not entitled to qualified immunity. *See Owen v. Independence*, 445 U.S. 622, 638 (1980) ("We hold, therefore, that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983."). Logically then, the portion of this memorandum addressing Plaintiffs' Federal claims will not address any of the immunity defenses articulated by Defendant. *See* **Def's Mot., p. 3–4** (discussing governmental immunity).[7]

For a municipality to be found liable pursuant to *Monell*, there must first be an underlying constitutional violation. *Linden v. City of Southfield*, 75 F.4th 597, 605 (6th Cir. 2023) (citation omitted). For clarity, this section will first address the underlying Constitutional violations before turning to the question of whether Defendant Meigs County is liable.

### i. *Right to Bodily Integrity*

The right to bodily integrity is a well-established core to substantive due process under the Fourteenth Amendment's Due Process Clause. *See Albright v.*

---

[7] These arguments are addressed below in the discussion concerning Plaintiffs' state law claims, as is proper. *Infra* § II(B).

*Oliver*, 510 U.S. 266, 272 (1994). Cases involving the right to bodily integrity come in many forms. One line of cases involves the forcible introduction of something into a person's body. *See Guertin v. Michigan*, 912 F.3d 907, 919–20 (2019) (discussing case involving involuntary introduction of anti-psychotic medications into a person's body). However, as recognized by the Sixth Circuit in *Guertin*, the core tenant of the right to bodily integrity – the "constitutional right to be free from forcible intrusions on their bodies against their will" – is broad. *Id*. at 919 *quoting Planned Parenthood Sw. Ohio Region v. Dewine*, 696 F.3d 490, 506 (6th Cir. 2012).

Defendant argues that "Officer Leonard was simply taking the Decedent into custody and attempting to drive her to the police station . . ." **Def's Mot., p. 13**. This is an understatement. *See supra*, § II (providing factual background). Defendant does not even identify what standard it believes applies in this bodily integrity case. Peculiarly, Defendant cites extensively to *Guertin* which was issued in 2019, and then proffers *Rusu v. City of Birmingham*, 522 F.Supp.2d 833 (6th Cir. 2007) as the Sixth Circuit's "recent" summary of the standard for substantive due process violations. **Def's Mot., pp. 7–13**.

The *Guertin* Court explained that "Deliberate indifference in that shocks in one environment may not be so patently egregious in another . . ." *Guertin*, 912 F.3d at 923 (citation and quotation omitted). Then, to determine whether the conduct of the Flint Water Crises Defendants reached the threshold in that case, the Court

considered four factors, "the time for deliberation, the nature of the relationship between the government and the plaintiff, and whether a legitimate government purpose motivated the official's act." *Id*. at 924. In *Guertin* it was determined that the extensive time for deliberation, involuntary nature of the relationship, and lack of legitimate government purpose weighed in favor of finding deliberate indifference. *Id*. at 924–26. The Court then considered whether each of the defendants acted deliberate indifference or "subjective recklessness . . ." *Id*. at 926–32.

In this case, Defendant Leonard was deliberately indifferent to the risk of harm to Plaintiff. First, in normal circumstances, decisions made while driving are not the split second, rushed judgments of a high-speed chase. Rather, they are conscious choices of "how fast am I going to drive in the fog and dark?", "am I going to read the signs on the road?", "am I going ignore the rumble strips?" This is a far cry from the decision making in high-speed, high-stress, police chases. Defendant Leonard was transporting an arrestee, not running down a NASCAR driver. Yet Defendant Leonard violated Tenn. Code Ann. § 55-10-205 by driving recklessly – speeding and texting despite the road conditions and known hazards and ignoring signs and rumble strips – and Tenn. Code Ann. § 55-8-199 by texting his wife while driving. Violation of these statutes is a criminal misdemeanor. *See Id*.

Second, the relationship was undoubtedly involuntary as Defendant Leonard had arrested Ms. Smith. Finally, Defendant Leonard arguably had a legitimate governmental purpose in transporting Ms. Smith to the Meigs County jail, but that does not extend to decisions to text his wife, drive recklessly, text while driving, ignoring road signage and rumble strips, and to rely on a GPS device that had already led him to the Tennessee River on two previous occasions. His deliberate indifference to Ms. Smith's bodily integrity is what resulted in them both drowning in the Tennessee River.

Thus, under the analysis provided by *Guertin*, Plaintiffs have sufficiently pled a Bodily Integrity claim.

ii. *Defendant Leonard violated Ms. Smith's Constitutional rights by failing to protect her*

It is well known that generally the United States Constitution does not impose an affirmative duty on state officials to prevent injuries to citizens. *See Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). However, it is equally well-established that once state officials remove a person's ability to protect and care for themselves – such as prisoners and pre-trial detainees – the Eighth and Fourteenth Amendments impose an affirmative obligation on state officials to provide protection and care. *Id.* at 196–97. *See also Farmer v. Brennan,* 511 U.S. 825, 832 (1994) ("The [Eighth] Amendment also imposes duties on those officials who must . . . 'take reasonable measures to guarantee the safety of the inmates.'")

12

(citation omitted); *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) ("Thus, under the Fourteenth Amendment, the state has a duty to provide pre-trial detainees with adequate medical care."). In this case, Ms. Smith was in Defendant Leonard's custody when she died, **Compl., ¶¶ 42, 42.**[8] meaning that the affirmative duties of the Fourteenth Amendment apply.

