## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA

TABITHA MARIE SMITH (Deceased)      §
(aka Tabatha Marie Colbaugh),      §
by and through her surviving children      §
NATHAN ALEXANDER SMITH,      §
JE through next friend JH,      §      No. 1:24-cv-151-DCLC-CHS
NR through next friend SR, and      §
LC through next friend EH,      §      JURY DEMANDED
     §
and      §
     §
NATHAN ALEXANDER SMITH,      §
NR through next friend SR,      §
JE through next friend JH,      §
and      §
LC through next friend EH,      §
(individually),      §
     §
           *Plaintiffs,*      §
     §
~V~      §
     §
MEIGS COUNTY, and      §
     §
ESTATE OF ROBERT J. LEONARD (Deceased),      §
by and through Neal Pinkston as      §
Administrator *ad Litem*,      §
     §
           *Defendants.*      §

## FOURTH AMENDED COMPLAINT

PLAINTIFFS, Nathan Alexander Smith ("Smith"), NR through next Friend SR, JE through

next friend JH, and LC through next friend EH, in their individual capacities and in their capacities

as next of kin for their mother, Tabitha Marie Smith (aka Tabitha Marie Colbaugh) ("Deceased"),

for the causes of action set forth herein, allege:

1

# INTRODUCTION

1.       This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to Deceased by the Fourteenth Amendment to the United States Constitution by the Defendants[1], as well as attendant state law claims.

2.       This action is brought for claims arising from the wrongful death of the Deceased while the Deceased was in the custody of the Defendants and for the Plaintiffs for their loss of consortium resulting from the grisly death of their mother, the Deceased.

3.       This action is brought against the Defendant, Meigs County ("County") pursuant to TENN. CODE ANN. § 8-8-302 and TENN. CODE ANN. § 29-20-202.

# JURISDICTION AND VENUE

4.       This Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for the claims for alleged violation of Federal law.

5.       This Court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 as they arise from the same case and the same controversies.

6.       This is an action to address the Plaintiffs' loss of consortium with their mother, the Deceased. As to the Plaintiffs' state claims, this Court has jurisdiction over their state claims pursuant to 28 U.S.C. § 1367 as they arise from the same case and the same controversies.

7.       Venue is proper in this Court, Chattanooga Division, pursuant to 28 U.S.C. § 1391(b) for the following reasons: All acts that give rise to this cause of action occurred in Meigs County, Tennessee; Meigs County ("County") is a political sub-division of the State of Tennessee;

---

[1] For the purposes of this Complaint, Defendant Estate of Robert J. Leonard is asserted to be liable for the wrongful actions of Robert J. Leonard ("Leonard"), also deceased.

Case 1:24-cv-00151-DCLC-CHS     Document 102     Filed 09/23/25     Page 2 of 21
PageID #: 1047

Defendant Robert J. Leonard (Deceased) (hereinafter, "Leonard") was a resident of Meigs County, Tennessee.

**THE PARTIES**

8.      At all relevant times, the Deceased was a citizen of the United States and a resident of the State of Tennessee. At the time of the events averred herein, the Deceased was a resident of Meigs County, Tennessee.

9.      Upon information and belief, at the time of the events averred herein, the Deceased was survived by four children, the named Plaintiffs, who have the primary and sole right to bring this cause of action pursuant to an Order of this Court entered into the record on November 27, 2024 (DE 65).

10.     Smith is an adult while  NR, JE and LC are minors.

11.     SR is he legal guardian of NR, JH is the legal guardian of JE. and. EH is the legal guardian of LC.

12.     All four children have equal standing to bring this action as well as standing to bring their own claims for loss of consortium.

