UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TABITHA MARIE SMITH (Deceased), ) <br> (aka Tabitha Marie Colbaugh), ) <br> by and through her surviving children ) <br> NATHAN ALEXANDER SMITH, ) <br> JE through next friend JH, ) <br> NR through next friend SR, and ) <br> LC through next friend EH, ) <br> ) <br> and ) <br> ) <br> NATHAN ALEXANDER SMITH, ) <br> NR through next friend SR, ) <br> JE through next friend JH, and ) <br> LC through next friend EH, ) <br> (individually), ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> vs. ) <br> ) <br> MEIGS COUNTY and ) <br> ESTATE OF ROBERT J. LEONARD (Deceased) ) <br> by and through Neal Pinkston as ) <br> Administrator *ad Litem*, ) <br> ) <br> *Defendants.* ) | No. 1:24-CV-151-DCLC-CHS <br><br> JURY DEMAND |

**MOTION TO DISMISS & MEMORANDUM IN SUPPORT**

COMES NOW, the Defendant, the Estate of Robert J. Leonard (hereinafter referred to as "the Estate" or "Deputy Leonard"), by and through undersigned counsel, Bryan H. Hoss, and hereby files this Motion to Dismiss the Fourth Amended Complaint for failure to state a claim pursuant to Rule 8 & 12(b)(6) of the *Federal Rules of Civil Procedure*. The Estate moves this Court to dismiss the Plaintiffs' 1983 claims because those claims sound in common law negligence theories and do not rise to Constitutional violations. The Estate would show as follows:

1. Plaintiffs have filed a Fourth Amended Complaint asserting two (2) federal claims under 42 U.S.C. § 1983 and seven (7) state law claims following the deaths of both Tabitha Smith, a lawfully arrested prisoner, and Meigs County Deputy Robert Leonard, while Deputy Leonard transported Arrestee Smith to the Meigs County Jail.

2. Count I alleges a violation of 42 U.S.C. § 1983 under the 14th Amendment for deprivation of liberty and bodily integrity. Count I is a claim against both the Estate and Meigs County.

3. Count II alleges a violation of 42 U.S.C. § 1983 under the 14th Amendment for failure to protect. Count II is a claim against both the Estate and Meigs County.

4. The remaining seven (7) counts are all state law claims.

## STANDARD OF REVIEW

To survive a motion to dismiss under *Federal Rule of Civil Procedure* 12(b)(6), the Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The District Court must treat all of the well pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the plaintiff. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). "Dismissal of the complaint is proper `only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). The Court is not required, however, to "accept as true legal conclusions or unwarranted factual inferences." *Bovee v. Coopers Lybrand, C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001).

## STATEMENT OF FACTS

The Fourth Amended Complaint alleges that Meigs County Deputy Robert Leonard, while working in the course and scope of his employment and under the color of law, lawfully arrested Tabitha Smith, handcuffed her, placed her in the rear of his patrol car and was transporting her to the

Meigs County Jail on Blythe Ferry Lane in Meigs County, Tennessee when he drove his patrol car into the Tennessee River killing both of them.

The Fourth Amended Complaint includes other specific allegations such as:

- Deputy Leonard was only given 2 weeks of ride-along training before being sent to patrol by himself. *See* ECF Doc. 102, ¶ 39.
- At the time of their death, there were "foggy and low visibility conditions." *Id*. at ¶ 40.
- Deputy Leonard drove at a speed of 102 mph towards the Hwy 60 bridge before arresting Smith. *Id*. at ¶ 42.
- While transporting Smith, Deputy Leonard used Facebook Messenger to communicate with another Meigs County patrol officer, Ben Christian. *Id*. at ¶ 46.
- While transporting Smith, Deputy Leonard drove at speeds up to 56 miles per hour on Blythe Ferry Lane and hit the water traveling 44 mph.[1] *Id*. at ¶ 47.
- While transporting Smith, at 10:03:12, Deputy Leonard texted his wife the word "arrest."[2] *Id*. at ¶ 48 & 50.
- The Complaint alleges that "moments before he drove into the Tennessee River" that he was handling his phone (although the Complaint fails to allege the time in which he hit the water). *Id*. at ¶ 50.
- The Complaint alleges that Deputy Leonard violated T.C.A § 55-8-199 which prohibits the use of a wireless device while operating a motor vehicle. *Id*. at ¶ 49.
- The Complaint alleges that Blythe Ferry Lane was dangerous and posed risks to the public due to its "sudden terminus into the Tennessee River." *Id*. at ¶ 60.

