TABITHA MARIE SMITH (Deceased) :
(aka Tabatha Marie Colbaugh), by and :
through her surviving children :
NATHAN ALEXANDER SMITH, :  **No. 1:24-cv-151-DCLC-CHS**
JE through next friend JH, :
NR through next friend SR, and :
LC through next friend EH, :
 :  **JURY DEMANDED**
and :
 :
NATHAN ALEXANDER SMITH, :
JE through next friend JH, :
NR through next friend SR, and :
LC through next friend EH, (individually), :
 :
 Plaintiffs, :
 :
v. :
 :
MEIGS COUNTY, and :
 :
ESTATE OF ROBERT J. LEONARD :
(Deceased), by and through Neal Pinkston :
as Administrator *ad Litem*, :
 :
 Defendants. :

## DEFENDANT MEIGS COUNTY'S MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT

COMES NOW Defendant MEIGS COUNTY, ("MEIGS"), through counsel, and pursuant to Federal Rule of Civil Procedure 8 & 12, and files its Motion to Dismiss Plaintiffs' Fourth Amended Complaint and would state as follows:

## 1. APPLICABLE  STANDARD FOR MOTION TO DISMISS

1) Pursuant to Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

1

2) To state a claim upon which relief can be granted, the plaintiff must do more than make mere conclusory statements. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. *Allen v. United States*, C. A. 3:24-3203-JDA-PJG (D. S.C. Jun 17, 2024)

3) When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the plaintiff. *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir. 2005). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). The Court is not required, however, to "accept as true legal conclusions or unwarranted factual inferences." *Bovee v. Coopers Lybrand, C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001) (internal quotation marks and citation omitted).

## 2. <u>BRIEF FACTS</u>

On February 14, 2024, the Meigs County 911 Call Center received a telephone call from a member of the public stating that a person had jumped in front of their vehicle on the Highway 60 bridge in Meigs County and was nearly struck by the vehicle behind them. (ECF Doc. 81-4, Page 3, Page ID 905)[1]

---

[1] Plaintiffs make substantial reference throughout their Fourth Amended Complaint to accident reports compiled by the Tennessee Highway Patrol Critical Incident Response Team (ECF Doc. 81-2), State of Tennessee, Office of the

2

Deputy Leonard was dispatched to investigate what was occurring on the bridge, using a GPS unit to navigate to the scene. (ECF Doc. 102, ¶42). According to 911 CAD records, Deputy Leonard made contact with Smith approximately halfway across the Highway 60 bridge, and Deputy Leonard reported that Smith appeared to under the influence of some type of drugs. Deputy Leonard identified the individual as Tabitha Smith, took her into custody, and reported that he was "10-15 enroute to the SO" or taking Smith to the Sheriff's Office. The Dispatch Office confirmed receipt of that transmission, and stated "Time of transport is 21:58" or 9:58 P.M. Officer Leonard sent a text message to his wife via a cell phone with the content, "arrest." 46 seconds before hitting the water. Officer Leonard's cell phone was found in the usual location in his vest pocket next to his chest. (ECF Doc. 81-4, Page 7, Page ID 909.) The next transmission from Deputy Leonard was the single word "water" at 10:03PM.

The instant memorandum of law follows.

### 3. <u>MEMORANDUM OF LAW</u>

#### a. <u>PLAINTIFFS' CLAIMS</u>

In this case, Plaintiffs allege that the Decedent, Tabitha Marie Smith, suffered violations of her civil rights under 42 U.S.C. §1983 and §1988 (Counts I and II) and make state law claims that sound in theories of tort including wrongful death, intentional infliction of emotional distress, common law assault and battery, gross negligence, and loss of consortium (Counts III-IX).

---

9th District Attorney General Summary Report of Forensic Findings (ECF Doc. 81-3), and State of Tennessee, Office of the 9th District Attorney General Summary Report (ECF Doc. 81-4). Such documents are not admissible at trial under T.C.A. § 55-10-114 and other applicable Tennessee law. MEIGS will reference those documents here in limited fashion only as referred to by Plaintiffs to provide the Court context and does not waive its objection to admissibility at trial of such documents.

3

The Complaint alleges:

- that MEIGS is a political subdivision of the State of Tennessee. (DOC 102 at ¶¶7 and 13);

- that MEIGS at all times relevant employed the individual Defendant Officer Leonard. (DOC 102 at ¶¶19 and 38);

- that Officer Leonard acted under the color of his office and under the color of law. (DOC 102 at ¶¶ 20, 92, 107, 118, 123 and 129);

In the instant motion, MEIGS requests the following:

- the Court dismiss all claims against MEIGS under 42 U.S.C. §1983 and §1988 because Plaintiffs' claims sound in common law negligence theories that do not rise to Constitutional violations;

- the Court dismiss all state-law claims; and

- the Court dismiss the punitive damages claim against MEIGS;

### i. FEDERAL CLAIMS- Counts One and Two

Plaintiffs set out their federal constitutional clams in Count I and Count II of the Complaint. In Count I, Plaintiffs make allegations under the Fourteenth Amendment for a deprivation of Decedent's liberty interest and bodily integrity. (DOC 102 at ¶¶79-92.) To support such claims, Plaintiffs make several allegations against Defendant Leonard including the following:

- He engaged in criminal acts (DOC 102 at ¶¶83 and 87);
- He chose to ignore rumble strips and signage (DOC 102 at ¶¶84 and 87);
- He drove at excessive speed (DOC 102 at ¶¶83 and 85);
- No reasonable person could mistake Blythe Ferry Lane for Hiawassee Highway (sic) (DOC 102 at ¶86);
- He could not navigate the route from the arrest scene to the police department and lacked knowledge of his patrol area (DOC 102 at ¶87); and
- No reasonable law enforcement officer would have acted in this manner. (DOC 102 at ¶87).

