| | | |
|---|---|---|
| TABITHA MARIE SMITH (Deceased) (aka Tabatha Marie Colbaugh), by and through her surviving children NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH, <br><br>and<br><br>NATHAN ALEXANDER SMITH, NR through next friend SR, JE through next friend JH, and LC through next friend EH, (individually),<br><br>*Plaintiffs,*<br><br>~V~<br><br>MEIGS COUNTY, and<br><br>ESTATE OF ROBERT J. LEONARD (Deceased), by and through Neal Pinkston as Administrator *ad Litem*,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | No. 1:24-cv-151-DCLC-CHS<br><br>JURY DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANT ESTATE OF LEONARD'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

NOW COME Plaintiffs Tabitha Marie Smith, Nathan Smith, NR, JE, and LC and for their response in opposition to Defendant Estate of Leonard's ("Defendant Leonard") Motion to Dismiss filed on October 10, 2025 (DE 107), submit the following:

I.  **Applicable Legal Standard**

When entertaining a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the plaintiff's well-pled factual allegations as true and draw all reasonable inferences

1

in their favor. *See Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018) (citations omitted). Having accepted a plaintiff's factual allegations as true and drawn all reasonable inferences in their favor, "[i]f it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds. *Id.* Moreover, "[a] motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (citation omitted).

It is well documented in civil rights jurisprudence that motions to dismiss are to be carefully scrutinized and only granted in extreme circumstances. *See e.g. Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (motions to dismiss civil rights complaints should be "scrutinized with special care"); *Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 653 (6th Cir. 2011) ("Dismissals of actions brought under the civil rights statutes are scrutinized with special care."); *Azar v. Conley,* 456 F.2d 1382, 1384 n. 1 (6th Cir.1972)); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (same); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976) (same); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ("the rule of liberal construction is 'particularly important in civil rights cases.'").

## II. Counterstatement of Facts

On February 14, 2024, Meigs County Sheriff's Deputy Defendant Leonard was dispatched to a disturbance on the Tennessee Highway 60 bridge over the Tennessee River. (DE 102, PageID #1051, ¶40). Defendant Leonard had been on the force for approximately three months before this date and had received just two weeks of on-duty training. *Id.* at ¶39. Despite his patrol vehicle not having a working speedometer, Defendant Leonard drove *to* the disturbance at speeds of up to 102 mph. *Id*. at PageID # 1052, ¶¶41–42.

After turning onto Blythe Ferry Lane, Defendant Leonard drove at speeds reaching up to 56 mph, despite the dark and foggy conditions.[1] Starting approximately 1663 feet from the Blythe Ferry Boat Ramp ("the Boat Ramp"), there are numerous warnings of impending danger. At 1663 feet from the boat ramp, there was a yellow sign alerting drivers "ROAD ENDS 1500 FT." (DE 102, PageID #1050, ¶30). At distances of 1363, 1072, 474, and 236 feet there were rumble strips across the road with the warning "STOP AHEAD" painted on them. (DE 102, PageID #1050–1051, ¶¶ 30, 33, 36, 37). At 502 feet from the Boat Ramp was another yellow sign warning drivers "STOP AHEAD". (DE 102, PageID #1051, ¶34).

Defendant Leonard ignored these warnings and the warnings from Ms. Smith, *id*. at PageID # 1054, ¶¶32–63, hitting the Tennessee River at approximately 44 mph. Ms. Smith – trapped by the handcuffs and the door – drowned. *Id*. at PageID # 1053, ¶52.

### III. Argument

Defendant Estate of Leonard ("Defendant Leonard") argues that Plaintiffs Fourteenth Amendment bodily integrity (Count I) and failure to protect (Count II) claims should be dismissed for failure to state a claim. As explained below, Defendant Leonard is not entitled to dismissal because: 1) Plaintiffs properly pled a Fourteenth Amendment bodily integrity claim; 2) the Fourteenth Amendment rather than the Eighth Amendment covers the claims of pretrial detainees such as Ms. Smith; and 3) the request to decline supplemental jurisdiction contains no substantive arguments and is predicated on the incorrect assumption that Plaintiffs federal claims will be dismissed.

A. Federal Claims

   i.   *Plaintiffs properly pled a Fourteenth Amendment bodily integrity claim*

---

[1] Defendant Leonard *still* drove in this manner while he was unable to determine his vehicle's speed because his speedometer was not working. (DE 102, PageID #1052, ¶41).

