## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA

| | |
|---|---|
| TABITHA MARIE SMITH (Deceased) §<br>(aka Tabatha Marie Colbaugh), §<br>by and through her surviving children §<br>NATHAN ALEXANDER SMITH, §<br>JE through next friend JH, §<br>NR through next friend SR, and §<br>LC through next friend EH, §<br>§<br>and §<br>§<br>NATHAN ALEXANDER SMITH, §<br>NR through next friend SR, §<br>JE through next friend JH, §<br>and §<br>LC through next friend EH, §<br>(individually), §<br>§<br>        *Plaintiffs,* §<br>§<br>~V~ §<br>§<br>MEIGS COUNTY, and §<br>§<br>ESTATE OF ROBERT J. LEONARD (Deceased), §<br>by and through Neal Pinkston as §<br>Administrator *ad Litem*, §<br>§<br>        *Defendants*. § | No. 1:24-cv-151-DCLC-CHS<br><br>JURY DEMANDED |

## PLAINTIFFS' RESPONSE TO DEFENDANT MEIGS COUNTY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

COUNTERSTATEMENT OF FACTS ............................................................................ 1

ARGUMENT ................................................................................................................... 2

   I.    Applicable Legal Standard................................................................................ 3

   II.   Plaintiffs' Federal Claims ................................................................................. 4

      A.   Plaintiffs Properly Pled Underlying Constitutional Violations ..................... 4

      B.   Defendant Meigs was Deliberately Indifferent to the Risks Associated with its Wholly Inadequate Training and Supervision Regime ................................................ 6

          1.   Applicable law and distinguishing individual "supervisory liability" with municipal "inadequate supervision" claims because Defendant does not ........................... 6

          2.   Plaintiffs cannot recover punitive damages against the County pursuant to 42 U.S.C. § 1983................................................................................................................ 10

   III.   Plaintiffs' State Law Claims ........................................................................... 11

      A.   The Court Should Retain Supplemental Jurisdiction...................................... 11

      B.   Plaintiffs Properly Pled State Law Claims Against the County Pursuant to Tenn. Code Ann. § 8-8-302 and § 29-20-202................................................................ 15

          1.   Overview of State Law. ............................................................................. 16

          2.   Application to the Fourth Amended Complaint......................................... 19

          3.   Response to County's Argument on Wrongful Death, Loss of Consortium, and Gross Negligence. ................................................................................................ 21

          4.   Response to County's Argument on Assault, Battery, and Intentional Infliction of Emotional Distress. ............................................................................................. 22

          5.   Response to County's Argument on Negligence. ..................................... 25

          6.   Conclusion, and Certificate of Service…………………………………………….26

# COUNTERSTATEMENT OF FACTS

On February 14, 2024, Meigs County Sheriff's Deputy Defendant Leonard was dispatched to a disturbance on the Tennessee Highway 60 bridge over the Tennessee River. (DE 102, PageID #1051, ¶40). Defendant Leonard had been on the force for approximately three months before this date and had received just two weeks of on-duty training. *Id.* at ¶39. Despite his patrol vehicle not having a working speedometer, Defendant Leonard drove *to* the disturbance at speeds of up to 102 mph. *Id.* at PageID # 1052, ¶¶41–42.

After turning onto Blythe Ferry Lane, Defendant Leonard drove at speeds reaching up to 56 mph, despite the dark and foggy conditions.[1] Starting approximately 1663 feet from the Blythe Ferry Boat Ramp ("the Boat Ramp"), there are numerous warnings of impending danger. At 1663 feet from the boat ramp, there was a yellow sign alerting drivers "ROAD ENDS 1500 FT." (DE 102, PageID #1050, ¶30). At distances of 1363, 1072, 474, and 236 feet there were rumble strips across the road with the warning "STOP AHEAD" painted on them. (DE 102, PageID #1050–1051, ¶¶ 30, 33, 36, 37). At 502 feet from the Boat Ramp was another yellow sign warning drivers "STOP AHEAD". (DE 102, PageID #1051, ¶34). Defendant Leonard ignored these warnings and the warnings from Ms. Smith, *id*. at PageID # 1054, ¶¶32–63, hitting the Tennessee River at approximately 44 mph. Ms. Smith – trapped by the handcuffs and the door – drowned. *Id*. at PageID # 1053, ¶52.

For its part, Defendant Meigs County ("County"), implemented an abysmally inadequate training and supervision regime and failed to provide Defendant Leonard with basic safety equipment despite the known hazards of driving, especially within Meigs County, and had a policy where its deputies were to communicate using their cellphones. Specifically, the County:

---

[1] Defendant Leonard *still* drove in this manner while he was unable to determine his vehicle's speed because his speedometer was not working. (DE 102, PageID #1052, ¶41).

1

- Only provided Defendant Leonard with two-weeks of on-the-job training pursuant to its policies; (DE 102, PageID # 1051, ¶39);

- Failed to provide adequate training as to Defendant Leonard's responsibilities in transporting detainees. (DE 102, PageID #1053, ¶58)

- Was aware of Defendant Leonard's unfamiliarity with the area *and* the unique risks posed to drivers by certain areas of Meigs County; (DE 102, PageID # 1056, ¶¶76–77);

- Failed to ensure that Defendant Leonard was properly supervised despite knowing that he was unfamiliar with the area and had only received two-weeks of on-the-job training. (DE 102 PageID # 1056, ¶78);

- Failed to provide safety equipment such as body cameras, dash, cameras, or integrated vehicle GPS. (DE 102, PageID # 1055, ¶¶71, 73);

- Maintained a policy wherein its deputies were to use their cell-phones to communicate where radio coverage was lacking; (DE 102, PageID # 1055, ¶¶74–75); and

- Required Defendant Leonard to be responsible for half of the County's 217 square miles[2] of jurisdiction, despite the cursory on-the-job training, and lack of familiarity with the area. (DE 102, PageID # 1055–1056, ¶¶69–70, 77–78)

## ARGUMENT

For twenty-four pages, Defendant Meigs County ("County") meanders through relevant and peripheral law,[3] attempts to rewrite Plaintiffs' Fourth Amended Complaint ("Complaint"),

---

[2] As a comparison, Chicago, Illinois, has a land area of about 227 square miles, only slightly larger than Meigs County.

[3] For example, the County dedicates more ink to the non-issue of individual supervisory liability than to whether there was an underlying constitutional violation. *Compare* (DE 108 PageID # 1132–33) *with* (*id*. PageID # 1130–1131).

