TABATHA MARIE SMITH (deceased) (aka )
Tabatha Marie Colbaugh), by and through her )
surviving children Nathan Alexander Smith, JE )
through next friend JH, NR through next friend )
SR, and LC through next friend EH, )
                              )
      Plaintiffs, )
v. )          No. 1:24-CV-00151-DCLC-CHS
                              )
MEIGS COUNTY and ESTATE OF ROBERT )
J. LEONARD (deceased), by and through Neal )
Pinkston as Administrator *ad Litem*, )
                              )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Meigs County's Motion to Dismiss [Doc. 108], Plaintiffs' Response in Opposition [Doc. 113], and Meigs County's Reply [Doc. 114]. For the reasons below, the Court will grant in part and deny in part Meigs County's motion.

## I. BACKGROUND

This suit arises from a tragic accident that claimed the lives of Plaintiff Tabatha Marie Smith and Defendant Deputy Robert J. Leonard one evening in February 2024. According to Ms. Smith's surviving children ("Plaintiffs"), who have filed this suit on Ms. Smith's behalf, Deputy Leonard, a former sheriff's deputy in Meigs County, Tennessee, had been called to investigate a "disturbance" on the night of the accident. [Fourth Am. Compl., Doc. 102, ¶ 40]. After arriving at the scene on Tennessee Highway 60, Deputy Leonard allegedly arrested Ms. Smith, cuffed her, and placed her in the back of his patrol vehicle. [*Id.* ¶¶ 44, 45, 48]. En route to the Meigs County Jail with Ms. Smith, Deputy Leonard allegedly traveled on Blythe Ferry Lane—a two-lane asphalt roadway that ends abruptly with a downhill grade into the Tennessee

River. [*Id.* ¶¶ 27, 47, 60]. About ten minutes after apprehending Ms. Smith, Deputy Leonard allegedly drove his patrol vehicle into the river, and both he and Ms. Smith drowned. [*Id.* ¶ 24]. Deputy Leonard's body was found in the river, and Ms. Smith's body was found in the backseat of the patrol vehicle at the bottom of the river, with her hands still restrained in cuffs. [*Id.* ¶¶ 51–52].

While Plaintiffs acknowledge that no gates or barriers were present to prevent motorists from driving into the river, they claim that Deputy Leonard "ignore[d]" numerous warning signs posted at intervals along the roadway—including signs that read, "ROAD ENDS 1500 FT," "STOP," and "STOP AHEAD," [*id.* ¶¶ 30, 34, 35, 84]—and numerous rumble strips on the roadway leading to the river, [*id.* ¶¶ 31, 33, 36, 37, 84]. Plaintiffs further allege that Deputy Leonard's patrol vehicle had no speedometer, odometer, or any other navigational equipment, [*id.* ¶ 41], and that he was using his cellphone to send text messages and Facebook messages to his wife and to Ben Christian[1] in the moments before he struck the water, [*id.* ¶¶ 46, 48]. In addition, Plaintiffs allege that Ms. Smith was "very familiar" with Blythe Ferry Road and had warned Deputy Leonard that he was driving toward the river, but he ignored her warnings. [*Id.* ¶¶ 62, 127].

Plaintiffs now bring suit under 42 U.S.C. § 1983 against the estate of Deputy Leonard, whom Plaintiffs sue in his individual capacity, and Meigs County, alleging that they violated Ms. Smith's Fourteenth Amendment rights under the United States Constitution. Specifically, Plaintiffs allege that Deputy Leonard and Meigs County deprived her of a liberty interest and her bodily integrity (Count One) and that they failed to protect her (Count Two), [*id.* at ¶¶ 79–107], and they seek punitive damages, [*id.* at 20]. Plaintiffs also bring several state-law claims

---

[1] Plaintiffs do not identify Ben Christian in their complaint.