Having established the existence of an affirmative duty to prove a failure to protect claim, a plaintiff must demonstrate:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at a substantial risk of serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Westmoreland v. Butler Cty.*, 29 F.4th 721, 729 (6th Cir. 2022) (citation omitted). In this case, the facts and application of the law are simple. While often concerning the conditions individuals face within jails or prisons, the circumstances and nature of transportation of pretrial detainees also constitute conditions of confinement. *See Turner v. Prisoner Transp. Serv. of Am.*, No. 3:17-cv-01260, 2018 U.S. Dist. LEXIS

---

[8] There is a typographical error in the Complaint resulting in two paragraphs labeled 42. Plaintiff is referencing both of those paragraphs here.

13

51981, at *7–8 (M.D. Tenn. Mar. 28, 2018). In this case, the conditions of Ms. Smith's confinement consisted of:

1) Being handcuffed in the back of Defendant Leonard's patrol car. **Summary Report, p. 8**;

2) *Not* being restrained by a seatbelt. **THP Report, p. 8**;

3) Defendant Leonard driving at excessive speeds given his lack of familiarity with the area, fog, and light conditions. **THP Report, pp. 6, 9**;

4) Defendant Leonard relying on a GPS device he *knew* showed a bridge over the Tennessee River just North of the highway 60 bridge at the location of the Blythe Ferry landing. **Summary Report, p. 9**;

5) Defendant Leonard ignoring rumble strips and road signage. **THP, p. 19**; and

6) Defendant Leonard texting while driving – a criminal misdemeanor pursuant to Tenn. Code Ann. § 55-8-199(d).

Each of these conditions was a result of conscious decisions made by Defendant Leonard. First, he chose to leave Ms. Smith handcuffed in his back seat without a seatbelt. Second, he chose to drive at speeds in excess of what was safe given his unfamiliarity with the area, the time of night, the fog, and his knowledge that the GPS he relied upon incorrectly showed a bridge over the Tennessee River in the area of highway 60. Even though Defendant Leonard could not know his exact speed because Defendant Meigs provided him with a defective patrol vehicle – he should

14

have known that he was travelling too fast on an unfamiliar dark and foggy country road in an area where he knew his GPS was inaccurate. Finally, Defendant Leonard was paying attention to his phone for personal communications with his wife instead of paying attention to the road and its signage.

The choices made by Defendant Leonard exposed Ms. Smith to a substantial risk of harm in the form of an accident – with another vehicle, an animal such as a deer, or – as was the case – with the Tennessee River. And Defendant Leonard could have mitigated the risk to Ms. Smith by seat belting her in the back of the patrol vehicle, reducing his speed, paying attention to the road and signage, and not relying on faulty GPS navigation.[9]

In *Levar Five Daily v. CCA-WCFA Whiteville Transp. Officers*, No. 3:18-cv-0146, 2018 U.S. Dist. LEXIS 55825 (M.D. Tenn. Apr. 2, 2018), the Court rejected the plaintiff's Eighth Amendment conditions of confinement claim because:

> Other than noting that Defendant Caldwell was driving at excessive speeds, Plaintiff's allegations do not suggest that Defendant Caldwell acted with deliberate indifference to a substantial risk to Plaintiff's safety. Plaintiff does not suggest that Defendant Caldwell was driving too fast for the road conditions, that he was tailgating or following any other vehicles too closely, or that, prior to the incident with the 18-wheeler, Defendant Caldwell was driving erratically. Likewise, Plaintiff does not suggest that anyone told Defendant Caldwell to slow down or that Defendant Caldwell's employing his cell phone was causing him to drive dangerously.

---

[9] Defendant Meigs County's liability is addressed in the next section.

15

*Id*. at \*11–12. As an initial matter, a pretrial detainee's failure to protect claim lacks the subjective element found in comparable Eighth Amendment cases. *See Westmoreland v. Butler Cty.*, 29 F.4th 721, 729 (6th Cir. 2022). In this case, Plaintiffs have clearly pleaded facts demonstrating that Defendant Leonard was driving too fast for the road conditions, and his unfamiliarity with the region all while using his cell phone. Even ignoring the known risk of driving into the Tennessee River, driving at excessive speeds late at night in the fog created an excessive risk of striking an animal, vehicle, or person walking in the road. And without Ms. Smith being seat belted into the patrol car, even a minor accident could have caused her serious injury.

In *Falls v. Cnty. of Riverside*, No. 5:19-02311, 2022 U.S. Dist. LEXIS 107644 (N.D. Cal. Mar. 16, 2022), the Court found an Eighth Amendment violation where a large inmate was attached to other inmates in a bus and seated in a precarious position and the driver crashed into another vehicle due to his erratic driving. *Id*. at \*13–14. The *Falls* Court also collected a significant number of cases addressing liability for officers who recklessly drove vehicles knowing there was a substantial risk of injury. *Id*. at \*12–13 (collecting cases from the Ninth and Fifth Circuits).

The standard applicable in this case under the Fourteenth Amendment lacks the requirement of subjective knowledge. *Westmoreland v. Butler Cty.*, 29 F.4th 721, 729 (6th Cir. 2022). Even applying the more stringent Eighth Amendment standard,

Defendant Leonard *had* subjective knowledge of the substantial risk to Ms. Smith's safety because he *knew* one of the roads in the area he was driving on ended in the Tennessee River. **Forensic Report, pp. 39–40**. Additionally, subjective knowledge of a substantial risk must be inferred based on the presence of rumble strips which – unlike signs – cannot be missed when looking at a phone so long as one is driving on the road.