13.     At all times relevant to this cause of action the County was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

14.     At all times relevant to this cause of action, the County is responsible for the creation and maintenance of its law enforcement department identified and averred as the Meigs County Sheriff's Office ("sheriff's office")

15.     The County provides rules and regulations for the operation of the sheriff's office.

16.     The County finances the operations of the sheriff's office.

3

17. The sheriff's office is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee.

18. At all relevant times, the County, its sheriff's office, and its law enforcement personnel, are and were responsible for the safe and humane treatment of all persons taken into and held in the custody of its law enforcement employees; for the training and certification of its law enforcement employees; and for the safety of persons detained or otherwise within the custody of its individual deputies and agents, and these duties extended to the Deceased.

19. At all times relevant to this cause of action, the County employed Leonard who in turn was appointed by the sheriff as a sheriff's deputy.

20. At all times relevant to this cause of action Leonard acted under the color of his office and under the color of law, statute, ordinance, regulation, custom, or usage of the County.

21. On March 20, 2024, the Chancery Court for Meigs County, Tennessee, appointed Neal Pinkston ("Pinkston") as the Administrator *ad Litem* for Cause of Action Only for the Estate of Robert J. Leonard. At the time of his death, Leonard was a resident of Meigs County, Tennessee. For brevity, all references to the Estate of Robert J. Leonard shall be "Leonard."

22. As of the time of this Fourth Amended Complaint, Plaintiffs are unaware if Pinkston has been substituted by anyone as the said Administrator. Additionally, the record does not reveal any such substitution.

23. Plaintiff brings this action against Leonard in his individual capacity.

## FACTUAL BASIS-THE ROADWAY

24. As to be set forth more fully herein, Leonard and the Deceased died after Leonard drove his assigned Meigs County Sheriff's Office patrol car on Blythe Ferry Lane and into the Tennessee River.

4

25.     At all relevant times, Blythe Ferry Lane ("the roadway") is a two-lane asphalt roadway, which at the time of the events herein had no streetlights, and no lighted signal to warn motorists that the roadway ended into the Tennessee River ("river").

26.     At all relevant times, the roadway had no shoulders and was oriented for east-west traffic, and the two travel lanes were separated by a double yellow centerline, which ended prior to reaching the water's edge.

27.     The asphalt roadway continued until the start of a concrete ramp and transitioned on a downhill grade into the water.

28.     At all relevant times, there was no signage in the immediate vicinity of the water's edge to warn or indicate the approaching end of the roadway.

29.     At all relevant times, there were no posted speed limit signs on the roadway between the river and the intersection of Shadden Road.

30.     At all relevant times, starting at 1663 feet from the start of the ramp into the river, on the right side of the roadway was a yellow highway sign that reads "ROAD ENDS 1500 FT."

31.     At all relevant times, at 1363 feet there was five rumble strips that span the entire width of the travel lane going towards the river. These strips were raised asphalt that measured approximately 3/16" high.

32.     At all relevant times, at 1261feet, there was a yellow sign with a pedestrian walking on the right side of the roadway.

33.     At all relevant times, at 1072 feet and 740 feet were another set of five rumble strips measuring approximately 1/4" high and then 1/2."

34.     At all relevant times, at 546 feet, on the roadway, in very large letters, was the word "STOP." At t 502 feet was a yellow highway sign on the left side of the road that said, "STOP AHEAD."

35.     At all relevant times, at 498 feet, on the roadway, was the word "AHEAD." The wording on the actual pavement was obviously worn but visible. This was the last signage that was observed leading up to the water.

36.     At all relevant times, two more sets of rumble strips were present before reaching the water. One at 474 feet which measured approximately 5/8" high and the other at 236 feet that measured approximately 1/2" high.

37.     At all relevant times, the rumble strips were worn as where the painted words STOP and AHEAD. There were no gates or other barriers to prevent any motorist from driving into the river.

## FACTUAL BASIS-THE INCIDENT

38.     Defendant Leonard was employed by the County starting on, or about, November 5, 2023.

39.     Upon information and belief, Defendant Leonard was provided only two weeks of ride-along training before he was sent out to work Meigs County by himself.