---

[1] The Complaint fails to allege the actual speed limit on Blythe Ferry Lane.
[2] The Complaint, in poor taste, alleges that Deputy Leonard identified his wife in his cell phone as "Hooker."

- Blythe Ferry Lane has no streetlights and no lighted signal to warn motorists. *Id*. at ¶ 25.
- Blythe Ferry Lane has no posted speed limit signs between the river and Shadden Road. *Id*. at ¶ 29.
- Blythe Ferry Lane has a "Road Ends 1500FT" sign approximately 1663 feet from the start of the ramp into the river. *Id*. at ¶ 30.
- There is a "Stop Ahead" sign, that is worn visible approximately 498 feet from the start of the ramp into the river. *Id*. at ¶ 35.
- There are a series of rumble strips on Blythe Ferry Lane as you approach the River at 1363 feet, 1072 feet, 740 feet, 474 feet and 236 feet from the start of the ramp into the river. *Id*. at ¶¶ 31, 33 & 36.

Count I in the Fourth Amended Complaint alleges that Deputy Leonard committed "criminal acts" which included texting while driving and driving with excessive speeds while transporting Smith. *Id*. at ¶ 83. Count I alleges that these acts constitute "deliberate indifference to the safety of the Deceased [Smith]." *Id*. Further, Count I alleges that Deputy Leonard "chose to ignore rumble strips and signage warnings of the impending Tennessee River." *Id*. at ¶ 84. Also, Count I alleges that Deputy Leonard "lacked knowledge of his patrol area." *Id*. at ¶ 87. Lastly, Count I alleges that all of Deputy Leonard's acts and omissions occurred while Leonard was acting under color of law. *Id*. at ¶ 92.

Count II in the Fourth Amended Complaint makes very similar allegations. Count II alleges that Deputy Leonard texted while he transported Smith, drove at excessive speeds, ignored adverse weather conditions, ignored the Deceased's warnings (although other than gross speculation, there is no evidence of this), ignored rumble strips and ignored signage. *Id*. at ¶ 97. Count II alleges that these actions put the deceased "at substantial risk of harm from being thrown around within the vehicle up

to death from an accident, or as occurred in this case, drowning." *Id.* at ¶ 98. Count II alleges that he failed to drive in a safe manner and failed to take the simple steps to mitigate the risk that his driving posed to the Deceased. *Id.* at ¶ 99 & 100. Lastly, Count II alleges that all of Deputy Leonard's acts and omissions occurred while Leonard was acting under color of law. *Id.* at ¶ 107.

## MEMORANDUM OF LAW IN SUPPORT

**1.      T.C.A. § 55-8-199(d)(1) does not apply to "officers of this state of any county, city or town charged with the enforcement of the laws of this state."**

Contrary to the allegations in the Complaint, T.C.A. § 55-8-199(d)(1) excludes Deputy Leonard from the prohibition of using a cell phone while driving.

T.C.A. § 55-8-199(d)(1) states:

(d) This section does not apply to the following persons:
(1) Officers of this state or of any county, city, or town charged with the enforcement of the laws of this state, or federal law enforcement officers when in the actual discharge of their official duties;

Plaintiffs put great emphasis in their Fourth Amended Complaint in the allegation that Deputy Leonard was committing "criminal acts" by texting his wife the single word "arrest," and by testing fellow patrol officer, Ben Christian (although the Complaint fails to describe the length or number of these texts). However, these acts were not criminal and are allowed under the law.