4

These allegations against Defendant Leonard, which sound more in tort than in constitutional claims, are followed by claims that MEIGS' is liable for acts of Leonard because it failed to train Defendant Leonard in various ways, including the following:

- MEIGS failed to ensure that Leonard knew his assigned area of patrol (DOC 102 at ¶89);
- MEIGS failed to supervise Leonard to ensure that he did not drive and text or drive recklessly in foggy conditions with limited visibility (DOC 102 at ¶89);
- MEIGS failed to perform a detailed investigation of Leonard's background and addiction (DOC 102 at ¶89);

Plaintiffs follow with direct allegations against MEIGS, stating that it is also responsible for the violation of Ms. Simth's constitutional rights because the police vehicle in use that night did not have any type of navigation system, other than Defendant's personal devices, and had an inoperable speedometer. (DOC 102 at ¶90)

Next, in Count II, Plaintiffs make allegations under the Fourteenth Amendment to the Constitution of the United States for a failure to protect claim. To support such claims, Plaintiffs make allegations similar to those made in Count I against Defendant Leonard, including that while driving in an unfamiliar area

- Leonard made a conscious decision to text while driving (DOC 102 at ¶97 and 99);
- Ignore adverse weather conditions (DOC 102 at ¶97 and 99);
- Ignored the Deceased's warnings (DOC 102 at ¶97 and 99);
- Ignore rumble strips and signage (DOC 102 at ¶97 and 99); and
- No reasonable law enforcement officer would have acted in this manner (DOC 102 at ¶101.)

These allegations against Defendant Leonard in Count II are followed by a claim that MEIGS' is liable for acts of Leonard because it failed to take basic and necessary steps to train, supervise, and hire Defendant Leonard (DOC 102 at ¶103.) and that MEIGS' is liable for acts of Leonard because it failed to train Defendant Leonard in various ways, including the following:

5

- MEIGS failed to ensure that Leonard knew his assigned area of patrol (DOC 102 at ¶106);
- MEIGS failed to supervise Leonard to ensure that he did not drive and text or drive recklessly in foggy conditions with limited visibility (DOC 102 at ¶106); and
- MEIGS failed to perform a detailed investigation of Leonard's background and addiction (DOC 102 at ¶106).

Thus, Plaintiffs' allegations contained in Counts I and II are that MEIGS failed to train Officer Leonard, failed to supervise Officer Leonard and did not perform an adequate investigation when it hired Officer Leonard. With Plaintiffs' claims in mind, we now turn to the applicable law.

## ii. FEDERAL CLAIMS - APPLICABLE LAW

The United States Supreme Court has made it clear that entities such as MEIGS may not be held liable under §1983 solely because an employee such as Deputy Leonard has inflicted injuries, stating as follows:

> In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. . . We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government, as an entity, is responsible under §1983.
> ***Monell v. Depot of Soc. Servs.***, 436 U.S. 658, 691 (1978.)

The Sixth Circuit Court of Appeals has also spoken on this topic, mirroring the ***Monell*** court in stating, "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." ***Thomas v. City of Chattanooga***, 398 F.3d 426, 429 (6th Cir. 2005) (citing ***Monell,*** 436 U.S. at 694). Thus, at the outset, it is only when a Plaintiff can plausibly demonstrate that it is when an employee, while executing a government's policy or custom, causes damages of which the Plaintiff complains of under § 1983 that the governmental agency may be liable under § 1983.

6

Similarly, the United States District Court for the Eastern District of Tennessee has spoken on this topic, stating the following:

> The policy or custom of the municipality must evince a deliberate indifference to the rights of persons with whom police officers come into contact. See ***Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown***, 520 U.S. 397, 410-11 (1997) (applying the deliberate indifference standard to employment decision claims); ***City of Canton v. Harris***, 489 U.S. 378, 388 (1989) (applying the deliberate indifference standard to failure to train claims). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." ***Brown***, 520 U.S. at 410. **"[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond."** ***Stemler v. City of Florence***, 126 F.3d 856, 865 (6th Cir. 1997) (citations omitted).
> ***Wendy Barbieri, Plaintiff, v. Knox County***, No.: 3:15-CV-146-TAV-CCS, (E.D. Tenn., Jan 12, 2016) (Emphasis added.)

With this guidance in mind, we turn to each of Plaintiffs' claims.

1. <u>**Failure to Train**</u>

The United States Supreme Court has limited what claims regarding inadequate training by a governmental entity are actionable as a constitutional violation, stating as follows:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in ***Monell***, 436 U.S., at 694, 98 S.Ct., at 2037, and ***Polk County v. Dodson***, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in ***Pembaur v. Cincinnati***, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1300-1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also ***Oklahoma City v. Tuttle***, 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality - a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983.

7

. . .