3

Case 1:24-cv-00151-DCLC-CHS   Document 112   Filed 11/17/25   Page 3 of 11
PageID #: 1154

The right to bodily integrity is a well-established core to substantive due process under the Fourteenth Amendment's Due Process Clause. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994). Cases involving the right to bodily integrity come in many forms. One line of cases involves the forcible introduction of something into a person's body. *See Guertin v. Michigan*, 912 F.3d 907, 919–20 (6th Cir. 2019) (discussing case involving involuntary introduction of anti-psychotic medications into a person's body). However, as recognized by the Sixth Circuit in *Guertin*, the core tenant of the right to bodily integrity – the "constitutional right to be free from forcible intrusions on their bodies against their will" – is broad. *Id*. at 919 *quoting Planned Parenthood Sw. Ohio Region v. Dewine*, 696 F.3d 490, 506 (6th Cir. 2012).

The *Guertin* Court explained that "Deliberate indifference in that shocks in one environment may not be so patently egregious in another . . ." *Guertin*, 912 F.3d at 923 (citation and quotation omitted). Then, to determine whether the conduct of the Flint Water Crises Defendants reached the threshold in that case, the Court considered four factors, "the time for deliberation, the nature of the relationship between the government and the plaintiff, and whether a legitimate government purpose motivated the official's act." *Id*. at 924. In *Guertin* the court determined that the extensive time for deliberation, involuntary nature of the relationship, and lack of legitimate government purpose weighed in favor of finding deliberate indifference. *Id*. at 924–26. The Court then considered whether each of the defendants acted with deliberate indifference or "subjective recklessness . . ." *Id*. at 926–32.

In its Motion, Defendant Leonard relies heavily on *Durham v. Estate of Losleben*, 744 Fed. 268 (6th Cir. 2018). *See generally* (DE 107, PageID #1113–1117). This reliance is misplaced for several reasons. First, *Durham* itself is unpublished and therefore bears no precedential value. *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 944 (6th Cir. 2020) (quoting, *Bell v. Johnson*, 308

4

F.3d 594, 611 (6th Cir. 2002) ("It is well-established law in this circuit that unpublished cases are not binding precedent.")). Second, subsequent cases from the Sixth Circuit have expanded on and clarified the scope of substantive due process claims including with respect to the right to bodily integrity. Finally, even if *Durham* were precedential, it would not control the outcome in this case due to significant factual differences.

While Defendant Leonard does identify the appropriate standard for assessing substantive due process claims, (DE 107, PageID #1116) (quoting *Hunt v. Sycamore Cnty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 536 (6th Cir. 2008)), it fails to apply the standard within the context of this case, instead attempting to bootstrap the reasoning and outcome of *Durham* into this case without acknowledging the significant factual differences between the cases. That failure is fatal to Defendant Leonard's arguments.

In *Durham*, the plaintiff alleged that the defendant, a firefighter, was "driving 'at an excessive rate of speed prior to the collision' even though he 'was not responding to any fire service emergency at the time.'" *Durham*, 744 Fed. Appx. at 269–270 (quoting the record). In affirming the dismissal, the Court held:

> But given Plaintiff's allegations, there is no uncertainty that Plaintiff has failed to state anything more than negligence, or at most, gross negligence on the part of Losleben. At worst, given the facts stated in the complaint, Losleben was speeding down a narrow road for no reason and crossed into Durham's lane.

*Id*. at 271–272.

Defendant Leonard's conduct in this case far exceeds the mere "negligence" of speeding. As alleged by Plaintiffs, Defendant Leonard:

- Texted his wife seconds before driving Ms. Smith into the Tennessee River and was handling the phone prior to crashing. (DE 102, PageID #1052–1053, ¶¶48, 50).

5

Case 1:24-cv-00151-DCLC-CHS   Document 112   Filed 11/17/25   Page 5 of 11
PageID #: 1156

- Drove at speeds between 44 and 56 mph on an unfamiliar road, in dark and foggy conditions with Ms. Smith handcuffed but not belted in the back. (DE 102, PageID #1051–1054, ¶¶40, 44, 48, 52).

- Knew that his vehicle lacked a working speedometer or odometer. (DE 102, PageID #1052, ¶41).

- Ignored relevant signs and rumble strips warning of the impending river. (DE 102, PageID #1050–1051, ¶¶30–36).

These actions easily move beyond negligence or gross negligence and move into the territory of subjective recklessness (tortious and criminal), and deliberate indifference required to establish a substantive due process claim. *See Guertin v. Michigan*, 917 F.3d 907, 926 (6th Cir. 2019). It is of critical importance that Defendant Leonard ignored the rumble strips leading up to the boat ramp. The reason this fact is so important is whether an individual is looking where they are driving or not, they cannot *miss* rumble strips unless they are not driving on the road. The rumble strips provide *both* a tactile and audible warning of a potential risk ahead, such as an unexpected stop sign or the Tennessee River. Thus, even without the testimony of Defendant Leonard or Ms. Smith, unless a jury concludes that Defendant Leonard was not driving on the road, it must conclude that Defendant Leonard heard and felt the rumble strips before driving into the Tennessee River. Other data demonstrates that Defendant Leonard did not slow before reaching the Tennessee River, demonstrating that he *consciously ignored* the rumble strips. (DE 102, PageID #: 1052, ¶ 47).