2

(DE 102), and omits controlling authority to hide the fundamental flaws in its Motion.[4] Numerous typographical and citation[5] errors add additional roadblocks to following the County's arguments. The efforts that Plaintiffs' Counsel made to clarify the issues and claims by filing their Fourth Amended Complaint are squandered by the County's refusal to accept the relationship between TENN. CODE ANN. § 8-8-301 *et seq.* and TENN. CODE ANN. § 29-20-201 *et seq.*

## I. Applicable Legal Standard

When entertaining a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the plaintiff's well-pled factual allegations as true and draw all reasonable inferences in their favor. *See Doe v. Baum*, 903 F.3d 575, 580–81 (6th Cir. 2018) (citations omitted). Having accepted a plaintiff's factual allegations as true and drawn all reasonable inferences in their favor, "[i]f it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds. *Id.* Moreover, "[a] motion to dismiss for failure to state a claim is disfavored, especially when one's civil rights are at stake." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (citation omitted).

It is well documented in civil rights jurisprudence that motions to dismiss are to be carefully scrutinized and only granted in extreme circumstances. *See e.g. Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (motions to dismiss civil rights complaints should be "scrutinized with special care"); *Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 653 (6th Cir.

---

[4] The County fails to even mention *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54 (Tenn. 2023) during its discussion of the Tennessee Government Tort Liability Act and TENN. CODE ANN. § 8-8-302, despite it being controlling precedent on the issue.

[5] The County consistently fails to properly cite caselaw in violation of L.R. 7.4. *See, e.g.*, (DE 08), PageID # 1128) (citing *Barbieri v. Knox Cnty.*, No. 3:15-cv-146, 2016 U.S. Dist. LEXIS 3355 (E.D. Tenn. Jan. 12, 2016); (*id.* PageID # 1129) (citing *Siler v. Webber*, 443 Fed. Appx. 50 (6th Cir. 2011); (*id.* PageID # 1132) (citing *Nissen v. Cnty. of Sumner*, No. 3:13-842, 2014 U.S. Dist. LEXIS 115284 (M.D. Tenn. July 21, 2014); (*id.* PageID # 1131) (citing *Davis v. Hardin Cnty. Tennessee*, No. 99-1218, 2002 U.S. Dist. LEXIS 13619 (W.D. Tenn. May 22, 2002). Pursuant to L.R. 7.4, the Court should not consider Defendants arguments predicated on these citations.

3

2011) ("Dismissals of actions brought under the civil rights statutes are scrutinized with special care."); *Azar v. Conley,* 456 F.2d 1382, 1384 n. 1 (6th Cir.1972)); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (same); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976) (same); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ("the rule of liberal construction is 'particularly important in civil rights cases.'").

## II.      Plaintiffs' Federal Claims

The County generally argues that it was not deliberately indifferent to the risks of people being transported by inadequately trained, equipped, and supervised law enforcement officials. The County muddles through these issues without distinction or clarity.[6] Plaintiffs will address the underlying constitutional violation, then to the issue of municipal liability, before addressing the issue of punitive damages against municipal defendants in § 1983 actions.

### A. Plaintiffs Properly Pled Underlying Constitutional Violations

The County makes only a passing "argument" that there was no underlying constitutional violation in this matter. (DE 108, PageID #1130–1131). The County claims, "[t]he Sixth Circuit recently summarized the analysis for determining whether a state actor's conduct violates the Fourteenth Amendment in such a situation" and then quotes a district court case from 2007. *Id.* (quoting *Rusu v. City of Birmingham*, 522 F. Supp. 2d 833, 837–838 (E.D. Mich. 2007)). Not only is this *not* a decision from the Sixth Circuit Court of Appeals, but it also predates *Westmoreland v. Butler Cty.*, 29 F.4th 721 (6th Cir. 2022), which provides the applicable standard for failure to protect claims made by pretrial detainees, *Westmoreland* at 729, and *Guertin v. Michigan*, 912

---

[6] From PageID #1128–1130, the County is arguing the issue of municipal liability pursuant to *Monell* for failure to train. Starting with the second paragraph on PageID #1130, Defendant Meigs makes a drive-by argument about the underlying constitutional violation. Starting at PageID #1131, after the "Failure to Supervise" heading, the County argues both municipal liability *and* individual supervisory liability through PageID #1133.

4

F.3d 907 (6th Cir. 2019), which involves an application of the bodily integrity claim under Fourteenth Amendment substantive due process.

The County does not even bother elaborating on the elements the Court is to consider when analyzing failure to protect claims for pretrial detainees,[7] likely because the standard is unfavorable to it. Specifically, in a failure to protect claim for pretrial detainees the Sixth Circuit recently explained that a plaintiff must demonstrate:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
(2) Those conditions put the plaintiff at a substantial risk of serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Westmoreland*, at 729 (citation omitted).

Applying these factors, Defendant Leonard clearly violated Ms. Smith's constitutional rights. Even the facts picked out by the County evince a constitutional violation. Defendant Leonard had Ms. Smith in custody, he was texting and driving just before crashing into the Tennessee River, and he *ignored* the rumble strips and signage leading to the River. (DE 108, PageID #1131). A reasonable officer would have *known* that texting while driving and ignoring road signage and rumble strips created a risk of harm to their prisoner *and* other people on the road. Unfortunately for the County, other facts also bear on Defendant Leonard's conduct such as the time of night and the weather conditions limiting visibility. (DE 102, PageID #1051, ¶40).

To the extent the County has moved this Court to dismiss Plaintiffs' § 1983 claims because there was no underlying constitutional violation, the Court should dismiss those arguments on the

---

[7] It is unclear whether the County is arguing only failure to protect or attempting to argue both failure to protect and bodily integrity.

5

merits and because the County failed to develop the argument beyond a skeletal outline, leaving the Court and the Plaintiffs to divine the point of the County's argument. *See Porter v. Bondi*, 127 F.4th 993, 999, (6th Cir. 2025) ("[W]here, as here, issues are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,' we consider them forfeited.") (citation omitted). The County's passing reference to Plaintiffs underlying constitutional claims, without even bothering to identify which claim, or claims, it was challenging constitutes a forfeiture of those arguments.