2

against Deputy Leonard's estate and Meigs County. Meigs County now moves to dismiss Plaintiffs' claims, and Plaintiffs oppose Meigs County's motion. Having carefully reviewed and considered the motion and the parties' arguments, the Court will now rule on them.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.* When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's allegations as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

## III. ANALYSIS

The Court begins its analysis with Plaintiffs' federal claims under § 1983, turns next to their claim for punitive damages, and concludes with their state-law claims under Tennessee Code Annotated § 8-8-302 and the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101, *et seq*. Section 1983 authorizes a claim for damages against

"[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," it imposes liability on a defendant "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id.* at 511. "Absent either element, a § 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)

A violation of a constitutional or federal statutory right is a prerequisite to a claim under § 1983 because § 1983 "does not confer substantive rights" on a plaintiff; rather it is merely a conduit through which a plaintiff may sue another to "vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *see Graham v. Connor*, 490 U.S. 386, 393–94 (1989) ("[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." (quotation omitted)). "The first inquiry in any § 1983 suit" is therefore "to isolate the precise constitutional violation with which [the defendant] is charged[.]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Graham*, 490 U.S. at 394 ("[A]nalysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." (citation and footnote omitted)).

In this case, Defendants' alleged constitutional violations fall under the Fourteenth Amendment, whose Due Process Clause forbids "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A plaintiff may bring three types of § 1983 claims against a state actor under the Due Process Clause. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). First, she may sue to vindicate a deprivation of any of her constitutional rights enumerated in the Bill of Rights, e.g., her right to free speech, her right to be free from unreasonable searches and seizures, etc.. *Id.* Second, the Due Process Clause "guarantees more than fair process," *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997), and it "cover[s] a substantive sphere as well," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998), permitting a plaintiff to sue to vindicate an infringement of her substantive due-process rights, i.e., her right to life, liberty, and/or property, *Zinermon*, 494 U.S. at 125. And third, she may sue to vindicate a deprivation of her procedural due-process rights. *Id.* Plaintiffs' § 1983 claims on behalf of Ms. Smith make up the second type of claim.

**A. The Federal Claims: Counts One and Two (*Monell* Liability)**

In Count One, Plaintiffs claim that Meigs County has deprived Ms. Smith of a liberty interest, [Fourth Am. Compl., Doc. 102, at 11], and they describe that liberty interest as her right to "be free from the infliction of physical pain, suffering, and death and to not be harmed by the defendants without Due Process of Law," [*id.* ¶ 92]. The Court construes Plaintiffs' claim as one for the violation of her substantive due-process right to life and to be free from bodily injury. *See Lewis*, 523 U.S. at 837 (addressing plaintiffs' claim of "deprivation of [the decedent's] Fourteenth Amendment substantive due process right to life" (footnote omitted)); *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996) ("It is well established that

5

persons have a fourteenth amendment liberty interest in freedom from bodily injury." (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

In tandem with this claim, Plaintiffs allege that Meigs County has deprived Ms. Smith of her bodily integrity, and this alleged deprivation is also a substantive-due process claim. *See Mitchell v. City of Benton Harbor*, 137 F.4th 420, 430 (6th Cir. 2025) ("The substantive component [of the Due Process Clause of the Fourteenth Amendment] bars the state from depriving people of certain protected rights . . . . Among these protected rights is the right to bodily integrity[.]"). The constitutional right to bodily integrity is "an indispensable right recognized at common law as the right to be free from . . . unjustified intrusions on personal security and encompass[ing] freedom from bodily restraint and punishment." *Id.* (internal quotation marks omitted) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977)); *see Union Pac. Ry. v. Botsford,* 141 U.S. 250, 251 (1891) ("No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others[.]").

For a local governmental entity like Meigs County, liability under § 1983 for an injury of constitutional magnitude can arise "*only* when the injury resulted from an 'implementation of [the governmental entity's] official policies or established customs.'" *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (Powell, J., concurring)); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (stating that "[t]he 'official policy' requirement was intended to distinguish acts of the [governmental entity] from acts of *employees* of the [governmental entity]" (footnote omitted)).[2] Plaintiffs may show that Meigs County had a policy or custom that caused Ms.