For these reasons, Defendant Leonard violated Ms. Smith's rights by failing to protect her as required by the Fourteenth Amendment to the United States Constitution.

### iii.    *Monell Liability for Defendant Meigs County*

In civil rights litigation pursuant to 42 U.S.C. § 1983, there is no *respondeat superior* liability for municipalities. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, for liability to attach to a municipality a plaintiff must demonstrate that a municipal custom or policy was the driving force behind a violation of their constitutional rights. *See Id*. Even so, there need not be a formal written policy to find a municipality liable. "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) *citing City of Canton v. Harris*, 489 U.S. 378, 387 (1989). A municipality can therefore be found liable if: "(1) the training or supervision was inadequate for the tasks performed; (2) the

17

inadequacy was a result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Id*.

In Defendant's extensive block quote of *City of Canton v. Harris*, 489 U.S. 378 (1989), one of the questions asked by the Supreme Court is, "would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id*. at 391.[10] The answer in this case is simple – yes. Defendant Leonard would not have driven himself into the Tennessee River at around 50 mph had he been properly familiarized with his patrol area. Would this have been avoided if Defendant Leonard was supervised by an experienced deputy? Also yes, because an experienced deputy who, being properly familiarized with the patrol area, would not have allowed Defendant Leonard to drive them into the Tennessee River. The same holds true when asking whether training Defendant Leonard on his constitutional obligation to pretrial detainees or providing him with adequate safety equipment.

Defendant also argues that "Plaintiffs do not allege that there has been '[a] pattern of similar constitutional violations by untrained employees' by MEIGS' as is required for a 'failure to train' claim to survive a Motion to Dismiss." **Def's Mot., p. 6**. Defendant Meigs County is conspicuously ignoring the *other* way to prove a

---

[10] **Def's Mot., p. 5.**

18

failure to train case discussed in the two-page block quote from *City of Canton* in the preceding pages. *Id*. at pp. 4–6.[11] As *City of Canton* clearly explains:

> But it may happen that in the light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton*, 489 U.S. at 389 *quoted by* **Def's Mot., p. 5**.

For example, in *Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020), the plaintiff alleged:

> [T]hat Dearborn Heights did not provide *any* training to its police officers regarding the use of excessive force and handcuffing procedures prior to her arrest. It also did not provide any training regarding probable cause determinations. Plaintiff further alleges that Dearborn Heights never conducts performance evaluations for its police officers and did not otherwise supervise or monitor its officers' conduct.

*Id*. at 286. (emphasis original). Importantly, the *Ouza* plaintiff did not allege prior instances of misconduct to establish the municipalities deliberate indifference. *Id*. at 287–88. Despite this, the Sixth Circuit found that the failure to provide any training was constitutionally inadequate given the frequency these situations would arise. *Id*. at 289.

In this case, the recurring task at issue is the transportation of prisoners. Much like the use of deadly force, "city policymakers know to a moral certainty that their

---

[11] Defendant also ignores it in *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024).

19

police officers will be required to" transport pretrial detainees after an arrest. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) *quoting Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). Defendant Meigs County admits as much by arguing that the transportation of prisoners "occurs hundreds if not thousands of times per day in the United States." **Def's Mot., p. 14**.

Defendant argues that on its own, transportation of a prisoner is not an "inherently unsafe . . . act." **Def's Mot., p. 14**. Defendant not only misses the point on this but is also incorrect. There are *always* risks associated with driving as evidenced by the number of traffic deaths reported each year. The risk of an accident increases when drivers are not paying attention, speeding, and disregarding road signage.[12] Moreover, it is not uncommon for people in the custody of state officials to be injured, or even killed, during transportation. **Appendix A**. This type of incident is common enough that individual defendant officers lose qualified immunity arguments on the clearly established prong. *See, e.g.*, *Scott v. Becher*, 736 Fed. Appx. 130, 134 (6th Cir. 2018) ("Becher could not reasonably have believed that driving recklessly while Scott and the other prisoners were not wearing seatbelts was lawful."); *Falls v. Cty. Of Riverside*, No. 5:19-02311, 2022 U.S. Dist. LEXIS 107644, (C.D. Cal. Mar. 16, 2022) at *12–13 (collecting cases), *16 (denying qualified immunity). Given that Meigs County owes an affirmative duty to protect

---

[12] Evidenced by all the legislation designed to address these issues.

those within its custody pursuant to the Eighth or Fourteenth Amendments and the obvious risks associated with transportation of those people, the failure to take any steps to mitigate that risk amounts to deliberate indifference. *See Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020). This was particularly true in the case of Leonard who had never lived in Tennessee prior to moving there in 2022. **Summary Report, p. 9**. As the District Attorney noted:

> Persons reading this report who did not grow up or live most of their lives in Meigs County, or in similar rural areas of East Tennessee located near the Tennessee River, probably have no concept of a rural, two-lane road such as Blythe Ferry Road leading to an old ferry boat landing. Especially an old ferry road that does so without any gate or blockade to prevent someone from driving a vehicle into the river.