40.     On February 14, 2024, at about 9:30 pm Leonard was called to the scene of a disturbance on the Tennessee Highway 60 bridge that spans the Tennessee River near the Birchwood community ("call scene"). The extent of the nature of the disturbance alleged was a person walking in the road of the bridge. There were foggy and low visibility conditions that evening.

6

41.     Upon receiving the call, at 9:32 pm, Leonard reported to Meigs County dispatch that he was enroute to the call scene. Leonard operated a police vehicle that did not have an operating speedometer, odometer nor any navigation equipment.

42.     GPS tracking of his drive showed Leonard "quickly proceeded" to the call scene. Documents provided by the District Attorney's Office for the 9th Judicial District showed Leonard traveled at extremely high speeds including speed of up to 102 miles per hour while driving to the scene.

43.     Leonard drove from his residence near the Meigs County Jail down Highway 58 to Gunstocker Road to Highway 60 to the call scene where he arrived at 9:48:01 pm.

44.     At 9:54 pm, Leonard radioed dispatch that he had "one in custody," whom Plaintiffs aver was the Deceased.

45.     At 9:58 pm, Leonard, with the Deceased in custody and her hands cuffed behind her back and secured in the back seat of the Meigs County patrol car, was on his way to the Meigs County jail.

46.     Between 9:53:38 pm and 9:59:32 pm Leonard is using Facebook messenger to communicate with Ben Christian while driving the patrol vehicle with the Deceased restrained in the back seat.

47.     Leonard drove on Blythe Ferry Lane ("the roadway") at speeds up to 56 mph from 10:02:45 pm (56 mph) to 52 mph (at 10:02:59 pm) and back up to 56 mph (at 10:03:39) until he hit the water at 44 mph (at 10:03:45pm).

48.     At 10:03:12 pm, Leonard sent a text message to his wife (who Leonard identified as "Hooker") via a cell phone with the content, "arrest." This was 46 seconds before hitting the

7

water, while driving the patrol vehicle at 44mph – 56 mph with the Deceased restrained in the backseat

49.    Tennessee Code Annotated § 55-8-199 (a Class C misdemeanor) prohibits the use of a wireless telecommunications device while operating a motor vehicle. Tennessee Code Annotated § 55-19-203 (a Class B misdemeanor), prohibits the operation of a motor vehicle in a willful and wanton disregard for the safety of persons.

50.    Upon information and belief, Defendant Leonard was handling his phone in the moments before he drove into the Tennessee River.

51.    Some hours later, authorities found the patrol car, upside down, at the bottom of the Tennessee River.

52.    The Deceased's body was found still handcuffed with her hands behind her back and in the back seat of the patrol car, dead. When found, she was not secured by a seatbelt.

53.    Leonard's body was found outside of the patrol car, but in the Tennessee River.

54.    Based upon information and belief, Leonard had an addiction as noted by his wife on a Facebook post dated July 15, 2022.

55.    Based upon information and belief, Leonard was not properly trained by the County to know his assigned area of patrol and know the nature of the incident location.

56.    The location of the incident has a history of other people driving into the Tennessee River.

57.    Based upon information and belief, Leonard was not properly trained or supervised by the County to refrain from the use of his cell phone while transporting an arrestee in a patrol vehicle.

58.    Based upon information and belief, Leonard was not properly trained or supervised by the County to ensure the safety of the Deceased while in his custody.

8

59.     Based upon information and belief, the County failed to properly train Leonard in his area of responsibility, which included knowledge of the roadways and the dangers of Blythe Ferry Lane. This lack of familiarity was noted by the District Attorney for the 9th Judicial District in his report about the incident as a factor in Leonard's actions.

60.     People familiar with Meigs County would have known of the risks posed by Blyth Ferry Lane and its sudden terminus into the Tennessee River.