**2.      The alleged conduct by Deputy Leonard in the Fourth Amended Complaint fails to rise to the level of a Constitutional violation under § 1983.**

In *Durham v. Estate of Losleben, by and through Tatum*, 744 Fed.Appx. 268 (6th Cir. 2018), the Sixth Circuit affirmed the District Court's granting of the Defendant's Motion to Dismiss for failure to state a claim.

In *Durham*, the Plaintiff's deceased husband, Christopher Durham, was driving northbound on a rural Tennessee road in Hardin County, Tennessee when a fireman, Gus Losleben, was driving a fire truck southbound. Durham, 744 Fed. Appx. at 269. The fireman entered Durham's lane and crashed

into him. *Durham*, 744 Fed. Appx. at 269. The crash killed both Durham and Losleben. *Id*. There were no witnesses to the crash. Both died at the scene. *Id*.

The Plaintiff alleged that Losleben was driving at an "excessive rate of speed" prior to the collision even though he was not responding to any fire service emergency at the time. *Id*. The Plaintiff alleged the excessive speed occurred on a narrow road, was reckless and showed that he was deliberately indifferent to the safety of other motorists. *Id*. The *Durham* Court held that the Plaintiff's complaint failed to "state facts that would plausibly implicate Losleben as having engaged in the sort of ***egregious, conscious-shocking behavior*** that is required for the Plaintiff to state a claim against Losleben or Hardin County for federal constitutional liability." *Id*.

42 U.S.C. § 1983 is a federal remedy when a state actor deprives a person of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *Durham*, 744 Fed. Appx. at 270. Sometimes, plaintiffs use § 1983 as a remedy for a violation of a specific constitutional provision such as malicious prosecution (4th Amendment) or deliberate indifference to a prisoner's medical needs (8th Amendment). *Id*; *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017); *Bays v. Montmorency City.*, 874 F.3d 264, 268 (6th Cir. 2017).

The United States Supreme Court instructs District Courts that when "a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision." *City. of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). When no such specific provision is in play, then a § 1983 claim for deprivation of life is cognizable as a Fourteenth Amendment substantive-due-process claim.[3] *Lewis*, 523 U.S. at 842-43. Under *Lewis*, a state actor's deprivation of another's life is

---

[3] Plaintiff's attempt to couch their constitutional arguments as a "deprivation of bodily integrity" (Count I) and "failure to protect" (Count II), but these are claims related to the death of Tabitha Smith. Further, "failure to protect" claims of a prisoner is generally analyzed under the 8th Amendment which Plaintiffs failed to cite to in their Complaint. See *Farmer v. Brennen*, 511 U.S. 825 (1994); *Scott v. Becher*, 736 Fed. Appx. 130, 133 (6th Cir. 2018).

a violation of due process when it is "arbitrary." *Id.* at 845. But "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (no substantive-due-process claim lay against city where sanitation worker who died of asphyxia after entering manhole to unstop sewer line)). Accordingly, only "conduct 'that shocks the conscience' and violates the 'decencies of civilized conduct'" is actionable as a substantive-due-process violation under § 1983. *Id.*

The Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis,* 523 U.S. at 848. The Supreme Court has "categorically" rejected mere negligence as violative of constitutional due process. *Id.* at 849.

On the other hand, "conduct intended to injure" is the "most likely to rise to the conscience-shocking level" and thus count as egregious for the purpose of stating a substantive-due-process claim. *Id. Lewis* thus "sets forth a standard—the most egregious," conscience-shocking behavior—and provides outside parameters (mere negligence is insufficient while purpose to injure is more likely to be sufficient but not always necessary) for the imposition of liability." *Id.* at 846.

*Durham* examined whether a firemen engaged in tortious driving while not responding to an emergency was sufficient and discusses the line between merely tortious conduct and constitutionally deficient conduct. The *Durham* Court asked, "what about gross negligence ? Recklessness? Willful blindness? Or conduct where a state actor knows (or has substantial certainty) that it will cause injury but does not intend such injury*?" Durham*, 744 Fed. Appx. at 271.