       That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. See *Springfield v. Kibbe*, 480 U.S., at 268, 107 S.Ct., at 1120 (O'CONNOR, J., dissenting); *Oklahoma City v. Tuttle*, supra, 471 U.S., at 821, 105 S.Ct., at 2435 (opinion of REHNQUIST, J.). It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

. . .

       To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983.
*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-393, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)

The Sixth Circuit has also commented on a governmental entity's potential liability for

failure to train its employees, stating as follows:

       Because "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 131 S. Ct. 1350, 1359-60 (2011) (internal quotation marks and citation omitted); see also *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).
*Siler v. Webber*, No. 09-6115 (6th Cir. Aug 22, 2011)

       The Sixth Circuit reiterated, stating, **"[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond."**
*Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (citations omitted).

       In this case, the Plaintiffs do not allege that there has been "[a] pattern of similar

constitutional violations by untrained employees" by MEIGS' as is required for a "failure to

8

train" claim to survive a Motion to Dismiss. Plaintiff has not alleged "prior instances of unconstitutional conduct demonstrating that the [Defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Marcilis v. Redford Tp*., 693 F.3d 589, 605 (6th Cir. 2012). Proving deliberate indifference for failure to train requires plaintiffs to "show prior instances of unconstitutional conduct demonstrating that the [Defendant] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id*. As such, the Plaintiffs' claims under Count I and Count II based upon MEIGS alleged failure to train. are facially deficient and should be dismissed as a matter of law.

The Plaintiffs further allege that Defendant Leonard violated the Fourteenth Amendment because a "special relationship" was created with the Deceased, stating, "The instant Leonard arrested the Deceased and placed her handcuffed in the back of his patrol car, a special relationship existed between the Deceased, Leonard and the County. Once in the custody of the Defendants, the deceased was completely reliant upon the Defendants to ensure that she would not be injured or killed." (DOC 102 at ¶81.) The above cases make it clear that the fact pattern in this case does not rise to the level required by Federal law to impose liability for a violation of a constitutional right. The Sixth Circuit recently summarized the analysis for determining whether a state actor's conduct violates the Fourteenth Amendment in such a situation, stating as follows:

> **[T]he plaintiff "must demonstrate that the state acted with the requisite culpability to establish a substantive due process violation under the Fourteenth Amendment."** The government's conduct must be "so 'egregious' that it can be said to be 'arbitrary in the constitutional sense,'" but the standard is "'no calibrated yard stick.'" **"The guiding principle seems to be that a deliberate-indifference standard is appropriate in 'settings that provide the opportunity for reflection and unhurried judgments,' but that a higher bar may be necessary when opportunities for reasoned deliberation are not**

9

**present."** ***McQueen***, **433 F.3d at 469** (internal citations omitted); *see also* ***Ewolski***, 287 F.3d at 510. In other words, the circumstances presented in the individual case determine whether the defendant's conduct violated the Fourteenth Amendment. **In circumstances "when unforeseen circumstances demand an officer's instant judgment," such as a high-speed police chase, "a Fourteenth Amendment violation occurs only when the police act with malice and an 'intent to harm.'"** ***Ewolski***, 287 F.3d at 511 (citing ***Lewis***, 523 U.S. at 853-54, 118 S. Ct. at 1720 (internal citations omitted)). **In comparison, where "actual deliberation is practical," such as in the custodial situation of a prison, a less deferential "deliberate indifference" standard applies.** ***Lewis***, **523 U.S. at 851, 118 S. Ct. at 1719.**
***Rusu v. City of Birmingham***, 522 F. Supp. 2d 833, 837-838. (Emphasis added.)

In this case, the totality of the conduct by Officer Leonard alleged by the Plaintiffs including taking the Decedent into custody, a one-word text to his wife 46 seconds before the incident, driving 44-56 miles per hour and ignoring rumble strips and signs. Such conduct does not seem to be so egregious or shocking to the conscious so as to rise to the level to create constitutional liability referred to above. Certainly, such conduct does not demonstrate the "malice or intent to harm" the Decedent necessary to create a violation of the Decedent's constitutional rights, and such claim fails as a matter of law.

## 2. <u>Failure to Supervise</u>

With regard to liability for improper supervision, Section 1983 does not provide for liability under the theory of respondeat superior. ***Iqbal***, 556 U.S. at 676; ***McQueen v. Beecher Cmty. Sch***., 433 F.3d 460, 470 (6th Cir. 2006) (citing ***Leary v. Daeschner***, 349 F.3d 888, 903 (6th Cir. 2003)). Negligence, too, is not a vehicle for § 1983 supervisory liability. ***Doe ex rel. Doe v. City of Roseville***, 296 F.3d 431, 441 (6th Cir. 2002) (citation omitted). Supervisory liability cannot be based on inaction, but "must be based on [subordinates'] 'active unconstitutional behavior.'" Id. at 440 (discussing ***Shehee v. Luttrell***, 199 F.3d 295 (6th Cir. 1999)); see also ***McQueen v. Beecher Community Schools, 433 F.3d 460 (6th Cir. 2006)***, The Court of Appeals for the Sixth Circuit has held that claims for failure to supervise "must meet the

10

rigorous standards of culpability and causation that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its facially lawful policies." *Amerson v. Waterford Tp*., 562 F. App'x 484, at 491–92 (6th Cir. 2014) (quoting *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). To sustain a failure to supervise claim a plaintiff "must show that the city acted with 'deliberate indifference' to the risk of [the constitutional violation] and that its deliberate indifference was the 'moving force' behind the assault." *Id*.