    The *Durham* Court distinguished the case before it from *Servin v. Anderson*, No. 3:11-cv-539, 2012 U.S. Dist. LEXIS 6422 (D. Conn. Jan. 20, 2012), in which an officer, not on an emergency run, driving at approximately 95 miles an hour collided with another vehicle killing an

occupant. 744 Fed. Appx. at 272.[2] The *Servin* Court denied the defendants' motion to dismiss reasoning:

> [I]f an off-duty police officer's drinking and driving could satisfy the deliberate indifference standard, so too could the speeding of an on-duty police officer merely returning to the police station. In both situations, there appears to have been ample time for reflection, the defendants knew of the potential generalized risks associated with speeding through red lights without lights or sirens, and although potential victims were unknown, the officers nonetheless assumed or acquiesced in such risks.

*Id*. at 14. (internal quotations and citation omitted).

Defendant Leonard argues that Plaintiffs failed to allege the speed limit on Blythe Ferry Lane and that regardless of the speed limit, he was not driving at the type of excessive speeds at issue in the *Servin* case. (DE 107, PageID #1117). Defendant's argument misses several points. First, Plaintiffs allege that there was no posted speed limit on Blythe Ferry Lane. (DE 102, PageID #1050, ¶29). Second, Defendant Leonard lacked a working speedometer, so it is unclear whether *he* knew what speed he was going. (DE 102, PageID #1052, ¶41). Finally, and most critically, whether Defendant Leonard was travelling at or above the speed limit is not the primary issue. Defendant Leonard's speed was excessive *given the time of night and the road conditions* – it was dark and foggy and he was driving down an unfamiliar, winding, rural road with a human handcuffed and unbuckled in the back of his patrol vehicle. (DE 102, PageID ##: 1051-53). Without more, these facts already demonstrate a level of negligence because deer and other animals also exist in this world and often cause traffic accidents. It should also be noted that, while

---

[2] The *Durham* Court's statement that "the [*Servin*] court denied the defendants' motion to dismiss only after granting the plaintiff the inference that it was 'possible that, for example, the police officers were only driving at high speeds because they knew they were clothed with the authority of state law'" appears to confuse the issues as that issue only arose within the context of the "under color of law" discussion, rather than whether the defendant's conduct amounted to deliberate indifference. *Durham*, 744 Fed. Appx. at 272 (quoting *Servin v. Anderson*, No. 3:11-cv-539, 2012 U.S. Dist. LEXIS 6422, at *8 (D. Conn. Jan. 20, 2012)).

7

there is no posted speed limit on Blythe Ferry Lane, the highest speed limit allowable for that type of road under Tennessee law is 55 mph. Tenn. Code Ann. § 55-8-152(f)(1)(B). Defendant Leonard's reliance on Tenn. Code Ann. § 55-8-108(b)(1)(C) is misplaced[3] because once Defendant Leonard arrested Ms. Smith and was transporting her the authorized emergency vehicles exception to speed limits does not apply. Tenn. Code. Ann. § 108(a) ("The driver of an authorized emergency vehicle, when *responding* to an emergency call, or when in the *pursuit* of an actual or suspected violator of the law . . . may exercise the privileges set forth in this section.").

Second, the relationship was undoubtedly involuntary as Defendant Leonard had arrested Ms. Smith. And while Defendant Leonard had a legitimate governmental purpose in transporting Ms. Smith to the Meigs County jail, that purpose was not furthered by his to decisions to text his wife, drive recklessly, text while driving, and ignore road signage and rumble strips all while driving a vehicle lacking a working speedometer and odometer. His deliberate indifference to Ms. Smith's bodily integrity is what resulted in them both drowning in the Tennessee River.

Thus, under the analysis provided by *Guertin*, Plaintiffs have sufficiently pled a bodily integrity claim.

ii.     *Plaintiffs have no Eighth Amendment claims*

In a footnote Defendant Leonard argues, "'failure to protect' claims of a prisoner is [sic.] generally analyzed under the 8th Amendment which Plaintiffs failed to cite in their Complaint." (DE 107, PageID #1114, n. 3) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994); *Scott v. Becher*, 736 Fed. Appx. 130, 133 (6th Cir. 2018)). Defendant Leonard is correct to the extent that the Eighth Amendment covers, *inter alia*, failure to protect claims for prisoners who are serving a sentence of conviction. However, "[t]he Due Process Clause of the Fourteenth Amendment

---

[3] (DE 107, PageID #1118).

provides the same protections to pretrial detainees." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726 (6th Cir. 2022) (citations omitted). *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849–850 (1998)[4] ("the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.") (alteration original, citation and internal quotation omitted).