## B. Defendant Meigs was Deliberately Indifferent to the Risks Associated with its Wholly Inadequate Training and Supervision Regime

1. *Applicable law and distinguishing individual "supervisory liability" with municipal "inadequate supervision" claims as the County has failed to do so*

Before addressing the substance of the County's constitutional arguments, it is necessary for Plaintiffs to clarify certain points of law made in the County's brief because it appears that it conflates cases concerning "supervisory liability" and "failure to supervise". *See* (DE 108, PageID #1131–1132). Claims falling under a "supervisory liability" theory seek to impose individual liability on a supervisor for their role in a constitutional violation.[8] In the Sixth Circuit, this requires a showing at the minimum that the supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Heyerman v. Cnty. Of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citation omitted). Claims falling under a "failure to supervise" theory seek to impose liability on the municipality for its deliberate indifference to the rights of others in failing to adequately supervise their employees. The Sixth Circuit in *Burgess v. Fischer* concisely summarized the ways in which municipal liability may be established:

> A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violations occurred because of a municipal policy or custom. A plaintiff can make a showing of an illegal policy or custom by demonstrating one

---

[8] (DE 108, PageID #1132).

of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

735 F.3d 462, 478 (6th Cir. 2013) (internal citations omitted).

More recently, the Sixth Circuit explained that prevailing on a failure to train or supervise claim requires a showing that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (citation and internal quotation omitted).

Starting with the first full paragraph on PageID #1132 and running through the first partial paragraph on PageID #1133, the County is making arguments about supervisory liability that are not at issue in this case and never have been and the need to constantly decipher the discombobulated arguments filled with red herrings is taxing and frustrating.

a. The County*'s policies of inadequate training and supervision were a driving factor of the underlying constitutional violations*

The thrust of Defendant's *Monell* argument, to the extent Plaintiffs' Counsel has understood the arguments, is that Plaintiffs have not demonstrated a pattern of similar incidents that would put the County on notice that its training or supervision programs were deficient. While the County is correct that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." (DE 108, PageID #1129) (quoting *Siler v. Webber*, 443 Fed. Appx. 50, 54 (6th Cir. Aug. 22, 2011)). It continues to ignore the other route to demonstrate deliberate indifference. As explained by the Sixth Circuit in *Shadrick v. Hopkins Cnty.*, 805 F.3d 724 (6th Cir. 2015):

Shadrick can demonstrate SHP's failure to provide LPN nurses with adequate training and supervision in one of two ways. She can show "[a] pattern of similar constitutional violations by untrained employes" and SHP's continued adherence

7

to an approach that [it] knows or should know has failed to prevent tortious conduct by employees," thus establishing "the conscious disregard of the consequences of [its] action – the 'deliberate indifference'—necessary to trigger municipal liability." Alternatively, Shadrick can establish a single violation of federal rights, accompanied by a showing that [SHP] has failed to train its employees to handle recurring situations presenting and obvious potential" for a constitutional violation.

*Id*. at 738–739 (alterations original, internal citation omitted).

Beginning with *City of Canton v. Harris*, under certain circumstances, the obviousness for training alone could establish deliberate indifference. 489 U.S. 378, 390 (1989). Since *Canton* was decided, this instruction has repeatedly been applied by the Sixth Circuit Court of Appeals.

For example, in *Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020), the plaintiff alleged:

[T]hat Dearborn Heights did not provide *any* training to its police officers regarding the use of excessive force and handcuffing procedures prior to her arrest. It also did not provide any training regarding probable cause determinations. Plaintiff further alleges that Dearborn Heights never conducts performance evaluations for its police officers and did not otherwise supervise or monitor its officers' conduct.

*Id*. at 286. (emphasis original). Importantly, the *Ouza* plaintiff did not allege prior instances of misconduct to establish the municipality's deliberate indifference. *Id*. at 287–88. Despite this, the Sixth Circuit found that the failure to provide any training was constitutionally inadequate given the frequency these situations would arise. *Id*. at 289.

In *Shadrick v. Hopkins Cnty.*, the Sixth Circuit Court of Appeals found that there was a genuine issue of material fact for the plaintiff's *Monell* claim against a company that provided medical staff for a jail. The Court found:

While the nurses may have received some limited on-the-job training when beginning their employment, such as learning where supplies were kept, there is no proof of a training program that was designed to guide LPN nurses in assessing and documenting medical conditions of inmates, obtaining physician orders, providing ordered treatments to inmates, monitoring patient progress, or providing necessary emergency care to inmates within the jail environment in order to avoid constitutional violations.

*Shadrick v. Hopkins Cnty.*, 605 F.3d 724, 740 (6th Cir. 2015). The Sixth Circuit concluded that:

> This case mirrors the example given in *City of Canton*. The obvious need to train police officers who lack knowledge of the constitutional constraints on the use of deadly force parallels the obvious need to train LPN nurses who lack knowledge about the constitutional dimensions of providing adequate medical care to inmates in the jail setting.

*Id*. at 742.

To begin with, the transportation of prisoners is a frequently recurring activity for any law enforcement agency routinely engaged in arrests. There are also routinely accidents involving the transportation of prisoners leading to lawsuits alleging deliberate indifference. *See, e.g.*, *Scott v. Becher*, 736 Fed. Appx. 130, 134 (6th Cir. 2018) ("Becher could not reasonably have believed that driving recklessly while Scott and the other prisoners were not wearing seatbelts was lawful."); *Falls v. Cty. Of Riverside*, No. 5:19-02311, 2022 U.S. Dist. LEXIS 107644, (C.D. Cal. Mar. 16, 2022) at *12–13 (collecting cases), *16 (denying qualified immunity).

Additionally, and moreover in the instant case, the County was aware of previous incidents of people driving into the Tennessee River at the Blythe Ferry Boat Ramp. (DE 102, PageID #1056, ¶76). The County was also aware that Defendant Leonard was unfamiliar with the area. *Id*. ¶77. Nonetheless, the County provided Defendant Leonard with just two weeks of on-the-job training before sending him out in a vehicle lacking internal GPS, *id*. ¶78, despite often only assigning two deputies to cover the entire 217 square miles of their jurisdiction. *Id*. at PageID #1055, ¶¶69–70. And, on the night of the incident, Defendant Leonard was driving a vehicle that lacked even the most basic safety equipment, a speedometer. *Id*. at PageID #1052, ¶41. The County also had an affirmative policy of its deputies using cell phones to communicate when they lacked radio coverage. *Id*. at PageID # 1055, ¶¶74–75.