---

[2] A "policy" includes "decisions of [the governmental entity's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [governmental entity]." *Bd. of Cty. Comm'rs of Bryan Cty.*

Smith's alleged injuries in four ways, by "look[ing] to" (1) "legislative enactments or official agency policies," (2) "actions taken by officials with final decision-making authority," (3) "a policy of inadequate training or supervision," or (4) "a custom of tolerance or acquiescence of federal rights violations." *Spears*, 589 F.3d at 256 (quotation omitted). Plaintiffs opt for the third theory of liability, alleging that Meigs County's policies for training and equipping Deputy Leonard "were constitutionally deficient and amounted to deliberate indifferent to the safety and security of people in its custody," and they identify five policies of inadequate training and supervision:

  a. Inadequate training and area familiarization for new hires despite known road hazards;

  b. Sending new Sheriff's deputies on patrol alone before they are fully and properly trained;

  c. Providing woefully inadequate safety equipment such as a GPS device or other navigation equipment;

  d. Failing to implement adequate policies to identify and address errors or instances of misconduct by its employees; and

  e. Providing unsafe vehicles to be used in the transportation of arrestees.

[Fourth Am. Compl., Doc. 102, ¶¶ 66–68].

Under this third theory, Plaintiffs must plead three elements: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of [Meigs County's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d

---

*v. Brown*, 520 U.S. 397, 403–04 (1997) (citation omitted). A "custom" includes a practice that has "not been formally approved by an appropriate decisionmaker" but "may fairly subject a [governmental entity] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citation omitted); *see generally Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) ("[T]his Court does not use the terms 'policy' and 'custom' interchangeably when conducting a *Monell* analysis.")

690, 700 (6th Cir. 2006); *accord Gillispie v. Miami Twp.*, Nos. 23-3999/4000/4001, 2025 WL 1276900, at \*5 (6th Cir. May 5, 2025). In seeking the dismissal of Plaintiffs' claims, Meigs County contests whether Plaintiffs have alleged sufficient facts under the second element, deliberate indifference. [Def.'s Mot. to Dismiss, Doc. 108, at 7–12].

Deliberate indifference is "a stringent standard of fault," which demands more than a showing of "simple or even heightened negligence" and, instead, requires a showing that "a [governmental] actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407, 410 (1997); *see Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("A [governmental entity] 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" (quoting *Monell*, 436 U.S. at 694)). In other words, "the risk of a constitutional violation arising as a result of the inadequacies in the [governmental entity's] policy must be plainly obvious." *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (internal quotation marks and quotation omitted)). Plaintiffs can show that inadequate-training is the product of deliberate indifference under one of two theories, by alleging:

> (1) prior instances of unconstitutional conduct demonstrating that the [governmental entity] had notice that the training was deficient and likely to cause injury but ignored it or (2) evidence of a single violation of federal rights, accompanied by a showing that the [governmental entity] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.

*Gillispie*, 2025 WL 1276900 at \*5 (quoting *Jackson*, 925 F.3d at 836).

Although Meigs County correctly argues that "Plaintiffs do not allege that there has been a pattern of similar constitutional violations by untrained employees by Meigs as is required," [Def.'s Mot. to Dismiss, Doc. 108, at 8 (alteration and internal quotation marks omitted)], Plaintiffs' failure to allege a pattern does not by itself warrant the dismissal of their

8

*Monell* claim. As Plaintiffs rightly argue in response, Meigs County "ignore[s] the other route to demonstrate deliberate indifference," [Pls.' Resp., Doc. 113, at 7]—that is, the theory of deliberate indifference that can arise from a single alleged violation of federal rights. Again, Plaintiffs may allege *either* one of these two theories of deliberate indifference; they need not allege both. Because Meigs County argues only that Plaintiffs' *Monell* claims are insufficient under the first theory and not the second theory, its argument for the dismissal of those claims is incomplete. Meigs County does not pursue dismissal under the single-incident theory, and the Court will not construct that argument on its behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (deeming waived issues that are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation"). The Court therefore expresses no view on whether Plaintiffs have adequately pleaded deliberate indifference under that theory. Whether the theory ultimately survives remains open. The Court therefore declines to dismiss Plaintiffs' *Monell* claims in Counts One and Two.