**Summary Report, p. 9**. While some dangers associated with transporting prisoners are likely to be the same in any jurisdiction – other drivers, construction, vehicle failure, etc. – not all risks are universal such as driving into the Tennessee River. However, as alleged in the Complaint, *this was not the first time someone had driven into the river at this location*. **Compl., ¶ 53**. Thus, Meigs County was – or should have been – aware of both the general risks associated with transporting prisoners but also the added risks posed by the unique driving conditions in Meigs County. Instead of ensuring that Leonard spent adequate time working with another deputy so that he was familiar with the area and its risks, he was working on his own in an unfamiliar area in less than a month. *See* **Forensic Report, pp. 39–40**. This is

21

consistent with Defendant Meigs County policy of deliberate indifference to the rights of people within the custody of the County

Additional evidence also supports the County's deliberate indifference to the safety of people being transported by its deputies such as Leonard being sent out in a patrol vehicle that lacked a working speedometer, odometer, or any navigation system. **Compl., ¶40**. In particular, the absence of a working speedometer prevents deputies from having real-time data on their speed – something that is particularly important at night in the fog in an area that has roads terminating into the Tennessee River. It is rich that Defendant argues that Plaintiff is attempting to "bootstrap" allegations of Leonard driving at an excessive speed to the conduct of Meigs County, **Def's Mot., p. 15**, when it was Meigs County that sent him out in a patrol car without a working speedometer. **Compl., ¶ 40**. Thus, while Leonard may have known that he was driving faster than the conditions and his knowledge permitted, he was unable to ascertain precisely how fast he was going based on decisions made by Meigs County. The lack of internal GPS and dash cameras in Meigs County Sheriff vehicles further underscores the indifference of Meigs County to whether its employees were driving in a safe manner with or without the presence of a prisoner as there were no safeguards in place to permit a review of deputy conduct and driving. As held by the Sixth Circuit in *Ouza*:

> Plaintiff further alleges that Dearborn Heights failed to adequately
> supervise its police officers because the City does not conduct

22

performance evaluations of its officers and it does not otherwise review or monitor the officers' conduct . . . Taken together with Plaintiff's evidence of inadequate training, this evidence further demonstrates a factual dispute as to Dearborn Height's deliberate indifference to its citizens' constitutional rights.

*Ouza v. City of Dearborn Heights*, 969 F.3d 265, 289 (6th Cir. 2020).

Overall, these facts demonstrate that Defendant Meigs County customs and policies set Defendant Leonard up for failure in the face of known risks associated with transporting prisoners by sending him off on patrol alone in an unfamiliar area without adequate safety equipment. Thus, the customs and policies of Meigs County directly led to the violation of the affirmative duty to protect Ms. Smith from harm while in custody. For these reasons, and the judicial preference for resolving civil rights claims on the merits, *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012), Defendant Meigs County is not entitled to dismissal.

B. State Law Claims

Defendants separately move to dismiss Plaintiffs' state law claims arguing that this Court should decline to exercise supplemental jurisdiction because of a statutory preference for State court and that Plaintiff's claims are otherwise barred by the Tennessee Government Tort Liability Act ("GTLA"). **Def's Mot., pp. 16–27**. This Court should DENY Defendants' Motion as to Plaintiffs' claims arising pursuant to Tenn. Code Ann. § 8-8-302 as there are no reasons to decline supplemental jurisdiction, Defendant failed to develop those arguments, and the

23

statute provides an independent cause of action against Defendant. As to Plaintiffs' claims pursuant Tenn. Code Ann. § 29-20-205, this Court is bound by the incorrect decision in *Mosier v. Evans,* 90 F.4th 541 (6th Cir. 2024). However, that decision is narrow in scope, applying only to claims under § 29-20-205 not claims pursuant to § 29-20-202 or § 8-8-302. Defendant attempts to obfuscate the issues by vaguely pointing to the *Mosier* decision and asking this Court not to look under the hood. Defendant's reliance is misplaced.

Before addressing the substance of each claim, however, it is necessary to understand the role each statute plays. This section will first provide an overview of the relevant State law before addressing Defendant's arguments on supplemental jurisdiction and finally turning to the substance of Plaintiffs' State law claims.

i.    *Overview of State Law*

Given that application of the proper law will have a negative impact on Defendant Meigs County, it is *somewhat* unsurprising that they do not explain the complex web of statutes and binding court decisions that govern Plaintiffs' state law claims. However, to properly adjudicate this matter the Court must have the information.

As a political subdivision of the State of Tennessee, Defendant Meigs County is entitled to avail itself of the common law doctrine of sovereign immunity. *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.2d 352, 360 (Tenn. 2011).

Thus, political subdivisions of the State such as Defendant Meigs County may only be sued (under State law) where that immunity is expressly waived. *Lawson v. Hawkins Cty.*, 661 S.W.3d 54, 59 (Tenn. 2023) (quoting *Hughes supra*). There are at least two circumstances in which the Tennessee Legislature has expressly waived sovereign immunity.

Through the GTLA Tennessee has waived sovereign immunity in a number of cases for all governmental entities, Tenn. Code Ann. §§ 29-20-201–-209. This includes a waiver of immunity for injury caused by negligent conduct of governmental employees. Tenn. Code Ann. § 29-20-205. Consistent with normal rule of statutory construction that waivers of sovereign immunity are to be construed narrowly, the Tennessee Supreme Court has found that this section "removes immunity only for ordinary negligence, not gross negligence or recklessness." *Lawson*, 661 S.W.3d at 59.