61.     Based upon information and belief, the County failed to properly train and supervise Leonard in how to respond to calls and travel with prisoners in his custody. Leonard's speed going to the incident scene on the bridge was well beyond reasonable and necessary. Leonard's speed with the Deceased in his care and custody, on a roadway that he was unfamiliar with, and (as noted by the District Attorney for the 9th Judicial District) on a "dark and foggy night" reflected the lack of the County's training and supervision of Leonard.

62.     The Deceased was very familiar with the boat ramp as she grew up in the area.

63.     The Deceased would have known where Leonard was taking her, which was the river, and would have warned him.

64.     Based upon information and belief, Leonard ignored the Deceased's warnings.

65.     As a direct and proximate result of the acts and omissions of Leonard and the County, the Deceased suffered a ghastly death.

**FACTUAL BASIS – MEIGS COUNTY**

66.     Defendant Meigs County trained and equipped Defendant Leonard pursuant to its customs and policies.

67.     These customs and policies were constitutionally deficient and amounted to deliberate indifference to the safety and security of people in its custody.

9

68.   These policies included:

    a.   Inadequate training and area familiarization for new hires despite known road hazards;

    b.   Sending new Sheriff's deputies on patrol alone before they are fully and properly trained;

    c.   Providing woefully inadequate safety equipment such as a GPS device or other navigation equipment;

    d.   Failing to implement adequate policies to identify and address errors or instances of misconduct by its employees; and

    e.   Providing unsafe vehicles to be used in the transportation of arrestees.

69.   Meigs County comprises 217 square miles of land.

70.   Defendant Meigs County often assigns just two deputies to cover this entire area.

71.   Defendant Meigs County did not provide its deputies with any type of GPS or navigational equipment.

72.   Defendant Meigs County was aware that its deputies used personal GPS devices with unknown, or questionable, reliability to navigate around Meigs County.

73.   Defendant Meigs County did not provide its deputies with body-worn cameras or dash cameras that are necessary to investigate allegations of misconduct or to review incidents for lessons learned.

74.   Defendant Meigs County had an unofficial policy of having its Sheriff's deputies to communicate using text messages when they lacked radio coverage, which was frequent.

75.   This policy resulted in Sheriff's deputies texting while driving even when the radio was operational, increasing the risk to passengers, pedestrians, and other drivers.

10

76.     Defendant Meigs County was aware that certain areas posed a risk to drivers based on prior accidents, including people driving into the Tennessee River.

77.     Defendants Meigs County was aware that Defendant Leonard was new to Tennessee and unfamiliar with the area.

78.     Upon information and belief, Defendant Leonard's unfamiliarity with Meigs County was evident during his two-week ride-along training and Defendant Meigs County authorized him to work by himself without reliable navigation equipment.

## **FEDERAL CLAIMS**

### **COUNT I: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT -- DEPRIVATION OF LIBERTY INTEREST AND BODILY INTEGRITY**

79.     Each paragraph of this Fourth Amended Complaint is incorporated as if fully set forth herein against both Defendants.

80.     This claim is brought against Defendants Leonard and Meigs County.

81.     The instant Leonard arrested the Deceased and placed her handcuffed in the back of his patrol car, a special relationship existed between the Deceased, Leonard, and the County.

82.     Once in the custody of the Defendants, the Deceased was completely reliant upon the Defendants to ensure that she would not be injured or killed.

83.     By engaging in criminal acts and driving with excessive speed without reason, with the Deceased in his custody, Leonard acted with deliberate indifference to the safety of the Deceased.

84.     Leonard also chose to ignore the rumble strips and signage warning of the impending Tennessee River.

85.     Leonard drove at excessive speed with the deceased handcuffed in the back of his vehicle.

11

86.     No reasonable person could have mistaken Blythe Ferry Lane for the Hiawasee Highway that crossed the Tennessee River as one was a small, country road embedded in sparsely populated farmland and acreage, and the other, a large, elevated well-paved and maintained highway.