In *Lewis*, the Supreme Court held that there was no constitutional violation when a boy was killed during a high-speed police chase because the officer's decisions were made "instantaneously or instinctively. *Lewis*, 523 U.S. at 854-55; *Durham* 744 Fed. Appx. at 271. The *Lewis* Court required "an improper or malicious motive" before finding § 1983 liability. *Id.*

7

For conduct that is between negligence and intent to injure, the Sixth Circuit depends on the following factors: "(1) the voluntariness of the relationship between the government and the plaintiff, especially whether the plaintiff was involuntarily in government custody or was voluntarily a government employee; (2) whether the executive actor was required to act in haste or had time for deliberation; and (3) whether the government actor was pursuing a legitimate governmental purpose." *Hunt v. Sycamore County. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 536 (6th Cir. 2008). The *Durham* Court explained, "Essentially, the more voluntary the plaintiff-government relationship, or the less time the state actor has to deliberate, or the greater the extent to which the state actor is pursuing a legitimate end, the less arbitrary we should deem a bodily injury or death caused by the state actor." *Durham*, 744 Fed. Appx. at 271.

In examining the *Durham* facts, the Court stated, "[A]t worst, given the facts stated in the complaint, Losleben was speeding down a narrow road for no reason and crossed into Durham's lane." *Id*. at 271-72. The Court commented, "roadway fatalities caused by speeding and failure to stay within one's lane are, sadly, regular occurrences. Without more, Plaintiff's allegations simply cannot rise to the level of arbitrary, conscience-shocking, egregious conduct that a substantive-due-process claim requires. Thus, we need not craft a particularized rule of liability for firemen who cause fatal accidents when not responding to emergency service calls, for the Court's holding in *Lewis* suffices to decide this case and to foreclose Plaintiff's pursuit of a federal remedy." *Id*. at 272. The *Durham* Court distinguished two (2) cases: *Servin v. Anderson*, No. 3:11-cv-539, 2012 WL 171330 (D. Conn. Jan. 20, 2012)(police officer driving 95 mph in a 40 mph while heading back to the station when one office caused a fatal accident *en route*); *Browder v. City of Albuquerque*, 787 F.3d 1076 (10th Cir. 2015)(off-duty police officer speeding through 8.8 miles of city streets before running a red light and killing another driver and who was charged criminally with reckless vehicular homicide).

In *Durham*, the Plaintiff only alleged excessive speed which the Court noted might reasonably infer that an excessive speed means in excess of the speed limit, but "we cannot infer that this means a conscious-shocking speed." *Durham*, 744 Fed. Appx. at 272. Finally, the Court noted that high-speed chases like *Lewis* are distinguishable from the facts in *Durham* because officers in high-speed chases "must make spur-of-the-moment decisions unimpeded by the threat of liability." *Id*.

In the present case, the Hunt factors weigh in favor of this Court concluding that Deputy Leonard's actions are much more aligned with negligence than any intent to injure. Tabitha Smith was lawfully arrested, handcuffed and put in the rear of a patrol car. This is a common occurrence. And while not voluntary, Deputy Leonard followed general police protocol. He was lawfully transporting a prisoner which is a legitimate government purpose. And the appearance of water on Blythe Ferry Lane in dark and foggy conditions with very little warning signs clearly shows that Deputy Leonard did not make a deliberate decision to drive into the water that night. This tragic accident resulted in the death of two lives.

As to the specific allegation that Deputy Leonard was driving 56 miles per hour at some point along the transportation route to the Meigs County Jail, is also not egregious. The Complaint does not allege which specific road Deputy Leonard was on when he was driving 56 mph, but even if it was Blythe Ferry Lane, the Complaint fails to even allege the speed limit on that road. Like *Durham*, this is not the egregious, conscious shocking speed which was alleged to be "excessive." And it's certainly no where close to the 95 mph alleged in *Servin*. Further, Deputy Leonard's speed of 44 mph at the point in which he drove into the Tennessee River is neither egregious nor conscious shocking and shows that this is much closer to negligence than any intent to harm.