Additionally, the Sixth Circuit has stated that for liability to attach to a supervisor's **"failure to supervise, control or train the offending individual . . . the supervisor [must have] 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"** *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (quoting *Shehee*, 199 F.3d at 300); see also *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010); *Petty*, 478 F.3d at 349; *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002); *City of Roseville*, 296 F.3d at 440. (Emphasis added.) "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Hays v. Jefferson Cnty., Ky*., 668 F.2d 869, 874 (6th Cir. 1982)); see also *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634-35 (6th Cir. 2013). *Nissen v. Cnty. of Sumner*, Civil No. 3:13-0842 (M.D. Tenn. Jul 21, 2014)

In their Fourth Amended Complaint, Plaintiffs simply fail to allege that any MEIGS County official encouraged, authorized, approved or knowing acquiesced in Leonard's alleged conduct of speeding, ignoring adverse weather conditions, ignoring speed bumps and signage and ignoring Decedent's warnings. At most, Plaintiffs allege that MEIGS had an unofficial

policy of having its Sheriff's deputies to communicate using text messages when they lacked radio coverage. (DOC. 102, ¶74.) It is significant that Plaintiffs *do not allege* that MEIGS had a policy that allowed Sheriff's deputies to text *while driving,* but only that Sheriff's deputies were allowed to use texting in lieu of radio communication when radio communication was not available. In fact, Plaintiffs do not allege in their Fourth Amended Complaint that MEIGS was aware that Sheriff's deputies texted while driving. Certainly, such allegations do not reach the minimum requirement "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Thus, the Plaintiffs' allegations for improper supervision fall far short of that necessary to support a constitutional claim under the vast caselaw cited above.

Lastly, Plaintiffs have also failed to show that MEIGS was deliberately indifferent to the dangers of to the alleged failure to supervise, and have not shown that the alleged conduct rises to the "stringent standard" that MEIGS "disregarded a known or obvious consequence of this action." ***Stemler***, 126 F.3d at 856 (quoting ***Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown,*** 520 U.S. 409 (1997)). This is especially true where, as here, Plaintiffs have only presented an example of one officer and one discrete situation that is alleged to have fallen below a certain standard.

Given the lack of allegations regarding improper supervision against MEIGS, and the inadequacy of the allegations against Defendant Leonard to support such a claim against MEIGS, such claims fail as a matter of law and should be dismissed.

### i. <u>STATE LAW CLAIMS</u>

The Court "may decline to exercise supplemental jurisdiction over a claim . . . if (3) the district court has dismissed all claims over which it has original jurisdiction." ***28 U.S.C. §***

*1367(c)(3).* In this case, if the Court decides to grant MEIGS' motion to dismiss related to Counts I and II, there will be no remaining federal question before the Court, and the Court has the discretion to decline to exercise supplemental jurisdiction over Plaintiffs' case which will then be composed exclusively of state law claims.

Furthermore, any tort claim against a Tennessee governmental entity *must* be brought pursuant to the Tennessee Government Tort Liability Act ("TGTLA"). *See* Tenn. Code Ann. §29-20-101 et seq. See also *Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 24–25 (Tenn. 2014). The TGTLA provides that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. §29-20-201. "Governmental entity" is defined as "any political subdivision of the state of Tennessee." Tenn. Code Ann. § 29-20-102(3)(A).

The TGTLA also provides "[t]he circuit courts [of Tennessee] have exclusive jurisdiction over any action brought under this chapter." Tenn. Code Ann. §29-30-307. As a result of this "exclusive jurisdiction" provision, federal district courts routinely refuse to exercise supplemental jurisdiction over state-law claims brought under the TGTLA. *See, e.g.*, *Durham v. Estate of Losleben by and through Tatum*, No. 16-1042, 2017 WL888357, at *5 (W.D. Tenn. Mar. 6, 2017) (collecting cases).

A court may decline to exercise supplemental jurisdiction "in exceptional circumstances [where] there are compelling reasons for declining jurisdiction." 28 U.S.C. §1367(c)(4). The Sixth Circuit has held that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000), *abrogated on other grounds by* *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

*Dep't of Health & Human Res.*, 532 U.S. 598 (2001). [2] MEIGS submits this unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction of the state-law claims herein.

Additionally, even if this Court decides that Plaintiffs have plausibly stated claims for violations of civil rights under 42 U.S.C. §1983, then because all the alleges state law claims are torts that Plaintiffs allege were committed in the context of the violation of civil rights, and any alleged torts arose out of the same circumstances giving rise to the civil rights claims under 42 U.S.C. §1983, all such tort claims fall within the exceptions listed in Tenn. Code Ann. § 29-20-205, and should be dismissed. See *Johnson, v. City of Memphis*, 617 F.3d 864 at 872 (6th Cir. 2010).

Out of an abundance of caution MEIGS will address each state law claim in the event the Court maintains jurisdiction over either Count I or Count II.

### A. <u>Count Three – Wrongful Death</u>

In Count Three, Plaintiffs restate that MEIGS is not immune from such claims, that Officer Leonard had a duty to protect the Deceased from injury and death, and that Leonard's acts were grossly negligent, malicious, willful and criminal. Count Three of the Complaint does not state any independent allegations against MEIGS, but simply alleges that MEIGS is responsible for the actions of Defendant Leonard under Tenn. Code Ann. § 8-8-302.