Ms. Smith was a pretrial detainee as she was not in Defendant Leonard's custody due to any conviction and would therefore be a pretrial detainee whose claims are reviewed under the Fourteenth Amendment. For these reasons, Plaintiffs *do not* have any Eighth Amendment claims at issue in this case.

    iii.    *Defendant Leonard presents no substantive arguments supporting dismissal of Plaintiffs' Fourteenth Amendment failure to protect claims*

Failure to fully develop argument constitutes a waiver of the argument. *C.f. Porter v. Bondi*, 127 F.4th 993, 999 (6th Cir. 2025) ("And where, as here, issues are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,' we consider them forfeited."). Defendant Leonard makes no argument supporting dismissal of Plaintiffs' Fourteenth Amendment failure to protect claim other than a single sentence about the Eighth Amendment. Had Defendant Leonard even applied the Eighth Amendment standard it alleges should govern, Plaintiffs would have responded with arguments using the proper Fourteenth Amendment standard. However, without any indication as to what Defendant Leonard's substantive arguments concerning the failure to protect claim might be, Plaintiffs cannot respond. Consequently, Defendant Leonard has waived these claims.

---

[4] Cited by Defendant Leonard in its motion to dismiss. (DE 107, PageID #1115).

B. State Law Claims

Defendant Leonard requests that this Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims on the assumption that the Court will dismiss Plaintiffs' Federal bodily integrity and failure to protect claims. (DE 107, PageID #1118) ("[T]his Court should dismiss the federal constitutional claims in the Plaintiff's [sic] Fourth Amended Complaint and decline supplemental jurisdiction and remand the State Court claims back to State Court."). Defendant Leonard makes no further argument *why* the Court should decline supplemental jurisdiction over Plaintiffs' state law claims in the event it dismissed Plaintiffs' constitutional claims. Moreover, as this case was originally filed in this Court, (DE 1), there is no mechanism for a "remand" as there was no removal pursuant to 28 U.S.C. § 1446. *See* 28 U.S.C. § 1447.

Because Defendant Leonard failed to present any substantive arguments in support of its request for dismissal of Plaintiffs' Fourteenth Amendment Failure to Protect claim, and the only argument as to the state claims is that upon dismissal of the federal claims, this Court must "remand" to the state court, this motion must be denied.

IV. Conclusion

WHEREFORE, Plaintiffs respectfully request that this Court DENY Defendant Leonard's Motion to Dismiss.

Respectfully submitted,

By: /s/ Robin Ruben Flores
**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff Nathan Smith
4110-A Brainerd Road
Chattanooga, TN  37411
O: (423) 267-1575
F: (423) 267-2703
robin@robinfloreslaw.com

/s/ Alyson Oliver (by permission)
**OLIVER BELL GROUP**
***admitted pro hac vice**
**Attorney for NR, JE and LC**
50 W. Big Beaver Road Ste. 200
Troy, MI 48084
O: (248) 327-6556
F: (248) 416-3047
notifications@oliverlawgroup.com

| | |
|---|---|
| THOMAS & THOMAS, LLC | SUMMERS, RUFOLO & RODGERS, P.C. |
| By: /s/ W. Neil Thomas (by perm) | By: /s/ Jeffery Rufolo (by permission) |
| **W. NEIL THOMAS** | **TENN. BPR #15013** |
| **TENN. BPR #004536** | Attorneys for Plaintiffs NR, JE and LC |
| **MICHAEL THOMAS** | 735 Broad Street, Suite 800 |
| **TENN. BPR #29423** | Chattanooga, TN 37402 |
| Attorneys for Plaintiff Nathan Smith | O: (423) 265-2385 |
| 6148 Lee Highway, Suite 115 | jrufolo@summersfirm.com |
| Chattanooga, TN  37421 | |
| O: (423) 910-9100 | |
| F: (423) 356-3082 | |
| wnthomas@twtlawfirm.com | |

## CERTIFICATE OF SERVICE

The undersigned attorney for the Plaintiffs hereby certifies that true and exact copies of this motion have been filed and served electronically upon all parties in interest or their counsel on the date and time as indicated on the receipt issued by the Court's electronic filing system.

By: /s/ Robin Ruben Flores