While the County argues, "Plaintiffs *do not allege* that MEIGS had a policy that allowed Sheriff's deputies to text *while driving*," (DE 108, PageID # 1133) (emphasis original), a

9

reasonable inference is that a policy for using cellphones in lieu of the radio *would* involve their use while driving. Finally, Plaintiffs expressly allege that Defendant Leonard was not trained to ensure the safety of persons in his custody. (DE 102, PageID # 1053, ¶58). This lack of training itself is enough to establish municipal liability under *Ouza* and *Shadrick*, as it goes to one of the core functions that Defendant Leonard would be required to do and was directly related to the injuries claimed by Plaintiffs.

The flipside to Plaintiffs' failure to train claim is inadequate supervision. Had a properly trained supervisor been present with Defendant Leonard on the night of the incident, the Deceased would still be alive. Plaintiffs allege that Defendant Leonard's unfamiliarity with Meigs County was apparent during his two weeks of training, (DE 102, PageID # 1056, ¶78), and sending him out on his own was deliberate indifference to the people who fell into his custody. This failure to provide supervision for an undertrained and underequipped deputy was only compounded by the County's failure to provide Defendant Leonard with a body or dash camera and a vehicle with internal GPS, as it prevented the County from reviewing Defendant Leonard's conduct effectively. (DE 102 PageID # 1055, ¶¶71, 73). Thus, not only was Defendant Leonard unsupervised, but the County lacked any mechanism to review his conduct if, and when, problems arose.

At its core, Plaintiffs allege that the County sent a woefully unprepared deputy out to cover a huge amount of territory, without supervision, without adequate safety equipment (GPS, speedometer, odometer), and who had been trained that he was to use his cellphone to communicate while on the job. As a result, this unprepared deputy drove straight into the Tennessee River, ignoring all the warnings leading to the River – potentially because he was handling his cell phone at the time – and killed Ms. Smith.

2. *Plaintiffs cannot recover punitive damages against the County pursuant to 42 U.S.C. §*
   *1983*

10

Hidden at the end of its section on "STATE LAW CLAIMS", the County argues that Plaintiffs request for punitive damages, (DE 102, PageID # 1065), should be dismissed. (DE 108, PageID # 1144–1145). The County is correct, binding precedent bars recovery of punitive damages from a municipal defendant in claims brought pursuant to § 1983. *See Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). To the extent the County required a judgment to that effect rather than resolution via jury forms, it is entitled to one.

### III.    Plaintiffs' State Law Claims

The County's confusing arguments and long block quotes serve to obfuscate or intentionally confuse the law as applied to the facts of this matter where the conduct of Defendant Leonard directly caused the ghastly death of Ms. Smith. What the County ignores is the interplay between the Tennessee Governmental Tort Liability Act ("GTLA"), and TENN. CODE ANN. § 8-8-302.

Additionally, as to the claims the County makes regarding supplemental jurisdiction, the County (in essence) seeks for this Court to dismiss the Plaintiffs claims with prejudice via a motion on procedure. As the Plaintiffs will show, such a ruling would prejudice the Plaintiffs.

### A.  The Court Should Retain Supplemental Jurisdiction

The main thrust of the County's argument to support the declination of supplemental jurisdiction is great optimism this Court will dismiss the federal claims including the claims against Leonard, and the straw-man theory the County creates that all the Plaintiffs' state claims are really brought pursuant to the GTLA. The County is incorrect.

To begin with, the Court is not required to decline supplemental jurisdiction over the Plaintiffs' state law claims even if the federal claims are dismissed. Under 28 U.S.C. § 1367(c), district courts have discretion to decline supplemental jurisdiction over state law claims in certain circumstances, including when all federal claims over which the court had original jurisdiction are

dismissed. However, the trial court has broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed. *See Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) (citing *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996)). This discretion depends on factors such as whether the state and federal claims arise from the same case or controversy, judicial economy, convenience, fairness, comity, and the presence of exceptional circumstances. *See* 28 U.S.C. § 1367(c).

Even when one of these statutory conditions applies, the district court may nevertheless exercise supplemental jurisdiction over state law claims "if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The district court enjoys "broad discretion" in this regard. *See Phaneuf v. Collins*, 509 F. App'x 427, 434 (6th Cir. 2012) (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)).

First, the grant of original jurisdiction over GTLA claims to state courts does not defeat federal jurisdiction. *See Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 851 (E.D. Tenn. 2011). To be sure, many federal courts within Tennessee have decided to exercise supplemental jurisdiction over claims brought under the GTLA[9]. *See Harris v. McCormack,* No. 3:08–cv–00699, 2011 WL 253163, at *4 (M.D.Tenn. Jan. 26, 2011); *Lopez v. Metro. Gov't of Nashville & Davidson Cnty.,* 646 F.Supp.2d 891, 920–21 (M.D.Tenn.2009); *Birgs v. City of Memphis,* 686 F.Supp.2d 776, 778–79 (W.D.Tenn.2010); *Brown v. City of Memphis,* 440 F.Supp.2d 868, 878 (W.D.Tenn.2006); *Johnson v. Gannon,* No. 3:09–0551, 2010 WL 1658616, at *7 (M.D. Tenn. Apr. 23, 2010);

---

[9] While most of these cases deal with motions to decline supplemental jurisdiction where the federal claims have yet been dismissed, Plaintiffs collected these cases to underscore a federal court's discretion.

*Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 850-51 (E.D. Tenn. 2011); *White v. Washington Cnty., Tenn.*, 85 F. Supp. 3d 955, 958 (E.D. Tenn. 2015).

In *Brown v. City of Memphis*, the trial court observed:

Supplemental jurisdiction is grounded, implicitly, in Article III of the Constitution, and, explicitly, in federal statutory law. Under the Supremacy Clause, the U.S. Constitution and federal law make up the supreme Law of the Land. A state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found either where compliance with both federal and state law is impossible or where the state law stands as an obstacle to the accomplishment of the purposes and objectives of Congress.

State legislatures are powerless to impose jurisdictional constraints upon the federal judiciary. Whatever the intent of the Tennessee legislature may have been in enacting the Governmental Tort Liability Act, the authority of the federal courts to appropriately exercise jurisdiction over supplemental state law matters remains undiminished. To rule otherwise would be to imply that a state could nullify two centuries of case law and an entire federal statute on the subject of supplemental jurisdiction by merely expressing a preference that all state law controversies be kept in-house.

*Brown v. City of Memphis*, 440 F. Supp. 2d 868, 878 (W.D. Tenn. 2006) (quoting *Edgar v. MITE Corp.,* 457 U.S. 624, 631 (1982)) (alteration in original). See also *White v. Washington Cnty., Tenn.*, 85 F. Supp. 3d 955, 958 (E.D. Tenn. 2015) (quoting *Brown*).