**B. The Federal Claims: Punitive Damages**

Meigs County also seeks the dismissal of Plaintiffs' claim for punitive damages under § 1983, arguing that punitive damages are not recoverable against a local governmental entity. [Def.'s Mot. to Dismiss, Doc. 108, at 23]. In response, Plaintiffs concede that punitive damages against Meigs County are unavailable and that the dismissal of their claim of punitive damages is appropriate. *See* [Pl.'s Resp., Doc. 113, at 11 (acknowledging that "binding precedent bars recovery of punitive damages from a municipal defendant in claims brought pursuant to § 1983")]. Plaintiffs' claim of punitive damages is therefore **DISMISSED**.

9

### C. The State-Law Claims: Counts Three through Nine

Next, Meigs County seeks the dismissal of Plaintiffs' state-law claims. Those claims are claims for wrongful death (Count Three), assault and battery (Count Four), intentional infliction of emotional distress (Count Five), gross negligence (Count Six), negligence (Count Seven), loss of consortium (Count Eight), and statutory liability for Deputy Leonard's non-negligent conduct under Tennessee Code Annotated § 8-8-302 (Count Nine). Plaintiffs bring their negligence claim under the TGTLA and bring the rest of their claims under Tennessee common law and § 8-8-302. [Fourth Am. Compl., Doc. 102, ¶¶ 109, 114, 120, 125, 132, 139, 143]. Section 8-8-302 reads as follows:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302(a). In seeking the dismissal of Plaintiffs' claims, Meigs County's initial argument is that these claims are not actionable under § 8-8-302 and "*must* be brought pursuant to the Tennessee Government Tort Liability Act." [Def.'s Mot. to Dismiss, Doc. 108, at 13]. In response, Plaintiffs maintain that Meigs County's argument is "astonishing" and "mislead[ing]," [Pls.' Resp., Doc. 113, at 19], and assert that the TGTLA "did not abrogate or otherwise negate" § 8-8-302, [*id.* at 17].

The TGTLA governs liability in tort for Tennessee's governmental entities, and it contains the codification of Tennessee's sovereign immunity law. As the fountainhead of sovereign immunity for Tennessee's governmental entities, the TGTLA immunizes them—though not categorically—from suits for tortious acts "which may result from . . . the exercise and discharge of any of their functions." Tenn. Code Ann. § 29-20-201(a). With certain exceptions, this immunity from suit "is removed for injury proximately caused by a negligent

10

act or omission of any employee within the scope of his employment," *id.* § 29-20-205, and by removing governmental immunity for a negligent act, the TGTLA permits private parties to bring negligence claims against governmental entities, *see Sneed v. City of Red Bank*, 459 S.W.3d 17, 25 (Tenn. 2014) ("[W]hen immunity is removed by [the TGTLA] any claim for damages *must* be brought in strict compliance with [the TGTLA]." (emphasis added)). "Only those claims that are brought under the [T]GTLA and for which immunity is removed by the [T]GTLA are subject to its provisions." *Id.* (internal quotation marks and quotation omitted).

The question, then, is whether the TGTLA removes immunity for the types of claims that Plaintiffs' have brought against Meigs County; if so, the TGTLA, not Tennessee Code Annotated § 8-8-302, governs those claims. To resolve this question, the Court begins with a fundamental principle: Plaintiffs are the masters of their complaint, *see The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon[.]"), and when a plaintiff brings suit under a statutory scheme that "provides for a remedy and waiver of immunity for injuries that are expressly excluded from the operation of the [T]GTLA, then those remedies should not be affected by the [T]GTLA," *Cruse v. City of Columbia*, 922 S.W.2d 492, 496 (Tenn. 1996) (quotation omitted).