Through Tenn. Code Ann. § 8-8-301, Tennessee immunized county deputies from liability for state law claims arising from injuries caused by "any act or failure to act on the party of any deputy . . ." *Id*. Section 8-8-302 then funnels those claims against deputies who were acting under the color of state law "against the county in which the sheriff serves . . ." Tenn. Code. Ann. § 8-8-302. As the Tennessee Supreme Court has explicitly recognized, "[a]ctions for the non-negligent misconduct of deputies do not 'arise pursuant to' the GTLA, T.C.A. § 29-20-104(b), and may

25

therefore be covered by T.C.A. § 8-8-301 *et seq.*, in the appropriate cases." *Jenkins v. Loundon Cty.*, 736 S.W.2d 603, 610 (1987), *abrogated on other grounds by Limbaugh v. Coffee Med. Ctr.*, 59 S.w.3d 73 (Tenn. 2001) *followed by Walker v. Shelby Cty.*, No. W2022-00466-COA-R3-CV, 2023 Tenn. App. LEXIS 147 at *20 (Tenn. Ct. App. Apr. 19, 2023).

Thus, the GTLA applies only to Plaintiffs' claim of negligence, **Count VII**, while Plaintiffs' State law claims of wrongful death, intentional infliction of emotional distress, and gross negligence – **Counts III, V,** and **VI** respectively – are governed by Tenn. Code. Ann. 8-8-302. Thus, Defendant's arguments concerning *Mosier* and the GTLA are inapplicable to **COUNTS III, V,** and **VI**.

ii.    *Refusing to exercise supplemental jurisdiction will significantly decrease judicial and party economy*

This Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C § 1367(a); however, Defendant asks this Court to exercise its discretion pursuant to 28 U.S.C. § 1367(c) because the statutory preference for state courts in the GTLA constitutes "exceptional circumstances" that permits this Court to decline to exercise its supplemental jurisdiction. **Def's Mot., p. 17**. As discussed above, the only State law claim arising under the GTLA is Plaintiffs' negligence claim, COUNT VII, Plaintiffs' other claims are brought pursuant to Tenn. Code Ann. § 8-8-302. *Supra*, § III(b)(i).

Defendant argues that because the GTLA provides "[t]he circuit courts [of Tennessee] have exclusive jurisdiction over any action brought under this chapter", this Court should decline supplemental jurisdiction over Plaintiff's state law claims. **Def's Mot., p. 17** *quoting* Tenn. Code Ann. § 29-20-307 (alteration original). And it is certainly true that courts within the Sixth Circuit have often declined to exercise supplemental jurisdiction over claims brought pursuant to Tennessee's GTLA. *See, e.g.*, *Joy v. Hardeman Cty.*, No. 1:24-cv-1232, 2025 U.S. Dist. LEXIS 17782, at *4–5 (W.D. Tenn. Jan. 17, 2025) (collecting cases). However, Courts in the Sixth Circuit have rejected arguments that the GTLA requires federal courts to decline supplemental jurisdiction and refused to dismiss those claims in certain circumstances. For example, in *Brown v. City of Memphis*, 440 F. Supp. 2d 868 (W.D. Tenn. 2006), the District Court declined to dismiss the supplemental state law claims because:

> Dismissal of Plaintiffs' state law claims would necessitate duplicative litigation which would be wasteful of judicial and litigant resources. Even if the Tennessee legislature had stated a clear preference that GTLA claims be heard in state court, such a preference would not create a sufficiently exceptional circumstance to warrant dismissal of Plaintiffs' state claims under § 1367(c)(4).

*Id*. at 878. Similarly, in *White v. Wash. Cty.*, 85 F. Supp. 3d 955, 957–58 (E.D. Tenn. 2015), the District Court refused to decline supplemental jurisdiction because doing so would result in another lawsuit and "would be duplicative and a waste of judicial and the parties' resources." *Id*. at 958. Compounding the waste of judicial resources,

27

Plaintiffs' § 8-8-302 claims, **Counts III, V, and VI**, do not present the same consideration of statutory preference as they fall outside the GTLA. Thus, only one claim – **Count VII** – *arguably* presents an exceptional circumstance under which the Court *may* decline to exercise jurisdiction.

Given the considerations of judicial economy recognized in *Brown* and *White* and the mere preference for GTLA litigation to occur in State courts, this case does not present the "exceptional circumstance" required by 28 U.S.C. § 1367(c)(4). And for this reason, the Court should continue to exercise supplemental jurisdiction over Plaintiffs' State law claims.

    iii.    *State Law Claims Under the GTLA*

As previously discussed, Tenn. Code. Ann. § 29-20-205, applies exclusively to claims of negligence. *See Lawson v. Hawkins Cty.*, 661 S.W.3d 54, 59 (Tenn. 2023). Thus, Plaintiffs only address Defendant's arguments concerning negligence, **COUNT VII** of their Complaint, here.