87.     That, coupled with the apparent inability of Leonard to navigate the route from the arrest scene to sheriff's office reflects a failure in training where: 1) Leonard disregarded criminal statutes; 2) Leonard lacked knowledge of his patrol area; and 3) Leonard disregarded rumble strips and warnings designed to avoid driving into the river.

88.     No reasonable law enforcement officer would have acted in this manner.

89.     The County's failure to properly train Leonard as to the safe transportation of the Deceased, the County's failure to ensure Leonard knew his assigned area of patrol, the failure of the County to supervise Leonard to ensure he did not drive and text or drive recklessly in foggy conditions with limited visibility, and its failure to perform a detailed investigation of Leonard's background and addiction, constituted the deliberate indifference of the County and was the driving force of the deprivations and horror inflicted upon the Deceased by Leonard.

90.     The County is also responsible for the violation of Ms. Smith's constitutional rights by virtue of its policy for sending its employees broken and/or inadequate equipment. For example, the vehicle Ms. Smith died in lacked any type of navigation system, other than Defendant Leonard's personal devices, and had an inoperable speedometer.

91.     The failures and deprivations here inflicted unimaginable terror upon the Plaintiff in that she knew what she was about to suffer, and the same failures and deprivations were the direct and proximate cause of her death.

12

92.    Leonard acted under color of law and his acts and omissions, and the deliberate indifference of the County deprived the Deceased of the right secured to her under the Fourteenth Amendment to the United States Constitution to be free from the infliction of physical pain, suffering, and death and to not be harmed by the defendants without Due Process of Law, and this Count is brought against both Defendants.

### COUNT II: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – FAILURE TO PROTECT

93.    Each paragraph of this Fourth Amended Complaint is incorporated as if fully set forth herein against both Defendants.

94.    This claim is brought against Defendants Leonard and Meigs County.

95.    State officials have an affirmative obligation to protect pre-trial detainees.

96.    Leonard detained the Deceased pending criminal adjudication.

97.    While driving in an unfamiliar area Leonard made a conscious decision to text while driving, drive at excessive speed, ignore adverse weather conditions, ignore the Deceased's warnings, ignore rumble strips and ignore signage with the Deceased handcuffed in the back of his police cruiser.

98.    Leonard's choices put the deceased at substantial risk of harm from being thrown around within the vehicle up to death from an accident, or as occurred in this case, drowning.

99.    Leonard had every opportunity to abate these risks by driving in a safe manner by not texting, not speeding, and paying attention to the weather conditions and rumble strips and signage.

100.    Leonard failed to take the simple steps necessary to mitigate the risk his driving posed to the Deceased, and his misconduct directly led to the Deceased's tragic, and grisly death.

101.    No reasonable law enforcement officer would have acted in this manner.

13

102.     The County had an affirmative constitutional obligation to protect pre-trial detainees within its control. To be sure, the County had a Tennessee Constitutional duty to refrain from treating the Deceased with undue rigor.

103.     The County failed to implement the basic, and necessary, steps in terms of training, supervision, and hiring as alleged herein.

104.     Tens of thousands of people die from traffic accidents every year in the United States with more than a thousand of those deaths occurring in Tennessee. *See Transportation Safety*, CDC *available at* https://www.cdc.gov/transportation-safety/about/index.html ("In 2022, almost 44,000 people died in motor vehicle crashes in the United States.") (last accessed June 9, 2025); *Crash Data*, TENN. DEPT. SAFETY & HOMELAND SECURITY, *available at* https://www.tn.gov/safety/stats/crashdata.html (Data from excel sheet "Tennessee Traffic Fatality Rate 1950-2023").