As to the specific allegations of texting while driving, the Plaintiff's misinterpret Tennessee law. Deputy Leonard is not prohibited from texting while driving. Again, while not criminal, the Plaintiffs may argue that this shows that he was distracted. Again, this is more akin to negligence

claims than any intent to harm especially given the single word texted to his wife and the unknown length of the message sent to fellow officer Ben Christian.

As to the specific allegations regarding the road conditions, the fact that Deputy Leonard may have ignored worn signage and some rumble strips, while negligent, is also not so egregious nor conscious shocking to rise to the level of constitutional liability.

As to the specific allegations that Deputy Leonard lacked training or lacked familiarity with the area, neither prove any intent on Deputy Leonard's behalf to harm Tabitha Smith.. These issues may go to Deputy Leonard's negligence, but neither show or prove any intent to harm and do not rise to the egregious, conscious shocking behavior that is required.

Lastly, the fact that Deputy Leonard may have reached speeds above 100 mph when traveling *to the scene* before he even encountered Smith also do not show or prove that Deputy Leonard intended to harm Smith. There is no evidence and no allegation that he drove even close to that speed when Smith was handcuffed in his patrol car. In Tennessee, officers responding to a scene as an emergency vehicle are permitted to drive in excess of the speed limit. *See* T.C.A. ¶ 55-8-108(b)(1)(C)("A driver of an authorized emergency vehicle operating the vehicle in accordance with subsection (A) may: (C) exceed the speed limit so long as life or property is not thereby endangered.")

Respectfully, this Court should dismiss the federal constitutional claims in the Plaintiff's Fourth Amended Complaint and decline supplemental jurisdiction and remand the State Court claims back to State Court.

10
Case 1:24-cv-00151-DCLC-CHS    Document 107    Filed 10/10/25    Page 10 of 13
PageID #: 1118

Respectfully Submitted,

**DAVIS & HOSS, P.C.**

s/Bryan H. Hoss
Bryan H. Hoss, BPR #021529
Edith Logan Davis, BPR# 038138
850 Fort Wood Street
Chattanooga, TN 37403
(423) 266-0605
(423) 266-0687 – fax
*Attorneys for Estate of Robert J. Leonard*

## CERTIFICATE OF CONFERENCE OF THE PARTIES

Pursuant to this Court's Order contained in ECF Doc. 4 regarding Motions to Dismiss, Counsel would show that this pleading was served on opposing counsel via email on October 8, 2025 prior to filing on ECF. The parties are unable to reach any agreement as to whether the alleged defects complaint of could be cured by a permissible amendment. Counsel certifies that the meet and confer requirement has been satisfied.

s/Bryan H. Hoss
BRYAN H. HOSS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

THOMAS & THOMAS
W. Neil Thomas, III
Michael Mason Thomas
6148 Lee Highway, Suite 115
Chattanooga, TN 37363
wnthomas@twtlawfirm.com
mthomas@twtlawfirm.com
*Attorneys for Plaintiff*

FLORES LAW OFFICE
Robin R. Flores
4110 Brainerd Road, Suite A
Chattanooga, TN 37411
robin@robinfloreslaw.com
*Attorney for Plaintiff*

SUMMER, RUFOLO & RODGERS, P.C.
Jeffrey W. Rufolo
735 Broad Street, Suite 800
Chattanooga, TN 37402
jrufolo@summersfirm.com
*Attorneys for Plaintiff*

OLIVER BELL GROUP
Alyson Oliver
50 W. Big Beaver Road, Suite 200
Troy, MI 48084
Notifications@olivergroup.com
*Attorneys for Plaintiff*

MICHEL & WARD, P.C.
Alix Michel
David J. Ward
735 Broad Street, Suite 406
Chattanooga, TN 37402
alix@michelandward.com
david@michelandward.com
*Attorneys for Meigs County Government*

This the 10th day of October, 2025.

       s/Bryan H. Hoss
              BRYAN H. HOSS

2