However, Tenn. Code Ann. § 8-8-302 does not apply to claims of gross negligence. The statute allows for suits against counties for wrongs committed by deputies acting "by virtue of or under color of the office," but it has been interpreted to apply only to non-negligent conduct,

---

[2] There is some debate as to whether a federal court must dismiss a TGTLA claim, but even if the Sixth Circuit has not mandated dismissal, it has been clear "a federal district court should . . . decline to exercise jurisdiction over such claims." *Ontha v. Rutherford Cnty, Tenn.*, 222 F. App'x 498, 508 n.4 (6th Cir. 2007).

such as intentional misconduct, rather than negligence or gross negligence. The Tennessee Supreme Court in *Jenkins v. Loudon County*, 736 S.W.2d 603 clarified that actions for negligence, including gross negligence, fall under the Tennessee Governmental Tort Liability Act (GTLA) rather than Tenn. Code Ann. § 8-8-302. See *Siler v. Scott*, 591 S.W.3d 84, *Hensley v. Fowler*, 920 S.W.2d 649, *Erwin v. Rose*, 980 S.W.2d 203.

The United States District Court for the Western Section of Tennessee has cited *Jenkins* for this very proposition, stating as follows:

> In *Jenkins v. Loudon County*, <u>736 S.W.2d 603</u> (Tenn. 1987) the Tennessee Supreme Court stated that "the scope of the GTLA is generally intended to exclude intentional torts," but that if a "specific or special statute provides" for causes of actions beyond those provided by "the GTLA, then those remedies would not be affected by the GTLA. . . ." *Jenkins*, <u>736 S.W.2d at 608</u>. Thus, "[a]ctions for the non-negligent misconduct of deputies . . . may . . . be covered by T.C.A. § 8-8-301, et seq., in the appropriate cases." *Jenkins*, <u>736 S.W.2d at 609</u> (internal citations omitted).

> In *Limbaugh v. Coffee Medical Center*, <u>59 S.W.3d 73, 81</u> (Tenn. 2001) the Tennessee Supreme Court abrogated *Jenkins*. The Tennessee Supreme Court in *Limbaugh* determined that the opinion in *Jenkins* overly restricted the application of the GTLA. More specifically, the court found that the list of excluded actions provided in § 29-20-205(2) was intended to be a comprehensive list of actions excluded by the GTLA and that its application to all non-negligent torts was incorrect. Thus, in *Limbaugh* the court limited the exclusion of actions listed in Tennessee Code Annotated § 29-20-205(2) to those specifically listed instead of the previous interpretation which extended the list to all non-negligent torts. See *Limbaugh,* <u>59 S.W.3d at 81</u>.

> > The section actually excludes actions which "[a]rises out of false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights. . . ." Tenn. Code Ann. § 29-20-205(2). In Jenkins the court concluded that § 29-20-205 (2) excluded all intentional torts from the scope of the GTLA. See *Jenkins*. <u>736 S.W.2d at 609</u>.

> **Although *Limbaugh* abrogated *Jenkins*, it clearly did not affect the holding in *Jenkins* concerning § 8-8-302. Indeed, the *Limbaugh* opinion**

15

**did not address § 8-8-3 02, nor did the opinion indicate what affect it would have on the future application of § 8-8-302.** Logic would indicate that the ***Limbaugh*** opinion would affect the application of § 8-8-302. Since ***Limbaugh*** expanded the application of the GTLA to some non-negligent torts, § 8-8-302 would no longer be applicable to those torts. See ***Jenkins***, 736 S.W.2d at 81. Since ***Limbaugh*** specifically made assault and battery actionable under the GTLA, § 8-8-302 would no longer cover those causes of action.

In ***Limbaugh*** the court had no cause to analyze § 8-8-302 since the state actions were not conducted by deputies. See ***Limbaugh***, <u>59 S.W.3d at 76</u>.

In this case, Plaintiff's intentional tort allegations were assault and battery. These actions are not listed in § 29-20-205(2) and are now actionable under GTLA. Since these causes are actionable under the GTLA, § 8-8-302 no longer provides causes of action for assault and battery. Since Plaintiff has not stated any other intentional claim actionable under § 8-8-302, Plaintiff has not stated a claim under 8-8-302. Accordingly, Defendants' motion for summary judgement must be granted as it concerns § 8-8-302.
***Davis v. Hardin County, Tennessee,*** et al. (W.D.Tenn. 2002), No. 99-1218 (May 22, 2002)

Thus, it is clear that MEIGS is not responsible for the grossly negligent acts of Defendant Leonard.

Further, while it is debatable under Tennessee's Public Duty Doctrine whether Leonard's acts were grossly negligent, malicious, willful and criminal, such claims do not create a claim against MEIGS, and such claims fail as a matter of law and must be dismissed.

The Plaintiffs' wrongful death claim (DOC 102 at ¶¶108-112) states no independent allegations against MEIGS and seems to be predicated upon "acts and omissions" stated otherwise in the Complaint. As such, this "claim" contains no independent allegations against MEIGS which are actionable, and to the extent such a claim be found, MEIGS incorporates all the defenses pled herein to such claim.