The court in *Brown* held:

Dismissal of Plaintiffs' state law claims would necessitate duplicative litigation which would be wasteful of judicial and litigant resources. Even if the Tennessee legislature had stated a clear preference that GTLA claims be heard in state court, such a preference would not create a sufficiently exceptional circumstance to warrant dismissal of Plaintiffs' state claims under § 1367(c)(4).

*Brown*, *supra* at 878.

The County argues that Tennessee state courts have "exclusive jurisdiction" over GTLA, and that the federal courts routinely decline jurisdiction based on *Gregory*[10] and related cases but fail to acknowledge that post-Gregory cases (as cited *supra*) held the exact opposite. To be sure,

---

[10] A 2000 case.

there is a split among the district courts in the Sixth Circuit whether to decline supplemental jurisdiction over pendant GTLA claims. *See Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 850-51 (E.D. Tenn. 2011). As noted above, the "exclusive jurisdiction" claim by the County is a state allocation provision and does not divest federal supplemental jurisdiction.

The Court can retain supplemental jurisdiction "if recommended by a careful consideration of factors such as ***judicial economy***, convenience, ***fairness***, and comity." *Carnegie-Mellon Univ.*, at 350 (emphasis added). Should the Court decline supplemental jurisdiction regardless of whether the Court dismisses the federal causes of action, the result will be the parties will relitigate the same issues in the state court, or a dismissal with prejudice on a procedural motion. Most likely it will result in all the Parties to this action proceeding in parallel and entirely duplicative litigation in two forums.

28 U.S.C. § 1367(d) allows for a tolling of 30 days for a party to refile the state claims in state courts after federal claims were dismissed. However, the Tennessee Supreme Court has previously held that "neither the federal statute [§ 1367(d)] nor Tenn. Code Ann. § 28-1-115 tolls the GTLA statute of limitations." *Lynn v. City of Jackson*, 63 S.W.3d 332, 337 (Tenn. 2001). Thus, refusal to exercise supplemental jurisdiction over Plaintiffs' single claim under the GTLA – Count VII – will have the effect of a dismissal with prejudice. If the Court permits the County to rewrite all of Plaintiffs' state law claims as arising under the GTLA and declines to exercise supplemental jurisdiction over those claims, that exercise of discretion will cause a dismissal with prejudice for a significant part of this case on a procedural basis.

If this Court were to decline supplemental jurisdiction over some, or all, of Plaintiffs' state law claims the result would be the parties would relitigate this matter before the state court, with the distinct possibility that the issue of standing would have to be readdressed. This matter first

14

was filed by Plaintiff Nathan Smith in case number 1:24-cv-104 (DE 1) on March 4, 2024. The now terminated former plaintiff, Kenneth Colbaugh filed a similar complaint under the instant case number (1:24-cv-151) and this Court consolidated the two matters with the 1:24-cv-151 as the lead case. (DE 54, PageID # 260–61). This Court issued an order on September 13, 2024 that allowed discovery and briefing on the issue of standing of Colbaugh and the remaining Plaintiffs. (DE 79, PageID #: 457-58). The parties and this Court *expended much time and effort* in resolving the standing issue, and thus to refile (if possible) would cause the parties to possibly start from scratch in 2026, some two years after the initial filing by Plaintiff Smith. Moreover, it is likely that the Parties would engage in significant litigation merely to determine whether Plaintiffs claims were timely filed.

The grisly death of the Deceased occurred on February 14, 2024. Here we are, at the time of this response, in November 2025. This Court should retain jurisdiction over this matter to ensure that this case, one that will impact children, should be decided on the merits rather than the procedure.

**B. Plaintiffs Properly Pled State Law Claims Against the County Pursuant to Tenn. Code Ann. § 8-8-302 and § 29-20-202**

The County separately moves to dismiss Plaintiffs' state law claims, essentially arguing that the GTLA gives a broad immunity regardless of the statute in which the Plaintiffs seek relief. This Court should DENY the County's motion as to Plaintiffs' claims arising pursuant to TENN. CODE ANN. § 8-8-302 and § 29-20-202. The County attempts to obfuscate the issues by vaguely pointing to the GTLA and asking this Court not to look under the hood. Before addressing the substance of the County's claim it is necessary to understand the role each statute[11] plays. This

---

[11] TENN. CODE ANN. § 29-20-205 and TENN. CODE ANN. § 8-8-302.

section will first provide an overview of the relevant State law before addressing the County's arguments.

1. *Overview of State Law.*

Given that application of proper law will have a negative impact on the County, it is *somewhat* unsurprising that they do not explain the complex web of statutes and binding court decisions that govern Plaintiffs' state law claims.

As a political subdivision of the State of Tennessee, the County is entitled to avail itself of the common law doctrine of sovereign immunity. *See Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.2d 352, 360 (Tenn. 2011). Political subdivisions of the State such as the County may only be sued (under State law) where that immunity is expressly waived. *See Lawson v. Hawkins Cty.*, 661 S.W.3d 54, 59 (Tenn. 2023) (quoting *Hughes supra*). There are at least two circumstances in which the Tennessee Legislature has expressly waived sovereign immunity.

Through the GTLA, Tennessee has waived sovereign immunity in a number of cases for all governmental entities, TENN. CODE ANN. §§ 29-20-201–209. This includes a waiver of immunity for injury caused by ***negligent*** conduct of governmental employees. *See* TENN. CODE ANN. § 29-20-205. Consistent with normal rule of statutory construction that waivers of sovereign immunity are to be construed narrowly, the Tennessee Supreme Court has found that this section "removes immunity only for ordinary negligence, not gross negligence or recklessness." *See Lawson*, 661 S.W.3d at 59.[12]

Through TENN. CODE ANN. § 8-8-301, Tennessee immunized county deputies from liability for state law claims arising from injuries caused by "any act or failure to act on the party of any

---

[12] Plaintiffs cited *Lawson* in their response to the County's first motion to dismiss. (DE 81). The *Lawson* court clearly interpreted § 29-20-205 as only addressing negligence. Yet, the County, despite having notice of *Lawson*, **continues** to claim that the GTLA applies to gross negligence. (DE 108, PageID # 1143–44).