Section 8-8-302 is a statute that provides its own remedial scheme against, and waiver of immunity for, counties whose sheriff's deputies cause *non-negligent* injuries while acting under color of state law, and these specific types of injuries have therefore been expressly excluded from the TGTLA by Tennessee's General Assembly. *See Jenkins v. Loudon County*, 736 S.W.2d 603, 609 (Tenn. 1987) ("Actions for the non-negligent misconduct of deputies do not 'aris[e] pursuant to' the [T]GTLA . . . and may therefore be covered by T.C.A. § 8-8-301, *et seq.* in the appropriate cases." (internal quotation omitted)), *abrogated in part by*

*Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001); *Merolla v. Wilson County*, No. M2018-00919-COA-R3-CV, 2019 WL 1934829, at *6 (Tenn. Ct. App. May 1, 2019) ("[T]he [T]GTLA supercedes [sic] Tenn. Code Ann. § 8-8-301, *et seq.*, as it relates to actions based on negligence, but Tenn. Code Ann. § 8-8-301, *et seq.*, controls as to suits for misconduct of officers[.]" (quotation omitted)).

Plaintiffs have "specifically referenced [§ 8-8-302]" in the complaint and "do[] not mention any of the provisions of the TGTLA," except in pleading their negligence claim, and "[b]ecause [Meigs County's] immunity from suit," as it relates to Plaintiffs' *non-negligence* claims, "has been removed by a statute independent of the [T]GTLA and [P]laintiff's suit is based on that independent statute," the TGTLA "does not apply" to those non-negligence claims. *Cruse*, 922 S.W.2d at 497; *see Sneed*, 459 S.W.3d at 25 ("Only those claims that are brought under the [T]GTLA and for which immunity is removed by the [T]GTLA are subject to its provisions." (internal quotation marks and quotation omitted)). In this vein, Plaintiffs' claim for gross negligence (Count Six), perhaps counterintuitively, fits the mold of a non-negligence claim, and this Court has ruled that a gross-negligence claim is actionable under § 8-8-302. *See Barbieri v. Knox County*, No. 3:15-cv-146-TAV-CCS, 2016 WL 154098, at *5 (E.D. Tenn. Jan. 12, 2016) (ruling that "Knox County can be held liable for its deputies' non-negligent tort actions under section 8-8-302," which included a claim of gross negligence.). Consistent with this ruling, the Tennessee Supreme Court has held that the TGTLA does not remove immunity for claims of gross negligence. *See Lawson v. Hawkins County*, 661 S.W.3d 54, 59 (Tenn. 2023) ("We . . . conclude that [the TGTLA] removes immunity only for ordinary negligence, not gross negligence[.]"). Plaintiffs' gross-negligence claim is therefore actionable under § 8-8-302.

12

But the Court cannot say the same for Plaintiffs' claim for assault and battery (Count Four), which Plaintiffs must bring exclusively under the TGTLA. The TGTLA contains an "intentional tort exception," which removes governmental immunity for injuries caused by negligent acts *unless* those injuries arise from certain enumerated intentional torts. *Limbaugh*, 59 S.W.3d at 79; *see* Tenn. Code Ann. § 29-20-205(2). Assault and battery is not among the intentional torts that the TGTLA enumerates under this exception, so the TGTLA removes immunity for assault-and-battery claims, *Limbaugh*, 59 S.W.3d at 83–84, meaning that the TGTLA—not § 8-8-302—governs assault-and battery claims, *see Davis v. Hardin County*, No. 99-1218, 2022 WL 1397276, at *5 (W.D. Tenn. May 22, 2022) ("Plaintiff's intentional tort allegations were assault and battery. . . . Since th[is] cause[] [of action is] actionable under the [T]GTLA, § 8-8-302 no longer provides causes of action for assault and battery.").

Plaintiffs argue otherwise, insisting that "it is critical to note that the claim must still be predicated on some alleged *negligence* for [the TGTLA] to apply." [Pls.' Resp., Doc. 113, at 18 n.14 (citing *Limbaugh*, 59 S.W.3d at 81)]. The distinction does not turn on whether the claim itself sounds in negligence. It turns on the statutory text. The intentional-tort exception removes immunity for an injury caused by negligent acts unless the injury falls within a list of enumerated intentional torts. Tenn. Code Ann. § 29-20-205(2). Assault and battery does not appear on that list. The TGTLA therefore removes immunity for assault-and-battery claims, and a claim for which the TGTLA removes immunity must be brought under the TGTLA. *Limbaugh*, 59 S.W.3d at 83–84.