This Court is bound by *Mosier v. Evans*, 90 F.4th 541 (6th Cir. 2024) to the extent that Plaintiffs cannot assert a claim against Defendant Meigs County pursuant to Tenn. Code. Ann. 29-20-205 because of the civil rights exemption. *Id*. at 555.[13] The Defendant argues that Plaintiffs cannot simultaneously plead negligence in

---

[13] Defendant only raises *Mosier* with respect to Plaintiffs' gross negligence claims, **Def's Mot., pp. 19–24**, where it does not apply pursuant to *Lawson v. Hawkins Cty.*, 661 S.W.3d 54, 59 (Tenn. 2023).

avoidance of governmental immunity *and* Federal civil rights claims pursuant to 42 U.S.C. § 1983. **Def's Mot., pp. 19–23**. But again, the failure to train and to provide properly functioning equipment was an arbitrary exercise of governmental power that led to the death of the Ms. Smith.

Plaintiffs argue against the application of *Mosier* below to preserve their rights on appeal. However, before addressing § 29-20-205, it is important to note that there is another section of the GTLA that renders governmental subdivisions liable for negligent conduct of their employees, Tenn. Code Ann. § 29-20-202 which removes immunity "for injuries resulting from the negligent operation by any employee of a motor vehicle . . .". Being the more specific statute, this one is controlling. *See Donovan v. Firstcredit, Inc.*, 983 F.3d 246, 257 (6th Cir. 2020); *Lovelace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013). Importantly, § 29-20-202 lacks the civil rights exemption found in § 29-20-205(2), making *Mosier* irrelevant to Defendant Meigs' liability under Plaintiffs' negligence claim. *See Mosier v. Evans*, 90 F.4th 541, 551 (6th Cir. 2024) (identifying Tenn. Code Ann. § 29-20-205(2) as the disputed statute). Put simply, Tenn. Code Ann. § 29-20-202 makes Defendant Meigs County liable for Defendant Leonard's negligent driving notwithstanding the civil rights exemption found in §29-20-205(2). As explained by the *Mosier* Court, "The GTLA then selectively waives that broad grant of immunity and creates exceptions to those waivers." *Mosier, supra* at 550. Section 29-20-202 is one waiver while § 29-20-205

29

is another. Section 29-20-205(2) then operates as an exemption to waiver of immunity provided by § 29-20-205.

Moreover, *Mosier* was wrongly decided. As noted by the dissent in *Mosier*, "the majority's interpretation reflects an alarming possibility: Court's may use the civil rights exception to swallow broad classes of claims that plaintiffs are entitled to plead simply because they can in some way be characterized as relating to civil rights." *Moiser* at 562 (Clay, Judge). The classes of claims in this regard and in the case at hand would be those outside of Tenn. Code Ann. § 29-20-205, such as Wrongful Death (Tenn. Code Ann. § 20-5-106), Removal of Immunity for injury from negligent operation of a motor vehicle (Tenn. Code Ann. § 29-20-202), and suits against counties for the wrongs resulting from *any act or failure to act* of deputies (Tenn. Code Ann. § 8-8-302).

The *Moiser* Court's ruling also ignores the Supremacy Clause that prohibits states from creating laws that "interfere with, or are contrary to the laws of congress." *Wisconsin Pub. Intgervenor v. Mortier*, 501 U.S. 597, 604 (1991). In *Howlett v. Rose*, 496 U.S. 356, 380-81 (1990), the United States Supreme Court ruled a Florida law that gave absolute immunity to cities and counties who might be subject to civil rights actions violated the Supremacy Clause of the United States Constitution. In order to preserve argument for appeal, if necessary, Plaintiffs will review present applicable law.

Plaintiffs can claim alternate theories of recovery. Federal Rule of Civil Procedure 8(d)(2) permits a party to set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones. The rule further states that if a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. *See* FED. R. CIV. P., Rule 8. Additionally, Rule 8(d)(3) allows a party to state as many separate claims or defenses as it has, regardless of consistency.

Case law supports this interpretation. In *Pirata P.S.C. v. Bank of America, N.A.*, the court noted that litigants in federal court may pursue alternative theories of recovery, regardless of their consistency, and that the Federal Rules of Civil Procedure permit claims to be pled in the alternative. *See Pirata P.S.C. v. Bank of America, N.A.*, 709 F.Supp.3d 353, 358 (2024). *See also See Hayward v. Genworth Life Ins. Co.,* 2009 U.S. Dist. LEXIS 148131, at *6 (S.D. Ohio July 7, 2009) ("Rule 8(e)(2) allows Plaintiffs to present alternate theories of recovery") Similarly, in *Swetlic Chiropractic & Rehabilitation Center, Inc. v. Foot Levelers, Inc.*, the court confirmed that the Federal Rules explicitly authorize the litigation strategy of alleging alternative bases of liability in a complaint. 235 F.Supp.3d 882, 886 (S.D. Ohio 2017). Moreover, in *Banks v. City of Forest Park,* the court allowed plaintiffs to proceed on dual theories of recovery, including 42 U.S.C. § 1983, despite objections of redundancy. 599 F.Supp. 465, 473 (S.D. Ohio 1984). This indicates

that courts may permit plaintiffs to pursue multiple theories of relief arising from the same set of facts.

In light of the argument *supra* the Defendant appears to claim that state law on negligence overrides the Plaintiff's constitutional claims. Generally, negligence does not amount to a constitutional violation, *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015), and the Defendant cannot flex a state law to override federal law. *See Felder v. Casey*, 487 U.S. 131, 150 (1988) (superseded by statute that does not apply here) (state rules may not impose unnecessary burdens upon rights of recovery authorized by federal laws); *Williams v. Reed*, No. 23-191, 2025 WL 567335, at *4 (U.S. Feb. 21, 2025) (a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted). However, the Defendant has overlooked that a special relationship existed between Deputy Leonard, Meigs County, and Ms. Smith, thus creating a special duty upon the defendants.