105.     In many cases, traffic accidents involve prisoners or arrestees being transported by state officials causing fatalities and/or injuries.[2]

---

[2] *See, e.g.*, *19 injured in crash involving prisoner transport bus in Lake County, authorities say*, ABC7 CHICAGO, Sept. 4, 2024, https://abc7chicago.com/post/lake-county-crash-19-injured-involving-prisoner-transport-bus-route-120-between-round-grayslake-police-say/15268708/; *2 inmates dead, 5 injured in prisoner transport van crash*, WTVM 9, Apr. 14, 2024, https://www.wtvm.com/2024/04/14/2-inmates-dead-5-injured-prisoner-transport-van-crash/; Audrey Goodson, *OHP: 10 inmates taken to hospitals after fog causes pickup to crash into transport bus near Perkins*, KOCO 5 NEWS, Sept. 25, 2024, https://www.koco.com/article/oklahoma-perkins-sh33-prisoner-transport-bus-crash-fog/62366037; Raymond Baccari, *Providence prisoner transport van involved in Cranston crash*, WPRI, Oct. 6, 2024, https://www.wpri.com/news/local-news/west-bay/providence-prisoner-transport-van-involved-in-crash-in-cranston/; *Deputy, 5 inmates hurt when inmate transport van rear-ended in Detroit*, FOX 2 DETROIT, Sept. 14, 2018, https://www.fox2detroit.com/news/deputy-5-inmates-hurt-when-inmate-transport-van-rear-ended-in-detroit; Colleen Slevin, *A Colorado woman who was handcuffed in a police car hit by a train receives an $8.5M settlement*, AP NEWS, June 5, 2024, https://apnews.com/article/colorado-police-car-train-crash-lawsuit-settlement-6b510265c35e4a16cfb008aee828ab9c.

14

106. The County's failure to properly train Leonard as to the safe transportation of the Deceased, the County's failure to ensure Leonard knew his assigned area of patrol, the failure of the County to supervise Leonard to ensure he did not drive and text or drive recklessly in foggy conditions with limited visibility, and its failure to perform a detailed pre-hire investigation of Leonard's background and addiction, constituted the deliberate indifference of the County and was the driving force of the deprivations and horror inflicted upon the Deceased by Leonard.

107. Leonard acted under color of law and his acts and omissions, and the deliberate indifference of the County, deprived the Deceased of the right secured to her under the Fourteenth Amendment to the United States Constitution to be protected from the gruesome and awful death Leonard inflicted upon the Deceased without Due Process of Law.

## STATE LAW CLAIMS

### COUNT III: TENN. CODE ANN. § 20-5-106 – WRONGFUL DEATH

108. Each paragraph of this Fourth Amended Complaint is incorporated against the Defendants as if fully set forth herein.

109. This Count is brought against Defendant Leonard pursuant to Tennessee common law and against Defendant Meigs County pursuant to Tenn. Code Ann. § 8-8-302.

110. Leonard had a duty to protect the Deceased from injury and death. His failures as averred herein were the direct and proximate cause of the Deceased's unnecessary pain and suffering and resulted in the Deceased's horrific death.

111. Defendant Leonard's actions were grossly negligent, malicious, willful, and criminal.

112. As a direct and proximate result of his misconduct, the Deceased suffered unimaginable horror, injuries, and a gruesome death.

### COUNT IV: TENNESSEE COMMON LAW -- BATTERY AND ASSAULT

15

113.     Each paragraph of this Fourth Amended Complaint is incorporated against Leonard as if fully set forth herein.

114.     This Count is brought against Defendant Leonard pursuant to Tennessee common law and against Defendant Meigs County pursuant to Tenn. Code Ann. § 8-8-302.

115.     In the manner more fully described above, Leonard's acts and omissions were void of any lawful purpose.

116.     Leonard had no reason to drive the Deceased into the Tennessee River. By plunging the patrol vehicle into the Tennessee River, Leonard engaged in an unlawful touching of the Deceased without her permission.

117.     As the Deceased was a lifetime resident of the area, it is certain that she would have been aware of the danger of the patrol vehicle car ending up in the river as it moved down the street toward it and formed a reasonable, imminent fear of death in the Deceased.