16

**B. <u>Count Four – Assault and Battery</u>**

In Count Four, the Plaintiffs limit their allegation to Officer Leonard and make no allegations against MEIGS in Count Four of their Complaint and rely solely upon Tenn. Code Ann. § 8-8-302 to attempt to establish liability against MEIGS. (DOC 102 at ¶¶113-118.) However, as stated above, the ***Davis*** case, citing ***Limbaugh*** and ***Jenkins***, makes it abundantly clear Tenn. Code Ann. § 8-8-302 is not applicable to assault and battery, stating as follows:

> Since ***Limbaugh*** specifically made assault and battery actionable under the GTLA, § 8-8-302 would no longer cover those causes of action.
> ***Davis v. Hardin County, Tennessee,*** et al. (W. D. Tenn. 2002), No. 99-1218 (May 22, 2002)

Thus, Plaintiffs' claim for assault and battery should be dismissed as a matter of law.

**C. <u>Count Five - Intentional Infliction of Emotional Distress.</u>**

TCA §29-20-205(2) specifically immunizes MEIGS against the Plaintiffs' claims of infliction of mental anguish, providing as follows:

> **Removal of immunity for injury caused by negligent act or omission of employees — Exceptions — Immunity for year 2000 computer calculation errors.**
>
> > Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> >
> > (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> >
> > (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, **infliction of mental anguish**, invasion of right of privacy, or civil rights; . . .
> >
> > TCA §29-20-205(2) (2023). (Emphasis added).
> > See ***Lemon v. Williamson Cnty. Sch***., 618 S.W.3d 1 (Tenn. 2021).

17

As such, the Plaintiffs' claims for mental anguish in Count Five of the Complaint should be dismissed with prejudice.

Further, in **Rogers v. Louisville Land Co**., 367 S.W.3d 196 (Tenn. 2012), the Tennessee Supreme Court identified the elements of an IIED claim and stated in relevant part:

> The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, **(2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff**.
> *Rogers*, 367 S.W.3d at 205 (emphasis added).

Turning now to the instant case, while the Complaint contains a conclusory allegation of "outrageous conduct" (DOC 67 at ¶98) **the Plaintiffs do not articulate facts reflecting what outrageous conduct occurred herein that is not tolerated by a civilized society**. Thus, Plaintiffs' Complaint on its face does not state the facts necessary to make out an intentional infliction of emotional distress claim.

Moreover, Plaintiffs' Complaint contains no allegation whatsoever that the Plaintiffs suffered a **serious** mental injury herein. As such, the Plaintiffs' IIED claim against MEIGS should be dismissed with prejudice.

**D. Count Six- Gross Negligence**

In Count Six, the Plaintiffs allege that Officer Leonard was grossly negligent in his conduct and does not state any independent allegations against MEIGS. Plaintiffs simply allege that MEIGS is responsible for the actions of Defendant Leonard under Tenn. Code Ann. § 8-8-302. However, Tenn. Code Ann. § 8-8-302 does not apply to claims of gross negligence. (SEE argument Section A- Wrongful Death).)

Additionally, Federal Courts have previously considered such claims, stating as follows:

The district court dismissed Mosier's state-law negligence claims under Federal Rule of Civil Procedure 12(b)(6). We review de novo a district court's order

granting a motion to dismiss. ***Health One Med. Ctr., Eastpointe P.L.L.C***. ***v. Mohawk, Inc.***, 889 F.3d 800, 801 (6th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) (quoting ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007)).

A.

The district court relied on the "civil-rights exception" to the Tennessee Governmental Tort Liability Act (GTLA) to dismiss Mosier's negligence claims against Evans in both his official and personal capacities and the vicarious liability claim against Crockett County. The court invoked the GTLA's "discretionary function exception" to dismiss the negligent hiring, training, retention, and supervision claim against Crockett County. The civil-rights exception bars all these claims, save for the personal-capacity claim against Evans.

**The GTLA recognizes that Tennessee "governmental entities" are broadly immune from state-law tort liability. See Tenn. Code Ann. § 29-20-201(a). This immunity extends to state-law tort claims against officials sued in their official capacities. *Siler v. Scott*, 591 S.W.3d 84, 102 (Tenn. Ct. App. 2019) ("[W]here [the] GTLA immunizes a governmental entity, it follows that an officer is also immune when sued in his official capacity." (second alteration in original) (citation omitted)).** The GTLA then selectively waives that broad grant of immunity and creates exceptions to those waivers. As relevant here: **"Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of** . . . false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, **or civil rights."** Tenn. Code Ann. § 29-20-205(2) (emphasis added).

What does it mean to arise out of civil rights? The Tennessee Supreme Court has not answered the question, so we must predict what the Tennessee Supreme Court would say. See ***Payne v. Novartis Pharmaceuticals Corp***., 767 F.3d 526, 530 (6th Cir. 2014). We have some relevant data to guide us.

**First, the Tennessee Supreme Court has been clear that the GTLA's waivers of immunity are to be "strictly construed" "in favor of the sovereign."** See ***Lawson v. Hawkins County***, 661 S.W.3d 54, 60 (Tenn. 2023) (citations omitted). The GTLA "provides that 'any claim for damages must be brought in strict compliance with the terms of this chapter.'" ***Hughes v. Metro. Gov't of Nashville & Davidson Cnty***., 340 S.W.3d 352, 361 (Tenn. 2011) (quoting Tenn. Code Ann. § 29-20-201(c)). The Tennessee Supreme Court has read this language to say that

19

a "strict constru[ction]" approach "has been expressly incorporated into the Act."[2] Id. (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn. 1995)).