16

deputy . . ." *Id*. Section 8-8-302 then funnels those claims against deputies who were acting under the color of state law "against the county in which the sheriff serves . . ." TENN. CODE. ANN. § 8-8-302. As the Tennessee Supreme Court has explicitly recognized, "[a]ctions for the non-negligent misconduct of deputies do not 'arise pursuant to' the GTLA, T.C.A. § 29-20-104(b), and may therefore be covered by T.C.A. § 8-8-301 *et seq.*, in the appropriate cases." *Jenkins v. Loundon Cty.*, 736 S.W.2d 603, 610 (Tenn. 1987), *abrogated on other grounds by Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001), *followed by Walker v. Shelby Cty.*, 2023 Tenn. App. LEXIS 147 at *20 (Tenn. Ct. App. Apr. 19, 2023).[13] Indeed, the Tennessee Supreme Court recognized that TENN. CODE. ANN. § 8-8-302, "sanctions suits against counties for the misconduct of deputies and represents a waiver of governmental immunity." *Jenkins*, *supra* at 609.

A further understanding of the history behind the GTLA and TENN. CODE. ANN. § 8-8-302 is helpful. In 1972, the Tennessee General Assembly enacted TENN. CODE. ANN. § 8-8-301, *et seq.*, to relieve liability on the sheriff and shifted the liability to the County to a limited extent. *See Jenkins*, at 605 (quoting, *Grundy Cnty. v. Dyer*, 546 S.W.2d 577, 580 (Tenn. 1977)). The following year, the Tennessee General Assembly passed the GTLA, which did not become effective until 1974. *See Jenkins*, 736 S.W.2d at 605.

The County does not understand that the enactment of the GTLA did not abrogate or otherwise negate TENN. CODE. ANN. § 8-8-301, *et seq.* The *Jenkins* court went into a detailed

---

[13] *See also Cruse v. City of Columbia*, 922 S.W.2d 492, 496 (Tenn. 1996) ("It follows that the GTLA does not encompass every tortious act by a governmental entity. In fact, the GTLA 'leaves significant areas of activities either protected by immunity or subject to independent bodies of law.'"); *Young v. City of LaFollette*, 479 S.W.3d 785, 790 (Tenn. 2015) ("… the GTLA does not control every single action against a governmental entity.").

analysis of the effect of the GTLA upon Tenn. Code. Ann. § 8-8-301, *et seq.* by the rules and conventions of statutory construction. *See Jenkins*, 736 S.W.2d at 606–07.

In concluding its lengthy and exhaustive review of the legislative histories of both acts, the *Jenkins* court held:

> The legislative history and the overall structure of the GTLA itself support the result in this case. As seen above, the general scope of the GTLA does not by its express terms encompass every tortious act[14] or omission by governmental entities or employees; thus, it necessarily leaves significant areas of activities either protected by immunity or subject to independent bodies of law. The Legislature has continued to modify and develop the remedy provided in T.C.A. §§ 8-8-301, *et seq.,* by enacting a subsequent amendment to these statutes despite the existence of the GTLA. **The general provisions of the GTLA do not supersede the specific provisions of T.C.A. §§ 8-8-301, *et seq.,* as they relate to *misconduct* of sheriff's deputies, except to the extent that T.C.A. §§ 8-8-301, *et seq.,* could extend to actions for negligence under T.C.A. § 29-20-205.** Further, recent amendments to the GTLA recognize that liability under other bodies of law can arise. *See, e.g.,* T.C.A. § 29-20-404(b). Cf. T.C.A. §§ 29-20-406(b). We think that the pattern of amendments both to T.C.A. §§ 8-8-301, *et seq.,* and to 29-20-101, *et seq.,* are "declaratory of the original legislative intent," *Fretwell v. Chaffin, supra,* at 757, regarding the scope of the GTLA and the continued viability of the remedies provided by T.C.A. §§ 8-8-301, *et seq.* **Actions for the non-negligent misconduct of deputies do not "arise pursuant to" the GTLA, T.C.A. § 29-20-104(b), and may therefore be covered by T.C.A. § 8-8-301 *et seq.,* in the appropriate cases.**

*Id.* at 608–09 (emphasis added).

Section 205 of the GTLA only removes immunity for negligence, not gross negligence or recklessness. *See Haynes v. Perry Cty.*, 2022 Tenn. App. LEXIS 160, at *9 (Ct. App. Apr. 25, 2022). "Our courts define recklessness as the conscious disregard of a substantial and unjustifiable risk

---

[14] To be sure, the Tennessee Supreme Court held that the intentional torts of battery and assault were not included in the immunities under Tenn. Code Ann. § 29-20-205(2). *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001) ("we are unable to expand the intentional torts exception to include assault and battery."). However, it is critical to note that the claim must still be predicated on some alleged *negligence* for § 29-20-205 to apply. *Limbaugh supra* at 81 ("Having determined that CMC was indeed negligent . . . the issue here is whether CMC nonetheless retains its immunity pursuant to the intentional tort exception . . .").

constituting a gross deviation from the standard of care." *Id.* at *8 (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)). As Plaintiffs have alleged sufficient facts for a jury to find that Defendant Leonard's conduct was grossly negligent, reckless, and/or deliberately indifferent, § 205 provides no cause of action and Plaintiffs' claims are properly brought pursuant to § 302.

This is a significant amount of ink to clarify something quite simple. If immunity is removed for a negligence claim pursuant to the GTLA, it cannot be brought pursuant to § 302. If the GTLA does not waive immunity for a specific action, then a claim may be brought pursuant to § 302 in circumstances such as those presented by this case.

   2. *Application to the Fourth Amended Complaint.*

The County has taken great steps to try and confuse the Plaintiffs' claims and distract the Court from what is clear in the Plaintiff's Fourth Amended Complaint. First, the County makes the astonishing claim that *every state law cause of action* must come under the GTLA. (DE 108, PageID # 1134). This is either a gross misunderstanding of the law or an attempt to mislead the Court by ignoring *Lawson.*

Second, the County further ignores that the Plaintiffs' claims for wrongful death, assault, battery, gross negligence, and IIED are acts of misconduct. Black's Law Dictionary defines "misconduct" as:

> A transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or wrong behavior; its synonyms are misdemeanor, misdeed, misbehavior, delinquency, impropriety, mis-management, offense, *but not negligence or carelessness*.

BLACK'S LAW DICTIONARY 999 (6th ed. 1990) (emphasis added).