The TGTLA, therefore, and not § 8-8-302, governs Plaintiffs' claim of assault and battery, and because Plaintiffs improperly bring this claim under § 8-8-302 rather than the TGTLA, it requires dismissal and is hereby **DISMISSED**. *See Clark v. City of Mount Juliet*,

13

No. M2020-00293-COA-R3-CV, 2021 WL 915608, at *2, *3–4 (Tenn. Ct. App. Mar. 10, 2021) (agreeing with the defendant's argument that the plaintiff's claims "must be brought pursuant to" the TGTLA and affirming the trial court's dismissal of those claims because the plaintiff had not brought them under the TGTLA).

Unlike Plaintiffs' assault-and-battery claim, their claim for intentional infliction of emotional distress is one of the intentional torts that the TGTLA enumerates in its intentional-tort exception. *See* Tenn. Code Ann. § 29-20-205(2) (listing "infliction of mental anguish"). The TGTLA, therefore, does not remove governmental immunity for a claim of intentional infliction of emotional distress or govern this type of claim. *See Bryant v. McCoig*, No. 3:15-CV-475, 2018 WL 3892427, at *10 (E.D. Tenn. Aug. 14, 2018) (opining that the "County cannot be sued for this type of claim," that is, a claim of intentional infliction of emotional distress, under the TGTLA). Plaintiffs may therefore proceed with their claim of intentional infliction of emotional distress under § 8-8-302. *See Barbieri*, 2016 WL 154098 at *5 (ruling that "Knox County can be held liable for its deputies' non-negligent tort actions under section 8-8-302," which included a claim of intentional infliction of emotional distress).

In sum, Plaintiffs improperly bring their claim of assault and battery under § 8-8-302, but they properly bring their claims of gross negligence and intentional infliction of emotional distress under § 8-8-302. And as for their other claims—their claims of wrongful death and loss of consortium—these claims can, and do, operate as derivatives of their non-negligence claims, *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 734–35 (Tenn. 2024); *Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 2001), so Plaintiffs may bring them alongside their non-negligence claims under § 8-8-302 on Ms. Smith's behalf—and Meigs County cites no legal authority to the contrary.

14

Having addressed whether Plaintiffs can proceed with their claims under § 8-8-302, the Court will now address Meigs County's second argument: whether Plaintiffs have pleaded sufficient facts to support their claims. For either a claim under the TGTLA or under § 8-8-302, "a cause of action must exist against the employee in his or her individual capacity," and "it is still necessary that all the elements of the tort are alleged by the plaintiff." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 854 (E.D. Tenn. 2011) (quoting *Baines v. Wilson County*, 86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002)).

1. <u>Intentional Infliction of Emotional Distress (Count Five)</u>

The Court begins with Plaintiffs' claim for intentional infliction of emotional distress, whose elements place "a high burden indeed" on them, as they do for all plaintiffs. *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 21 (Tenn. 2021). A claim of intentional infliction of emotional distress requires allegations that Deputy Leonard's actions were (1) intentional or reckless, (2) so outrageous that a civilized society would not tolerate them, and (3) caused Ms. Smith to suffer a serious mental injury. *Id.* Meigs County argues that the "Complaint contains no allegations whatsoever that [Ms. Smith] suffered a serious mental injury." [Def.'s Mot. to Dismiss, Doc. 108, at 18]. Plaintiffs' do not directly respond to this argument. *See* [Pls.' Resp., Doc. 113, at 24–25].