A special relationship between the state actors and a plaintiff exists where the plaintiff is in the custody of the state or otherwise placed the plaintiff in a helpless or dependent position. *See Davis v. Brady*, 143 F.3d 1021, 1024 (6th Cir. 1998) (quoting, *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). *See also Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir. 1997) ("it has been clearly established that such a duty will arise when the state has acted to deprive an individual of certain indicia of liberty")

32

Meigs County asserts that state law should preclude the Plaintiffs from recovery based upon a constitutional claim. But Meigs County's assertion misses the mark. A violation of the special relationship between the Defendants and Ms. Smtih is tantamount to a violation of Substantive Due Process. The right to substantive due process prohibits the government from infringing on "fundamental rights" without sufficient justification. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982). "To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metropolitan Gov't of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994)).

In the present case, Deputy Leonard placed Ms. Smith into custody with her hands cuffed behind her back, then drove at excessive speeds in fog and along an unlit country road and plunged headlong into a river where Ms. Smith endured a gruesome death. Additionally, Deputy Leonard did this while texting and driving in a reckless and criminal manner. Moreover, Meigs County, a governmental actor who

33

is responsible for law enforcement services, provided rookie Deputy Leonard little to no training of the dangerous roadways, especially Blythe Ferry Road where others have driven into the same river at the same location. Furthermore, Meigs County provided Deputy Leonard with a sub-standard police vehicle that did not have a properly functioning speedometer, odometer, nor a navigation device.

For these reasons, the Court should DENY Defendant's motion as **to COUNT VII**, negligence.

iv.    *State Law Claims Arising Pursuant to Tenn Code Ann. § 8-8-302*

Defendant Meigs County's failure to properly consider Plaintiffs' State law claims can only be a result of its failure to research the issue, as demonstrated by the absence of development of arguments related to Tenn Code Ann. § 8-8-302. **Def's Mot., p. 27**. As discussed *supra*, § 8-8-302 applies to **Counts III, V, and VI**. Defendant failed to recognize that its liability derives from the misconduct of its deputy:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from *any act or failure to act* on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302(a) (emphasis added). This statute stands alone and was not addressed by the *Moiser* Court.

a.  *Count IX: Liability Pursuant to Tenn. Code. Ann. § 8-8-302*

Defendant argues that it is entitled to dismissal because "Tenn. Code Ann. § 8-8-302 does not create any independent or additional grounds that need to be addressed here." **Def's Mot., p. 27**. Defendant fails to cite any cases or even the statutory language to support its argument and fails to elaborate on this issue, despite requesting a page extension, (ECF No. 72),[14] and has therefore waived its arguments. *See Honigman, Miller, Schwartz & Cohn, L.L.P. v. Adell*, 405 B.R. 192, 230 (E.D. Mich. 2009) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and internal quotation omitted) (alterations original).

Meigs County also appears to claim, without elaboration, that the Tennessee Governmental Tort Liability Act ("GTLA") overrides any other statute involving county law enforcement. But the GTLA does not preclude a party from proceeding against the county employer under Tenn. Code Ann. § 8-8-302 for non-negligent acts committed by a law enforcement officer.[15] The GTLA generally provides immunity to governmental entities for the intentional torts of their employees, but Tenn. Code Ann. § 8-8-302 specifically allows for suits against the county for wrongs arising from any acts or failures to act committed by deputies.

---

[14] Used for unreasonably long block quotes.
[15] As negligence is covered by the GTLA.

35

The rule of statutory construction applies in this instance. Tenn. Code Ann. § 8-8-301, *et seq*. was enacted in 1972. *See Jenkins v. Loudon Cty.*, 736 S.W.2d 603, 605 (Tenn. 1987). The GTLA was effective in 1974. *See Id.* If there is an irreconcilable conflict between a former law and a subsequent law the former law is repealed by implication. *See Jenkins*, at 607.

The Tennessee Supreme Court addressed this issue:

> In *Jenkins v. Loudon County,* 736 S.W.2d 603 (Tenn. 1987) the Supreme Court had to parse out what part, if any, of Tenn. Code Ann. § 8-8-302 survived the adoption of the Governmental Tort Liability Act in 1973 (GTLA) and its subsequent amendments. The Court concluded that in appropriate cases a county could still be sued under Tenn. Code Ann. § 8-8-302 for "the non-negligent conduct of deputies." 736 S.W.2d at 609. The GTLA governed other cases.

*Erwin v. Rose*, 980 S.W.2d 203, 209 (Tenn. Ct. App. 1998). See also *Walker v. Shelby Cty.*, No. W2022-00466-COA-R3-CV, 2023 Tenn. App. LEXIS 147 at *20 (Tenn. Ct. App. Apr. 19, 2023) (quoting *Jenkins v. Loudon Cty.*, 736 S.W.2d 603, 609 (Tenn. 1987) ("Despite the enactment of the GTLA, section 8-8-302 remains a viable cause of action when dealing with the 'misconduct of sheriff's deputies . . .'")