118.     Leonard acted under color of law and within the scope of his employment and agency with the County. As a direct and proximate result of his misconduct, the Deceased suffered unimaginable horror, injuries, and a gruesome death.

## COUNT V: TENNESSEE COMMON LAW – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

119.     Each paragraph of this Fourth Amended Complaint is incorporated against Leonard as if fully set forth herein.

120.     This Count is brought against Defendant Leonard pursuant to Tennessee common law and against Defendant Meigs County pursuant to Tenn. Code Ann. § 8-8-302.

121.     In the manner more fully described above, Leonard intentionally or recklessly engaged in extreme and outrageous conduct that caused the Deceased emotional distress as well as grievous bodily harm, including a gruesome death.

16

122.     As a further direct and proximate result of Leonard's unconstitutional conduct, the Deceased's constitutional rights were violated, and the Deceased suffered the indignity and humiliation of the loss of her life and bodily integrity as she died while cuffed and locked in the back seat of a patrol car.

123.     Leonard acted under color of law and within the scope of his employment and agency with the County.

### COUNT VI: TENNESSEE COMMON LAW – GROSS NEGLIGENCE

124.     Each paragraph of this Fourth Amended Complaint is incorporated against the Defendants as if fully set forth herein.

125.     This Count is brought against Defendant Leonard pursuant to Tennessee common law and against Defendant Meigs County pursuant to Tenn. Code Ann. § 8-8-302.

126.     In the manner more fully described above, Leonard's inexplicable acts and omissions, despite his duty to protect the Deceased, resulted in the constitutional deprivations, physical harm, and the indignity and humiliation of the loss of life and bodily integrity as she died while handcuffed in the back of the patrol car.

127.     Leonard had a duty to refrain from inflicting harm and death upon the Deceased. Instead, he was texting and while he was hurtling toward the Tennessee River, ignored the Deceased's cries and attempts to warn Leonard that he was driving toward the river, and Leonard ignored the signage and rumble strips at the same time.

128.     Defendant Leonard was therefore grossly negligent in his operation of the police cruiser in which Ms. Smith was held, leading to her death.

129.     All of Leonard's activities that are subject to this Fourth Amended Complaint were undertaken under the color of law and in accordance with his employment with the County.

17

130. As a further direct and proximate result of Leonard's unconstitutional and criminal conduct and the County's gross negligence, the Deceased's constitutional rights were violated, and the Deceased suffered the indignity and humiliation of the loss of her life and bodily integrity as she died while cuffed and locked in the back seat of a patrol car.

## COUNT VII: TENNESSEE COMMON LAW – NEGLIGENCE

131. Each paragraph of this Fourth Amended Complaint is incorporated against the Defendants as if fully set forth herein.

132. This claim is brought against Defendant Meigs County pursuant to Tenn. Code Ann. § 29-20-202.

133. Defendant Leonard was operating his vehicle in his capacity as a Meigs County Sheriff's deputy when he drove it into the Tennessee River.

134. As described above, Defendant Leonard's conduct was, at a minimum, negligent with respect to driving his police cruiser.

135. Defendant Leonard was negligent by failing to maintain an appropriate speed on unfamiliar roads in limited visibility conditions, texting while driving, ignoring rumble strips, ignoring the pleas of Ms. Smith, and other conduct.

136. As a result of Defendant Leonard's negligent driving, Ms. Smith suffered a horrible death.

137. As a direct and proximate cause of Defendant Leonard's conduct, Plaintiffs have been harmed by the County.

## COUNT VIII TENNESSEE COMMON LAW – LOSS OF CONSORTIUM

138. Each paragraph of this Fourth Amended Complaint is incorporated against the Defendants as if fully set forth herein.

18

139.    This Count is brought against Defendant Leonard pursuant to Tennessee common law and against Defendant Meigs County pursuant to Tenn. Code Ann. § 8-8-302.