Next, we are guided by decisions of the Tennessee Court of Appeals, which are persuasive evidence of what the Tennessee Supreme Court would do. *Borman, LLC v. 18718 Borman, LLC*, 777 F.3d 816, 823 (6th Cir. 2015). Those decisions have construed the GTLA's civil rights exception and lead us to conclude that Mosier's claims "arise out of civil rights" under the GTLA.

Start with *Cochran v. Town of Jonesborough*, 586 S.W.3d 909 (Tenn. Ct. App. 2019). There, Cochran sued Officer Peace, who arrested him, and the Town of Jonesborough in federal court, alleging that he had been handcuffed too tightly. Id. at 911-12. Cochran brought both a Fourth Amendment excessive-force claim against Peace under § 1983, and a state-law negligence claim against the Town. Id. at 912. The negligence claims alleged that the Town had failed to train and supervise Peace and that the Town was vicariously liable for Peace's negligence in handcuffing Cochran. Id. The district court granted summary judgment to Peace on the excessive-force claim and declined to exercise supplemental jurisdiction over the negligence claims, dismissing them without prejudice. Id. Cochran then refiled the negligence claims in state court. Id. The state trial court dismissed the claims, reasoning that the GTLA's civil-rights exception applied because the claims arose "from the same set of facts upon which [Cochran] alleged that his constitutional and civil rights had been violated." Id. at 913. Cochran appealed.

The Tennessee Court of Appeals affirmed. **"As an initial matter," the court rejected the notion that a plaintiff could avoid the civil-rights exception simply by casting his claims as sounding in negligence.** Id. at 918. The "plaintiff's characterization of the claims in his complaint is not dispositive." Id. **The court then surveyed its prior cases, and concluded that in all but a single, unpublished, decision—*Parker v. Henderson County*, 2010 WL 377044 (Tenn. Ct. App. Feb. 4, 2010)-the Tennessee Court of Appeals had held that the civil-rights exception applied when civil-rights claims and negligence claims were "based on the same facts."** See id. at 915-921. Citing the Tennessee Supreme Court's "well-established principle that statutes permitting suits against the State must be strictly construed," the court rejected *Parker*, deciding instead "to follow the greater weight of authority and embrace the application of [the civil-rights exception] that preserves immunity." Id. at 920-21 (citations omitted). According to that construction, courts must look to the "gravamen" of the plaintiff's claim-"the substantial point, the real purpose, or the object' of his action"-to determine whether it arises out of civil rights. Id. at 918-19 (quoting *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 148 (Tenn. 2015)).

Applying that standard, the court held that Cochran's claims "sound[ed] squarely in civil rights." Id. at 919. The "premise" of Cochran's negligence action was that

he had been "injured by the manner in which Officer Peace handcuffed and arrested" him. Id. Although Cochran cast those claims as sounding in "negligence," see id. at 919 n.3, the essence of the allegations amounted to "excessive handcuffing," which, the court noted, is associated with the civil right to be free from excessive force under the Fourth Amendment, id. at 919. Thus, "regardless of how [Cochran] chose to characterize those claims in his state action," the state-law claims were covered by the civil-rights exception because they "stem[med] from" civil rights. Id.

. . .

In **Siler v. Scott**, the Tennessee Court of Appeals again considered the question and reiterated its holding in **Cochran. Siler**, 591 S.W.3d at 97. There, Siler brought a federal civil-rights claim for excessive force against several officers, as well as a state-law negligence claim against Campbell County for its failure to supervise and train the officers. Id. at 92, 95. **The court of appeals held that Cochran "compelled" it to conclude that the civil-rights exception applied and barred the negligence claim. Id. at 97. That was so because, as in _Cochran_, Siler "alleged violation of his federal civil rights in his federal action" and "[a] claim of excessive force by law enforcement officers often involves the implication of a civil rights action." Id. Siler is the most recent published Tennessee Court of Appeals decision to address the question.**

**Cochran** and **Siler** hold that an injury arises out of civil rights when a civil-rights violation is the "gravamen" of the complaint. See **Cochran**, 586 S.W.3d at 918. The Tennessee Court of Appeals has explained that the plaintiff's "characterization of the claims" does not control; what matters is the claim's "substantial point" or "real purpose." Id. at 918-19 (citation omitted). And there need not have been an actual civil-rights violation. Id. at 920. Rather, Tennessee courts ask whether the claim is "based on the same facts" or is sufficiently related to an accepted civil-rights claim. See id. at 918-19.

**That standard is consistent with the approach we have taken in our prior cases.** In **Johnson v. City of Memphis**, Johnson brought a § 1983 claim and moved to amend her complaint to add a negligence claim. 617 F.3d 864, 867 (6th Cir. 2010). The § 1983 claim alleged that officers' entry into a home violated the Fourth Amendment. See id. at 868. The negligence claim alleged that a 911 dispatcher had failed to relay relevant information to those officers. See id. at 871. This court affirmed the district court's denial of the motion to amend under the civil-rights exception because the "claim regarding the dispatcher's negligence arises out of the same circumstances giving rise to her civil rights claim under § 1983." Id. at 872. We reiterated that standard in **Devereux v. Knox County**, 15 F.4th 388 (6th Cir. 2021), and collected cases demonstrating that we continue to apply **Johnson's** "aris[ing] out of the same circumstances" analysis, as does the Tennessee Court of Appeals. Id. at 393. We added that, "under **Cochran**," the issue is whether negligence claims "sound in civil rights," and noted that the

21

"presence of a civil rights claim is not strictly necessary" for the GTLA's civil-rights exception to bar a negligence claim. Id. at 397.