19

The County acknowledges in its own brief the following acts of misconduct by Leonard: "a one-word text to his wife 46 seconds before the incident, driving 44-56 miles per hour and ignoring rumble strips and signs." (DE 108, PageID # 1131); and:

- Leonard made a conscious decision to text while driving (DOC 102 at ¶97 and 99);
- Ignore adverse weather conditions (DOC 102 at ¶97 and 99);
- Ignored the Deceased's warnings (DOC 102 at ¶97 and 99);
- Ignore rumble strips and signage (DOC 102 at ¶97 and 99); and
- No reasonable law enforcement officer would have acted in this manner (DOC 102 at ¶101.)

(DE 108, PageID # 1126).

The Plaintiffs pointed out that Leonard was using Facebook messenger to communicate with Ben Christian while driving the Deceased in the patrol vehicle (DE 102, PageID #: 1052); drove on Blythe Ferry Lane ("the roadway") at speeds up to 56 mph from 10:02:45 pm (56 mph) to 52 mph (at 10:02:59 pm) and back up to 56 mph (at 10:03:39) until he hit the water at 44 mph (at 10:03:45pm) (Id at PageID #: 1052). The Plaintiffs further described the roadway as a road with no street lights, no signal to warn motorists that the roadway ended into the river, no shoulder, no posted speed limits signs, had raised rumble strips, but no gate or barriers to prevent motorists from driving into the river. (DE 102, PageID # 1050-51).

The Plaintiffs also pointed out that the weather conditions were foggy with low visibility conditions. (DE 102, PageID #: 1051). The vehicle Leonard operated had no working speedometer, and he drove to the arrest scene of speeds up to 102 mph. (DE 102, PageID # 1052).

Plaintiffs have more than adequately described facts that support their claims that Leonard's misconduct violated Tennessee law prohibiting reckless driving and use of his cellphone. (DE 102, PageID #: 103). Yet, the County wants to overlook this misconduct, which

20

resulted in the death of Ms. Smith and Leonard as some simple harmless act. This argument is at best, disingenuous.

3. *Response to County's Argument on Wrongful Death, Loss of Consortium, and Gross Negligence.*

Plaintiffs aver that the prior discussion in this section applies to the analysis on the Tennessee Wrongful Death statute (TENN. CODE ANN. § 20-5-106), Loss of Consortium, and Gross Negligence claims in the Fourth Amended Complaint. Plaintiffs make this separate response to highlight the bold misunderstandings and representations by the County.

The Tennessee Legislature enacted the Wrongful Death and set forth the right of action as: "The right of action that a person who dies from injuries received from another, or whose death is caused by the *wrongful act*, omission, or *killing* by another, would have had against the wrongdoer… ." TENN. CODE ANN. § 20-5-106(a). The Wrongful Death statute allows for derivative claims for the survivors. statutory beneficiaries, the surviving spouse's lawsuit is for their benefit as well. *C.f. Grose v. Stone*, 2024 WL 1796219, at *10 (Tenn. Ct. App. Apr. 25, 2024).

"Gross negligence is defined as a conscious neglect of duty or a callous indifference to consequences or such entire want of care as would raise a presumption of a conscious indifference to consequences." *Twenty Holdings, LLC v. Land S. TN, LLC*, 2019 Tenn. App. LEXIS 438, at *34 (Ct. App. Sep. 5, 2019) (internal quotation marks omitted). Gross negligence has lost the connotation of a degree of negligence and has acquired a meaning describing a different kind of negligence or "a meaning synonymous with conduct that is wanton or reckless." *Id.*, at 35 (quoting 3 AMERICAN LAW OF TORTS § 15).

The County makes the mystifying claim that wrongful death and loss of consortium funneled to the County by TENN. CODE ANN. 8-8-302 do not apply to gross negligence. (DE 108, PageID ## 1137, and 1139-40). The County makes this claim after having prior notice of *Lawson's*

holding. Nevertheless, the County *ignores* that someone can die as a result of a deliberate homicide or a wrongful act such as driving recklessly while texting.

4. *Response to County's Argument on Assault, Battery, and Intentional Infliction of Emotional Distress.*

Again, Plaintiffs aver that the prior discussions in this section apply to the analysis on the assault, battery, and IIED claims in the Fourth Amended Complaint. Plaintiffs make this separate response to highlight the County's misunderstanding or misstatement of the applicable law. TENN. CODE ANN. § 29-20-205 only removes immunity where it is alleged that a municipal employee was negligent causing injury, and the exceptions provided in § 205(1)–(9) provide instances where injuries resulting from an employee's negligent act or omission *do not* result in a waiver of immunity. This is the issue addressed in *Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73 (Tenn. 2001), where the negligent omissions of the Coffee Medical Center permitted the assailant to strike the plaintiff. *Id*. at 76–77. Plaintiffs have not alleged that the County's negligent hiring of Defendant Leonard (like the employee in *Limbaugh*) caused the assault and battery of the Deceased, and therefore, Plaintiffs' claims of assault and battery do not fall under § 205.

The County also ignores that TENN. CODE ANN. § 29-20-205 includes a waiver of immunity for injury caused by ***negligent*** conduct of governmental employees, and that this section "removes immunity only for ordinary negligence, not gross negligence or recklessness." *Lawson*, 661 S.W.3d at 59. The exceptions are only for those listed in § 205(1)-(9). *See Lawson*, at 60 (citing, *Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73, 84 (Tenn. 2001). What the County either ignores or does not comprehend is that § 205(1)-(9) only grants immunity for the acts listed therein.

The County relies heavily on *Limbaugh*. In *Limbaugh*, the plaintiff sued the medical center for an assault on his elderly mother. *See Limbaugh*, at 77. The plaintiff alleged that the medical center was aware of the assailant's (an employee) propensity for violence and had a duty to take

22

reasonable precautions to prevent the foreseeable act of the employee. *See Id.* After finding the medical center had an affirmative duty to protect the plaintiff's mother due to the special relationship between the medical center and the plaintiff's mother, (*Id.* at 80), the court held:

> Although it is that negligence of which the plaintiff complains, it is clear that Ms. Limbaugh's injuries arose out of the intentional torts of assault and battery committed by Ms. Ray. Because these torts are conspicuously absent from the intentional tort exception rendering governmental entities immune from liability for injuries, we hold that the clearly negligent defendant is not immune under this exception.

*Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001).