The Court agrees with Meigs County's argument that Plaintiffs have not alleged the third element, a serious mental injury. Nowhere do Plaintiffs expressly allege that Ms. Smith suffered any serious mental injury. They allege that she suffered "indignity and humiliation" and "unimaginable terror" because she knew she was going to die, [Fourth Am. Compl., Doc. 102, ¶¶ 91, 122], but they do not allege that her indignity, humiliation, and terror manifested themselves in the form of a serious mental injury. While "[t]he flagrant and outrageous nature of

15

[a] defendant's conduct" can "add[] weight to a plaintiff's claim and affords more assurance that the claim is serious,"[3] *Miller v. Wilbanks*, 8 S.W.3d 607, 613 (Tenn. 1999) (citations omitted), the absence of *any* allegation, even a conclusory one, that Ms. Smith suffered a serious mental injury precludes the Court from allocating this weight to Plaintiffs' claim. Plaintiffs, therefore, fail to plead a plausible claim for intentional infliction of emotional distress, and that claim is hereby **DISMISSED**.

### 2. Gross Negligence (Count Six)

Next, Plaintiffs allege that Deputy Leonard was "grossly negligent in his operation of the police cruiser in which Ms. Smith was held, leading to her death." [Fourth Am. Compl., Doc. 102, ¶ 128]. Under Tennessee law, gross negligence is "a conscious neglect of duty or a callous indifference to the consequences." *Cook by & through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (quotation omitted). It is a "negligent act done with utter unconcern for the safety of others" or "with such a reckless disregard for the rights of others." *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003) (quotations omitted). To state a claim of gross negligence, Plaintiffs must allege the elements of an ordinary negligence claim and must also allege that the act in question was "done with utter unconcern for the safety of others" or "with such a reckless disregard for the rights of others." *Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998) (quotation omitted).

---

[3] The Court previously ruled that Plaintiffs have plausibly alleged that Deputy Leonard's conduct, under a constitutional standard, "shocks the conscience." [Mem. Op. & Order, Doc. 153, at 11]. This constitutional standard is arguably similar to the standard that governs outrageous conduct for a claim of intentional infliction of emotional distress. *Cf. Harris v. Gaylord Ent. Co.*, No. M2013–00689–COA–R3–CV, 2013 WL 6762372, at *6 (Tenn. Ct. App. Dec. 19, 2013) ("The intrusion must be of such a character as would shock the ordinary person to the point of emotional distress . . . Thus, the standard is similar to that applicable to claims of intentional infliction of emotional distress." (quotation omitted)).

16

In seeking the dismissal of Plaintiffs' gross-negligence claim, Meigs County does not argue that Plaintiffs have failed to allege sufficient facts under any of the claim's requisite elements. Instead, it renews its argument that "§ 8-8-302 does not apply to claims of gross negligence," [Def.'s Mot. to Dismiss, Doc. 108, at 18], and it insists that the TGTLA applies instead to Plaintiffs' gross-negligence claim and that the TGTLA's "civil-rights exception"[4] bars it, [*id.* at 19–22]. But again, Plaintiffs need not bring their gross-negligence claim under the TGTLA because the TGTLA "removes immunity only for ordinary negligence, not gross negligence." *Lawson*, 661 S.W.3d at 59. Plaintiffs properly bring their gross-negligence claim under § 8-8-302, *see Barbieri*, 2016 WL 154098 at *5, and because Meigs County does not contend that Plaintiffs have failed to plead sufficient facts to support a common-law claim of gross negligence under § 8-8-302, the Court declines to dismiss this claim.

### 3. Negligence (Count Seven)

Plaintiffs also allege that Deputy Leonard was negligent "by failing to maintain an appropriate speed on unfamiliar roads in limited visibility conditions, texting while driving, ignoring rumble strips, ignoring the pleas of Ms. Smith, and other conduct." [Pls.' Fourth Am. Compl., Doc. 102, ¶ 135]. To plead a plausible negligence claim, Plaintiffs must allege facts showing that (1) Deputy Leonard owed a legal duty of care to Ms. Smith; (2) he breached that duty of care by engaging in behavior that fell below the applicable standard of care; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009).