In the instant matter, Plaintiffs plead that Defendant Leonard drove in such a manner as to constitute gross negligence, deliberate indifference, or something more. His excessive speed in a remote, unlit road in fog during hours of darkness coupled with his use of a cell phone to text message was at best a violation of Tennessee

criminal statutes prohibiting reckless driving and reckless endangerment.[16] Because these are distinct from a claim of mere negligence, these claims are not covered by § 205 of the GTLA and fall within the scope of § 8-8-302. Defendant Meigs County's claim that the GTLA somehow overrides Tenn. Code Ann. § 8-8-302 has no merit. For these reasons, Defendant is not entitled to dismissal on Plaintiffs State law claims pursuant to Tenn. Code. Ann. § 8-8-302.

### b. Count III: Wrongful Death

Defendant argues that the Court must dismiss Plaintiffs' wrongful death claim, **COUNT III**, because "Count Three of the Complaint does not state any allegations against MEIGS." **Def's Mot., p. 17**.[17] The Defendant's claims are off target.

In Tennessee, the liability of a county for the wrongful death of an arrestee caused by a deputy sheriff is governed by the Tennessee Governmental Tort Liability Act (GTLA). Under the GTLA, immunity from suit is generally removed for injuries proximately caused by the negligent act or omission of a county employee within the scope of their employment, with certain exceptions. *See* Tenn. Code Ann. § 29-

---

[16] *See* Tenn. Code Ann. §§ 55-10-205 (Reckless driving); 39-13-103 (Reckless endangerment); and 55-8-199 (Prohibiting texting while driving).

[17] Defendant also makes arguments concerning supplemental jurisdiction, which Plaintiffs addressed in the previous section because they apply to all of Plaintiffs' State law claims.

20-205. Missing from the statute is wrongful death under Tenn. Code Ann. § 20-5-106.

For the county to be held liable under the GTLA, it must be shown that the deputy's actions were negligent and that this negligence was the proximate cause of the arrestee's death. *See* Tenn. Code Ann. § 29-20-310(a). Additionally, the deputy must have been acting within the scope of his employment, and none of the exceptions to liability under the TGTLA must apply. *See Id.* The county can still be liable for the deputy's conduct under the alternate theory that Deputy Leonard's conduct was intentional if, as in this case, the County assumed responsibility for the Ms. Smith's safety and owed a duty of care to protect against foreseeable harm. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 81 (Tenn. 2001).

The Defendant failed to train Deputy Leonard on the dangers of his assigned areas of patrol. The Defendant failed to provide Deputy Leonard with a properly functioning police vehicle. The combination of these two instances alone created a reasonably foreseeable calamity, such as driving too fast on a dangerous road toward a river.

Even if there were not such an exception recognized by Tennessee's Courts, Plaintiffs' wrongful death claim, **COUNT III**, would still survive pursuant to Tenn. Code Ann. § 8-8-302.

    *c. Count V: Intentional Infliction of Emotional Distress.*

By virtue of state law, Plaintiffs' claims of intentional infliction of emotional distress, **COUNT V**, will be channeled against Defendant Meigs County pursuant to Tenn. Code Ann. § 8-8-302.

###### d. *Count VI: Gross Negligence*

Defendant used five pages of its brief to quote *Mosier v. Evans,* 90 F.4th 541 (6th Cir. 2024) to argue that Plaintiffs cannot simultaneously plead gross negligence in avoidance of governmental immunity *and* Federal civil rights claims pursuant to 42 U.S.C. § 1983. **Def's Mot., pp. 19–24**. However, *Mosier* only applies within the confines of Tenn. Code Ann. § 29-20-205. *See Mosier*, *supra* at 550–555.

As alleged by Plaintiffs in **COUNT VI**, Defendant Leonard's conduct constituted gross negligence, and Defendant Meigs County is liable pursuant to Tenn. Code Ann. § 8-8-302.

### IV. Conclusion

WHEREFORE, Plaintiffs respectfully request that this Court DENY Defendant Meigs County's Motion to Dismiss.

Respectfully submitted,

By: /s/ Robin Ruben Flores
**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff Nathan Smith
4110-A Brainerd Road
Chattanooga, TN 37411
O: (423) 267-1575
F: (423) 267-2703

/s/ Alyson Oliver
**OLIVER BELL GROUP**
**\*admitted pro hac vice**
**Attorney for NR, JE and LC**
50 W. Big Beaver Road Ste. 200
Troy, MI 48084
O: (248) 327-6556
F: (248) 416-3047
notifications@oliverlawgroup.com

39

robin@robinfloreslaw.com

| THOMAS & THOMAS, LLC RODGERS, P.C. | SUMMERS, RUFOLO & |
|---|---|

By: /s/ W. Neil Thomas

**W. NEIL THOMAS**

**TENN. BPR #004536**

**MICHAEL THOMAS**

**TENN. BPR #29423**

Attorneys for Plaintiff Nathan Smith

6148 Lee Highway, Suite 115

Chattanooga, TN 37421

O: (423) 910-9100

F: (423) 356-3082

wnthomas@twtlawfirm.com

By: /s/ Jeffery Rufolo

**TENN. BPR #15013**

Attorneys for Plaintiffs NR, JE and LC

735 Broad Street, Suite 800

Chattanooga, TN 37402

O: (423) 265-2385

jrufolo@summersfirm.com

Dated: March 10, 2025.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney for the Plaintiffs hereby certifies that true and exact copies of this motion have been filed and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

By: /s/ Robin Ruben Flores