140.    In the manner more fully described above, Leonard's inexplicable acts and omissions, despite his duty to protect the Deceased, resulted in the constitutional deprivations, physical harm, and the indignity and humiliation of the loss of life and bodily integrity as she died while handcuffed in the back of the patrol car.

141.    As a direct and proximate result of the acts and omissions averred herein, Plaintiffs lost their mother, lost any future they may have had with their mother, and lost their ability to have a continuing relationship with their mother.

### COUNT IX: TENN. CODE ANN. § 8-8-302

142.    Each paragraph of this Fourth Amended Complaint is incorporated as if fully set forth herein.

143.    Defendant Meigs County is liable for the non-negligent misconduct of its deputies pursuant to Tenn. Code Ann. § 8-8-302.

144.    As such Defendant Meigs County is liable to Plaintiffs for the injuries suffered as a result of Defendant Leonard's actions that were non-negligent in nature (i.e., grossly negligent, deliberately indifferent, and/or intentional).

145.    Defendant Meigs County is therefore liable to Plaintiffs with respect to Counts III, IV, V, VI, and VII set forth above.

### DAMAGES

146.    The foregoing paragraphs are adopted and incorporated as if stated in full herein.

147.    Plaintiffs have been damaged by the wrongful actions set forth herein as follows:

   a.   Injury as to the Deceased;

   b.   Death as to the Deceased;

19

c. Emotional distress as the Deceased;

d. Fright, mortification and fear as to the Deceased;

e. Conscious pain and suffering prior to death as to the Deceased;

f. Injury as to all Plaintiffs;

g. Emotional distress as to all Plaintiffs;

h. Loss of consortium as to all Plaintiffs; and

i. Emotional distress as to all Plaintiffs.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs request relief as follows:

[1]. An award of nominal, punitive, compensatory, and presumed damages for the violation of Decedent's constitutional rights and all state causes of action in the amount of ONE HUNDRED MILLION DOLLARS;

[2]. An award of nominal, punitive, compensatory, and presumed damages for the Plaintiff's state law claims in the amounts allowed by Tennessee state law;

[3]. Awarding Plaintiff his attorney and expert witness fees and all other costs of litigation pursuant to 42 U.S.C. §1988, and under other applicable law;

[4]. Pre-judgment and post judgment interest;

[5]. The right to conform the pleadings to the proof and evidence presented at trial; and

[6]. Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to FED. R. CIV. P., Rule 38(b) on all issues so triable.

Respectfully submitted,

20

By: /s/ *Robin Ruben Flores*
**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff Nathan Smith
4110-A Brainerd Road
Chattanooga, TN 37411
O: (423) 267-1575
F: (423) 267-2703
robin@robinfloreslaw.com

/s/ *Alyson Oliver*
**OLIVER BELL GROUP**
***admitted pro hac vice**
**Attorney for NR, JE and LC**
50 W. Big Beaver Road Ste. 200
Troy, MI 48084
O: (248) 327-6556
F: (248) 416-3047
notifications@oliverlawgroup.com

THOMAS & THOMAS, LLC

By: /s/ *W. Neil Thomas*
**W. NEIL THOMAS**
**TENN. BPR #004536**
**MICHAEL THOMAS**
**TENN. BPR #29423**
Attorney for Plaintiff Nathan Smith
6148 Lee Highway, Suite 115
Chattanooga, TN 37421
O: (423) 910-9100
F: (423) 356-3082
wnthomas@twtlawfirm.com

SUMMERS, RUFOLO & RODGERS, P.C.

By: /s/ *Jeffery Rufolo*
**TENN. BPR #15013**
Attorneys for Plaintiffs NR, JE and
LC
735 Broad Street, Suite 800
Chattanooga, TN 37402
O: (423) 265-2385
jrufolo@summersfirm.com

## CERTIFICATE OF SERVICE

The undersigned attorney for the Plaintiffs hereby certifies that true and exact copies of this motion have been filed and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

By: /s/ Robin Ruben Flores

21