. . .

**After *Cochran*, which abrogated cases like *Parker*, the decisions of the Tennessee Court of Appeals are uniform. See *Siler*, 591 S.W.3d at 97. That uniform approach is consistent with this court's interpretation of the civil-rights exception, see *Devereux*, 15 F.4th at 393, and the Tennessee Supreme Court's explicit instruction that waivers of sovereign immunity in the GTLA are to be construed narrowly, see *Lawson*, 661 S.W.3d at 60. That is convincing evidence of what the Tennessee Supreme Court would do, and neither Mosier nor the dissent cite any good law to the contrary.**

**The standard announced in *Cochran*, and recognized by this court in cases like *Devereux*, bars Mosier's state-law negligence claims against Evans in his official capacity and against Crockett County.**
**_Mosier v. Evans_, 904 F. 4ᵗʰ 541, 550-554, 6th Cir. Jan 09, 2024) (Emphasis added.)**

The gravamen of the Plaintiffs' Complaint resides with their civil rights claims that they allege in Counts One and Two. As such, Plaintiffs' state law negligence claims alleged in Count Six are barred by the standard announced in ***Cochran*** and recognized by this court in cases like ***Devereux,*** and such claims fail as a matter of law and must be dismissed.

### E. Count Seven - Negligence

In Count Seven, at ¶131-137, the Plaintiffs allege that MEIGS is liable to Plaintiffs under Tenn. Code Ann. § 29-20-202, which states as follows:

> (a) Immunity from suit of all governmental entities is removed for injuries resulting from the negligent operation by any employee of a motor vehicle or other equipment while in the scope of employment.

Under this statute, MEIGS is not responsible for any conduct which is grossly negligent, malicious, willful, and/or criminal, as Plaintiffs have alleged throughout the remainder of their Complaint.

### F. Count Eight – Loss of Consortium

In Count Eight, the Plaintiffs again make allegations against Officer Leonard and do not state any independent allegations against MEIGS other than pursuant to Tenn. Code Ann. § 8-8-302. Plaintiffs simply allege that MEIGS is responsible for the actions of Defendant Leonard under Tenn. Code Ann. § 8-8-302. However, Tenn. Code Ann. § 8-8-302 does not apply to claims of gross negligence. (SEE argument Section A- Wrongful Death).)

Paragraphs 114-117 of the Complaint do not set forth any new allegations against MEIGS.

### G. Count Nine – Liability Pursuant to Tenn. Code Ann. §8-8-302

Defendant has already addressed Counts Three - Eight of the Complaint and set forth the reasons that each should be dismissed. Tenn. Code Ann. §8-8-302 does not create any independent or additional liability or grounds that need to be addressed here.  Plaintiffs' reliance on Tenn. Code Ann. §8-8-302 is adequately addressed in Sections A – Wrongful Death and Section D – Wrongful Death.

### H) Punitive damage claims

The Complaint requests punitive damages against MEIGS. A punitive damage claim against a governmental entity is not viable under 42. U.S.C. §1983 and is subject to dismissal. See e.g., *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Alexander v. Beale St. Blues Co., Inc.*, 108 F. Supp. 2d 934, 950 (W.D. Tenn. 1999) ("Punitive damages are not recoverable from a municipality under §1983 or under the GTLA.") (citations omitted); and, *Tipton Cnty. Bd. of Educ. v. Dennis*, 561 S.W.2d 148 (Tenn. 1978).

As such, the punitive damage claim against MEIGS should be dismissed.[3]

## Conclusion

WHEREFORE, based on the above, MEIGS respectfully requests the Court dismiss all of the Plaintiffs' claims brought against it, with prejudice.[4]

## CERTIFICATE OF CONFERENCE OF THE PARTIES

As this pleading involves a Motion to Dismiss, the parties have conferred and cannot reach agreement as to whether the defects complained of in the Motion to Dismiss vis a vis MEIGS can be cured by a permissible amendment.

Respectfully submitted,

**MICHEL AND WARD, P.C.**

By: /S/ David J. Ward _____
        **Alix C. Michel (BPR No. 024243)**
        **David J. Ward (BPR No. 013449)**
735 Broad Street, Suite 406
Chattanooga, Tennessee 37402
Telephone: 423.602.9521
Facsimile: 423.265.9524
*Attorneys for Defendant MEIGS*

This 10th day of October, 2025.

---

[3] To the extent the Plaintiffs seek punitive damages for any alleged violation(s) of state law claims, punitive damages are not recoverable from either a governmental entity or its employees for said violations. See *Johnson v. Smith*, 621 S.W. 2d 570, 572 (Tenn. 1981).

[4] Discovery as to the liability issues has not commenced in this matter. By filing this motion, this Defendant does not waive the right to assert any additional Federal and/or State law immunities, including qualified immunity, the public duty doctrine, and defenses under the Eleventh Amendment and/or other GTLA provisions, in future pleadings.

24