The County incorrectly advocates that *Limbaugh* mandates any claims for assault and battery must come under the GTLA. (DE 108, PageID #: 1138). Section 205(1)-(9) provide exceptions to the waiver of immunity for municipal defendants but are only relevant where a plaintiff alleges injuries resulting from negligence. *Limbaugh*, 59 S.W. 3d at 81 ("Having determined that CMC was indeed *negligent* . . . the issue here is whether CMC nonetheless retains its immunity pursuant to the intentional tort exception . . .") (emphasis added). Other than Count VII, Plaintiffs allege Defendant Leonard engaged in conduct that was grossly negligent, reckless, and/or deliberately indifferent.[15] This is position is affirmed by the County's own reliance on a district court case in *Davis v. Hardin Cty.*, 2002 U.S. Dist. LEXIS 13619, at *13 (W.D. Tenn. May 22, 2002). The alternative basis[16] provided by the *Davis* Court for rejecting the plaintiff's claims under § 8-8-302, was that *Limbaugh* permitted claims for assault and battery under the GTLA. *Id.* at *12–15. It is unclear from the *Davis* decision whether the assault and battery was alleged to have resulted from the Defendant's negligence. To the extent *Davis* held that *Limbaugh* brought all claims of assault and battery under the GTLA, it was incorrectly decided because the *Limbaugh*

---

[15] Plaintiffs are permitted to plead in the alternative. FED. R. CIV. P. 8(d)(2).
[16] The *Davis* Court first found that § 8-8-302 did not apply to jailers. *Davis supra* at *9–12.

decision only held that claims that assert negligence resulting in an assault and battery can be brought under the GTLA, not all claims of assault and battery.

There is no such thing as the "law of the district." The decisions of a district court do not bind other district courts, even within the same district. *See*, *e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1176 (9th Cir. 2001) (rejecting argument because it would imply that 'district court opinions should bind district courts, at least in the same district'); *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) ("The opinion of a district court carries no precedential weight, even within the same district."); *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 & n.7 (3d Cir. 1991) ("[I]t is clear that there is no such thing as 'the law of the district.'"); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) ("A single district court decision . . . is not binding on the circuit, or even on other district judges in the same district.").

The Tennessee Supreme Court decisions in *Jenkins* and *Lawson* regarding the two statutes at issue (TENN. CODE ANN. §§ 29-20-205 and 8-8-302) are controlling. "Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell,* 520 U.S. 911, 916 (1997); *Accord City of Chicago v. Morales,* 527 U.S. 41, 68–69 (1999). Common law assault occurs where a defendant creates an apprehension of harm in the plaintiff. *See Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 369–70 (Tenn. 2011). Assault includes the intentional, knowing, or *reckless* causing of bodily injury to another." *Spearman v. Shelby Cnty. Bd. of Educ.*, 637 S.W.3d 719, 734 (Tenn. Ct. App. 2021). Battery is defined as "an intentional act that causes an unpermitted, harmful or offensive bodily contact." *Id.* "Under Tennessee law, a person who intentionally or recklessly causes severe emotional distress to

24

another person by extreme and outrageous conduct is liable to that person for such emotional distress and for bodily harm resulting from the conduct." *Goetz v. Autin*, 2016 Tenn. App. LEXIS 95, at *1 (Ct. App. Feb. 10, 2016).

The intentional nature of these torts aligns with the concept of misconduct. "Actions for the non-negligent misconduct of deputies do not "aris[e] pursuant to" the GTLA, T.C.A. § 29–20–104(b), and may therefore be covered by T.C.A. § 8–8–301 *et seq.,* in the appropriate case." *Hensley v. Fowler*, 920 S.W.2d 649, 651–52 (Tenn. Ct. App. 1995) (quoting, *Jenkins*, at 609).

5. *Response to County's Argument on Negligence.*

The County's rationale in its brief (DE 108, PageID #: 1143) is a complete misstatement of the Plaintiffs' claims under TENN. CODE ANN. § 29-20-202(a). Once a governmental entity has had its immunity from suit removed by § 29-20-202 it may no longer be considered immune for damages. *See Hill v. City of Germantown*, 31 S.W.3d 234, 238 (Tenn. 2000).

Nowhere in Count VII of the Fourth Amended Complaint have the Plaintiffs asserted gross negligence. (DE 102, PageID #: 1063). In *Pirata P.S.C. v. Bank of America, N.A.*, the court noted that litigants in federal court may pursue alternative theories of recovery, regardless of their consistency, and that the Federal Rules of Civil Procedure permit claims to be pled in the alternative. *See Pirata P.S.C. v. Bank of America, N.A.*, 709 F.Supp.3d 353, 358 (W.D. Ky 2024). *See also Hayward v. Genworth Life Ins. Co.,* 2009 U.S. Dist. LEXIS 148131, at *6 (S.D. Ohio July 7, 2009) ("Rule 8(e)(2) allows Plaintiffs to present alternate theories of recovery"). Plaintiffs have specifically alleged negligence in Count VII while in Count VI they have alleged gross negligence. (*Compare* DE 102, PageID #: 1062, *with* DE 102, PageID #: 1063). The County seems to claim that any negligence claim must only be based on gross negligence, which is a baffling position and has no merit.

# CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court DENY Defendant Meigs County's Motion to Dismiss, (DE 108), for the reasons set forth above.

Respectfully submitted,

By: /s/ Robin Ruben Flores
**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff Nathan Smith
4110-A Brainerd Road
Chattanooga, TN  37411
O: (423) 267-1575
F: (423) 267-2703
robin@robinfloreslaw.com

/s/ Alyson Oliver (by permission)
**OLIVER BELL GROUP**
**\*admitted pro hac vice**
**Attorney for NR, JE and LC**
50 W. Big Beaver Road Ste. 200
Troy, MI 48084
O: (248) 327-6556
F: (248) 416-3047
notifications@oliverlawgroup.com

THOMAS & THOMAS, LLC

By: /s/ W. Neil Thomas (by perm)
**W. NEIL THOMAS**
**TENN. BPR #004536**
**MICHAEL THOMAS**
**TENN. BPR #29423**
Attorneys for Plaintiff Nathan Smith
6148 Lee Highway, Suite 115
Chattanooga, TN  37421
O: (423) 910-9100
F: (423) 356-3082
wnthomas@twtlawfirm.com

SUMMERS, RUFOLO & RODGERS, P.C.

By: /s/ Jeffery Rufolo (by permission)
**TENN. BPR #15013**
Attorneys for Plaintiffs NR, JE and LC
735 Broad Street, Suite 800
Chattanooga, TN 37402
O: (423) 265-2385
jrufolo@summersfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney for the Plaintiffs hereby certifies that true and exact copies of this motion have been filed and served electronically upon all parties in interest or their counsel on the date and time as indicated on the receipt issued by the Court's electronic filing system.

By: /s/ Robin Ruben Flores

26