---

[4] "[I]f an otherwise valid claim under the TGTLA 'arises out of the same circumstances giving rise to her civil rights claim under § 1983, then the state claim would fall under the civil rights exception and the county would be immune." *Harrison v. City of Dickson, Tenn.*, No. 3:11-CV-01044, 2013 WL 1482950, at *15 (M.D. Tenn. Apr. 11, 2013) (quoting *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010)).

17

In pursuing the dismissal of Plaintiffs' negligence claim, Meigs County does not argue that this claim is factually insufficient under any one of these five elements. Instead, it argues that, under the TGTLA, it is "not responsible for any conduct which is grossly negligent, malicious, willful, and/or criminal, as Plaintiffs have alleged." [Def.'s Mot. to Dismiss, Doc. 108, at 18]. In response, Plaintiffs assert that Meigs County has "complete[ly] misstate[d]" their negligence claim. [Pls.' Resp., Doc. 113, at 25; *see id.* (contending that "[t]he County seems to claim that any negligence claim must only be based on gross negligence, which is a baffling position")].

Meigs County raises no viable basis for the dismissal of Plaintiffs' negligence claim. Negligence is but "the 'want of ordinary care,'" *Lawson*, 661 S.W.3d at 61 (quoting *Inter-City Trucking Co. v. Daniels*, 178 S.W.2d 756, 757 (1944)), and unlike grossly negligent conduct, reckless conduct, or criminal conduct, it does not require evidence of any mental state, *id.* at 61–62. So whether Meigs County is "responsible for any conduct which is grossly negligent, malicious, willful, and/or criminal" is irrelevant to Plaintiffs' negligence claim. [Def.'s Mot. to Dismiss, Doc. 108, at 18]. The Court therefore declines to dismiss this claim.

### 4. Wrongful Death (Count Three) and Loss of Consortium (Count Eight)

Although Meigs County also moves for the dismissal of Plaintiffs' wrongful-death and loss-of-consortium claims, these claims, as the Court has mentioned, are derivatives of the negligence and gross-negligence claims that Plaintiffs have brought on Ms. Smith's behalf. *Williams*, 685 S.W.3d at 734–35; *Hunley*, 38 S.W.3d at 557. And as derivative claims, they "originate[] from or owe [their] existence to" Plaintiffs' "claim[s] for personal injuries" on Ms. Smith's behalf. *Clark v. Shoaf*, 209 S.W.3d 59, 61 (Tenn. Ct. App. 2006) (citing *Hunley*,

18

38 S.W.3d at 557); *see Hunley*, 38 S.W.3d at 557 (noting that the term "derivative" means "a thing which 'owes its existence to something foregoing'" (quotation omitted)).

Because Plaintiffs have alleged plausible personal-injury claims—in the form of their negligence and gross-negligence claims—on behalf of Ms. Smith, their wrongful-death claim and loss-of-consortium claim likewise withstand dismissal. *Cf. McCorkle v. TVA*, No. 3:11–CV– 168, 2012 WL 607661, at *6 (E.D. Tenn. Feb. 24, 2012) (dismissing a husband's loss-of-consortium claim after determining that his wife's personal-injury claims required dismissal).

## IV. CONCLUSION

For all these reasons, Meigs County's Motion to Dismiss [Doc. 108] is **GRANTED in part** and **DENIED in part**, and the Court **ORDERS** as follows:

1. Meigs County's motion to dismiss is **GRANTED** as to Plaintiffs' § 1983 claim of punitive damages against Meigs County, and that claim is hereby **DISMISSED** as to Meigs County only;

2. Meigs County's motion to dismiss as to Count Four (assault and battery) is **GRANTED**, and that claim is hereby **DISMISSED** as to Meigs County only;

3. Meigs County's motion to dismiss as to Count Five (intentional infliction of emotional distress) is **GRANTED**, and that claim is hereby **DISMISSED** as to Meigs County only;

4. Meigs County's motion to dismiss is **DENIED** in all other respects;

5. Meigs County is **ORDERED** to serve a responsive pleading on or before **Friday, August 7, 2026**; and

6. Plaintiffs' Unopposed Motion for Extension of Time to File Response [Doc. 110] is **GRANTED**.

19

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

20